No. 26-12533-C

# In the United States Court of Appeals for the Eleventh Circuit

STATE OF FLORIDA, ET AL.,

*Plaintiffs-Appellees,*

v.

LEAGUE OF WOMEN VOTERS, ET AL.
*Intervenors-Defendants-Appellants.*

## OPPOSITION TO MOTION TO EXPEDITE APPEAL

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
NO. 3:24-CV-509

JAMES UTHMEIER
ATTORNEY GENERAL

RYAN D. NEWMAN
CHIEF DEPUTY ATTORNEY
GENERAL

DAVID M.S. DEWHIRST
*Solicitor General*
JASON J. MUEHLHOFF
*Chief Deputy Solicitor General*
CHRISTOPHER J. BAUM, B.C.S.
*Senior Deputy Solicitor General*
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
*david.dewhirst@myfloridale-gal.com*
*Counsel for Plaintiffs State of Florida and the Florida Department of State*

*Additional counsel listed after the conclusion*

*State of Florida v. League of Women Voters*, No. 26-12533

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Counsel for Plaintiffs-Appellees hereby incorporates Intervenors-Defendants-Appellants' CIP and supplements it with the following interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3.:

1. Baum, Christopher J., *Counsel for Plaintiffs-Appellees State of Florida and the Florida Department of State*

2. Dewhirst, David M.S., *Counsel for Plaintiffs-Appellees State of Florida and the Florida Department of State*

3. Muehlhoff, Jason J., *Counsel for Plaintiffs-Appellees State of Florida and the Florida Department of State*

4. Cordova, Nicholas A., *Counsel for Plaintiffs-Appellees State of Ohio and Frank LaRose in his official capacity as Ohio Secretary of State*

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

*/s/ David M.S. Dewhirst*
David M.S. Dewhirst
*Counsel for Plaintiffs State of Florida and the Florida Department of State*

## INTRODUCTION

Defendants in this case—agencies within the Federal government—breached a settlement agreement with Plaintiffs that the district court had adopted and incorporated.  On Plaintiffs' request, the district court ordered Defendants to immediately return to compliance with the settlement agreement.  Intervenors-Appellants LWV and EPIC (collectively LWV) moved to intervene for the sole purpose of appealing the district court's order requiring Defendants to comply with the terms of the settlement agreement.  Now, in service of their motion to expedite their appeal, LWV asserts that the appeal presents merely a narrow, straightforward legal question that has already been briefed by the parties.

None of that is true.  Whether the district court properly enforced the settlement agreement turns on many novel and complex questions regarding the lawfulness of Defendants' obligations under that agreement.  Those questions took months to brief in the D.C. District Court, and LWV seeks months more to brief them in the D.C. Circuit.  By contrast, here, LWV doesn't think that's necessary.  For at least three reasons, that is exactly backward.

*First*, neither Plaintiffs nor Defendants have ever briefed the questions arising out of the settlement agreement's lawfulness. *Second*, unlike the D.D.C. case, there's no factual or "voluminous administrative recor[d]" (Mot. 6) below to inform the parties' briefing. And *third*, this appeal also involves whether LWV had standing to intervene, whether LWV has standing to appeal, and whether the enforcement order is an appealable order. Put another way, the parties deserve *more* time than the parties in D.C. received (and will continue to receive) to brief this appeal.

In any event, LWV's asserted reason for expediting the appeal—resolving the *federal government's* predicament of facing conflicting judicial orders—withers under scrutiny. LWV did not (and apparently does not intend to) seek to expedite the D.C. Circuit appeal. Either LWV wants an appellate court to weigh in soon or it doesn't. And in the meantime, LWV is enjoying the benefit of Judge Sooknanan's erroneous order in 46 out of 50 States. Expedition is unwarranted.

## BACKGROUND

### A.    Plaintiffs' lawsuit.

This case involves Plaintiffs' obligations to maintain accurate and current voter registration records to prevent voter fraud, including noncitizen voting. *See* § 98.075(1), Fla. Stat.; Ohio Rev. Code § 3501.04; Iowa

2

Code §§ 47.1, 47.7, 39A.7; Ind. Code §§ 3-7-26.3-10 & 16; Ind. Code § 3-7-38.2-7.3.  The federal government likewise has a duty to cooperate with States in ensuring that only citizens vote in their elections.  *See* 8 U.S.C. § 1373(c); 8 U.S.C. § 1644.

Because the federal government had been refusing to comply with this obligation and had frustrated Plaintiffs' ability to maintain the integrity of their elections, Plaintiffs sued in November 2024.  *State of Florida v. Dep't of Homeland Sec'y*, No. 3:24-cv-509, ECF 6 (N.D. Fla. Nov. 4, 2024).[1]  In the amended complaint, Plaintiffs sought an order holding unlawful Defendants' failure to provide Plaintiffs with the required response to their inquiries to verify or ascertain the citizenship or immigration status of individuals within their jurisdiction for a purpose authorized by law; a declaration that Plaintiffs are entitled to the required response to their inquiries; and permanent injunctive relief, or the issuance of a writ of mandamus, ordering Defendants to adequately respond to the inquiries made by Plaintiffs.  ECF 29, at 24.

---

[1] Plaintiffs initially filed separate lawsuits but later agreed to voluntarily dismiss and refile their claims in one case before the district court to simplify entering into a settlement agreement with Defendants.

**B.    The parties execute a settlement agreement and the Court approves it.**

In November 2025, the parties executed a settlement agreement resolving all of Plaintiffs' claims.  ECF 30-1.  In exchange for Plaintiffs' release and dismissal of their claims, Defendants agreed—among other things—to ensure that the SAVE system had the capability to (1) "[i]ntegrat[e] with the Social Security Administration to allow searches with full [SSNs] to be used as a non-DHS enumerator"; (2) "[i]ntegrat[e] with the Social Security Administration to allow searches with last-four-digits SSNs to be used as a non-DHS enumerator"; and (3) "process bulk upload verification requests so that users of the system will not need to input verification requests one-by-one."  ECF 30-1, at 4–5.

Relying on Defendants' guarantees in the settlement agreement, Plaintiffs moved to dismiss with prejudice under Federal Rule of Civil Procedure 41(a)(2).  The district court granted that motion.  ECF 31.  The district court retained jurisdiction over the case for the purpose of enforcing the settlement agreement.  ECF 31, at 1–2.

From December 2025 to June 2026, Plaintiffs and Defendants performed their duties and obligations under the settlement agreement.  As

4

relevant here, Defendants ensured that the SAVE system had a bulk up-load function and was searchable via Social Security Numbers and last-four-digits Social Security Numbers.  *See* ECF 32-1, ¶ 5.

## C.  Another district court issues an order vacating the modified SAVE system.

In late 2025, a group of plaintiffs, including LWV, challenged the modifications made to the SAVE system in the U.S. District Court for the District of Columbia.  *League of Women Voters v. U.S. Dep't of Homeland Sec'y*, No. 25-cv-3501, ECF 1 (D.D.C. Sep. 30, 2025).[2]  The federal govern-ment defended the modifications to the SAVE program in its briefing, noting those changes were "as required by the judicially enforceable set-tlement agreement in Florida."  *See* ECF 77-1 at 63, *League of Women Voters v. U.S. Dep't of Homeland Sec'y*, No. 25-cv-3501 (D.D.C. April 2, 2026).  Given the prior-in-time binding order, DHS in that case argued that "principles of equity and comity also require the Court not to enter relief that would subject the United States to conflicting court orders."  *Id.* at 62.

---

[2] Also in late 2025, DHS and the Social Security Administration published Sys-tem of Records Notices (SORNs) for the modifications made to their systems that allowed for the changed functionality of the SAVE system. Notice of a Modified Sys-tem of Records, 90 Fed. Reg. 48,948; Notice of a Modified System of Records, 90 Fed. Reg. 50,879.

U.S. District Judge Sparkle L. Sooknanan brushed aside those concerns. On June 22, 2026, Judge Sooknanan granted plaintiffs' motion for summary judgment and held that the modified SAVE system violated the Social Security Act and the Privacy Act of 1974 and that its establishment was arbitrary and capricious under the Administrative Procedure Act. *League of Women Voters*, 2026 WL 1784297, at *20, *21, *28 (D.D.C. June 22, 2026). As a result, Judge Sooknanan issued an order "set[ting] asid[e] and vacat[ing] the SAVE 'modified system" and the related SORNs. *Id.* at *35.

The federal government appealed and moved to stay pending appeal, but Judge Sooknanan denied the motion to stay pending appeal. *League of Women Voters*, No. 25-cv-3501, ECF 123, 124 (D.D.C. July 8, 2026). The federal government renewed its motion for a stay in the D.C. Circuit, but that court has not yet ruled on the motion.

**D.     Defendants disable functions of the SAVE system that are guaranteed by the settlement agreement.**

Sometime around June 24, 2026, Defendants disabled the bulk upload function in SAVE. ECF 32-1, ¶ 5. Defendants also disabled the ability for States to search the database with Social Security Numbers or last-four-digit Social Security Numbers. ECF 32-1, ¶ 5.

6

**E.      The district court grants Plaintiffs' emergency motion to enforce the settlement agreement.**

After Defendants took the position that Judge Sooknanan's order bound DHS notwithstanding the district court's order below incorporating and enforcing the settlement agreement, Plaintiffs promptly moved to enforce the settlement agreement.  ECF 32.  LWV filed an amicus brief in opposition to Plaintiffs' motion.  ECF 37-1.

The district court granted Plaintiffs' motion, holding that "Defendants are plainly in violation of the settlement agreement," and explaining that "[t]he fact that Defendants disabled those features to comply with Judge Sooknanan's order does not change the fact that they violated the agreement."  ECF 45, at 5.  That Judge Sooknanan concluded that the modifications to SAVE were inconsistent with federal law, moreover, did not "somehow undo" the district court's "implicit determination" to the contrary when it approved the settlement agreement.  ECF 45, at 6.  After all, the district court "is not bound by Judge Sooknanan's order," and "the [district court] disagree[d] with the conclusions in that order."  ECF 45, at 7.  In granting Plaintiffs' motion, the district court ordered Defend-

7

ants to "immediately comply" with the settlement agreement "by reinstating Plaintiffs' access to the bulk-upload and SSN-search features in the SAVE system."  ECF 45, at 9–10.

### F.    LWV and EPIC move to intervene.

The next day, LWV moved to intervene to "defend their interests in the Eleventh Circuit by filing a notice of appeal."  ECF 48, at 2. The district court granted that motion.  ECF 54.  In so doing, the district court expressly reaffirmed that the modifications to the SAVE system is lawful. *Id.* at 4 n.2.  The district court acknowledged that Plaintiffs raised serious doubts about the Intervenors' lack of standing, but concluded that this "goes more to the question of whether the Eleventh Circuit should dismiss the appeal once LWV and EPIC files it than the threshold question of whether this Court should allow them to intervene to file an appeal." *Id.* at 11.

This appeal, and LWV's motion to expedite, followed.

## ARGUMENT

An appeal "may be expedited only by the court upon motion and for good cause shown."  11th Cir. Rule 27-1 I.O.P. 3.  LWV has fallen far short of establishing good cause.

LWV's key contention gives up the game. In their view, "the issues presented by this appeal are purely legal, narrow, and have been litigated already." Mot. 11. The opposite is true. LWV intends to show that the federal government's obligations under the settlement agreement are unlawful and thus that the settlement agreement should not have been enforced, an issue that was never litigated below.[3] Plaintiffs and Defendants entered into a settlement agreement that the district court approved and incorporated into its dismissal order. When Defendants violated the terms of the settlement agreement, the district court ordered Defendants to immediately come back into compliance. After intervening, LWV appealed, seeking to unwind the enforcement order *and thereby the settlement agreement*. After all, it is undisputed that Defendants breached the settlement agreement, which is the only fact on which the enforcement order turned.[4] Any appeal of that finding would be futile, and vacating the enforcement order would nullify the settlement agreement. To obtain

---

[3] *See* Mot. 13 (relying on settlement agreement's provision that "[n]othing contained" in it "shall impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, or with any federal statute in effect at the time of such performance," ECF 30-1, ¶ 17).

[4] ECF 45, at 5 ("it is undisputed that [Defendants] disabled the bulk-upload and SSN-search features that the agreement expressly required the SAVE system to have").

the relief they seek, therefore, LWV would have to establish that Defendants' obligations under the settlement agreement are contrary to law. *See* ECF 30-1, ¶ 17.

And *that* question presents far more than a "purely legal, narrow, and" already litigated issue. Mot. 11. Unlike in *LWV*, neither Plaintiffs nor Defendants ever had an opportunity to fully brief those issues in the district court, let alone to develop any sort of record. *See* ECF 48-1, at 8 (explaining that DHS and SSA "produced voluminous administrative records and the parties engaged in extensive dispositive motion briefing" in LWV). As a preview of the issues involved, Judge Sooknanan addressed the following issues in her opinion on summary judgment that would also be relevant here: (1) LWV's standing; (2) whether the modified SAVE system violates the Social Security Act; (3) whether the modified SAVE system violates the Privacy Act; (4) whether the modified SAVE system violates the Administrative Procedure Act; (5) whether other federal statutes nevertheless authorize the modified SAVE system; and (6) LWV's constitutional arguments. Judge Sooknanan devoted more than 50 pages to these issues in her opinion. Yet in this case, Plaintiffs and Defendants have never briefed or litigated *any* of those issues. *See* Mot. 12 ("to the

limited extent those merits questions were addressed before the district court, the district court did so without the benefit of any adversarial briefing on them" (emphasis omitted)).

LWV attempts to mask the true nature of their appeal by arguing that their appeal "will be principally limited" to the question of the enforcement order's propriety. Mot. 12–13. In their view, whether the district court properly issued an order enforcing the settlement "in contradiction of a coordinate court's pre-existing[5] APA vacatur, notwithstanding a provision of the settlement disclaiming any effect inconsistent with a federal statute," is an open question. Mot. 13. It is not. The district court below properly held that the settlement is *not* inconsistent with any federal statute, and Judge Sooknanan's decision cannot change that. ECF 54 at 5 n.2 (explaining that "the [district court] s[aw] no reason why its consent decree should not be enforced simply because another district judge has a different view of the law than what was implicit in the [district court's] approval of the consent decree and is now explicit"). It is

---

[5] LWV's framing of Judge Sooknanan's order as "pre-existing" is highly misleading: Plaintiffs' and Defendants' settlement agreement here was entered into and approved seven months before Judge Sooknanan granted summary judgment. The appropriate question (for the D.C. Circuit, not this Court) is whether her order was proper notwithstanding the parties' pre-existing settlement here.

hornbook law that one district court's holding does not bind another district court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)).

So if, as LWV suggests, their argument is limited to whether the enforcement order was proper, the question on appeal *must* turn on whether the settlement agreement *is*, in fact, inconsistent with any federal statute—not merely whether another district court thought it was. Presumably, if the Court refreshes LWV's recollection as to the basics of horizontal stare decisis, LWV will not simply roll over and accept that the enforcement order was proper. LWV will undoubtedly argue that the modified SAVE system not only has been held unlawful by another district court but that it is actually unlawful. So try as they might, LWV cannot ask this Court to unwind the parties' settlement agreement while simultaneously contending that the Court "*cannot*" (Mot. 12) reach whether the settlement is lawful.

LWV also maintains that expediting the appeal will "serve the interests of justice" by "resolv[ing]—or at a minimum, substantially assist in resolving—the judicial deadlock." Mot. 11. But it is the federal government, not LWV, that is subject to conflicting orders. LWV continues to enjoy the relief granted by Judge Sooknanan in every State except Florida, Ohio, Indiana, and Iowa. *LWV v. DHS*, No. 25-cv-3501, ECF 126, at 3 (D.D.C. July 10, 2026). As the federal government explained there, "the intent of the United States is to comply with all outstanding court-ordered obligations to the greatest extent possible," and that is what it is doing. *Id.* at 1. Allowing LWV to benefit from the relief it was granted in 46 States and allowing Plaintiffs the benefit of the district court's enforcement of the settlement agreement while both this Court and the D.C. Circuit consider the novel and complex issues in the ordinary course is eminently reasonable. What is more, LWV has not moved—and apparently does not intend to move, *see* Mot. 12—to expedite the federal government's appeal in the D.C. Circuit, undercutting their claim that all they seek is prompt resolution of the deadlock. LWV cannot have it both ways.

13

Finally, LWV argues that Plaintiffs would be "minimal[ly] preju-dice[d]" by an expedited appeal. Mot. 13. But as explained above, Plain-tiffs have never "briefed the central question of this appeal." *Id.* LWV and the federal government had months to create a record and brief those novel and complex questions in D.D.C. *See* Minute Order, *LWV*, No. 25-cv-3501 (D.D.C. Feb. 4, 2026) (setting 2.5-month briefing schedule for summary judgment). Requiring Plaintiffs to brief these issues on a highly expedited basis, when Plaintiffs have never briefed those issues, on an empty record, would greatly prejudice Plaintiffs—as LWV itself recognizes. Mot. 12 (explaining that the D.C. Circuit appeal "will require complex briefing on the full range of substantive issues . . . briefing, in other words, that would benefit from the full schedule contemplated" by the federal rules). This appeal, moreover, is *more* complicated than the D.C. Circuit appeal because it involves additional issues unrelated to the lawfulness of the SAVE modifications guaranteed by the settlement agreement—namely, LWV's standing to intervene; LWV's appellate standing; the appealability of the district court's enforcement order; and

potentially others complicating the briefing.[6]    Expediting the appeal would unduly prejudice Plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to expedite the appeal.

Respectfully submitted.

JAMES UTHMEIER
*Attorney General*

RYAN D. NEWMAN
*Chief Deputy Attorney General*

*/s/ David M.S. Dewhirst*
DAVID M.S. DEWHIRST
*Solicitor General*
JASON J. MUEHLHOFF
*Chief Deputy Solicitor General*
CHRISTOPHER J. BAUM, B.C.S.
*Senior Deputy Solicitor General*
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
*david.dewhirst@myfloridale-gal.com*

---

[6] LWV also contends (Mot. 13) that Plaintiffs somehow would not be prejudiced because Plaintiffs sought to enforce the settlement agreement on an emergency basis. But whether Plaintiffs were entitled to immediate compliance from Defendants under the terms of the settlement agreement is a distinct question from whether LWV—intervenors who are not parties to the settlement agreement—are entitled to unwind that agreement.

15

*/s/ Nicholas A. Cordova*
*NICHOLAS A. CORDOVA*
*Boyden Gray PLLC*
*800 Connecticut Ave NW,*
*Suite 900*
*Washington, DC 20006*
*202-955-0620*
*ncordova@boydengray.com*

*Counsel for Plaintiffs-Appellees*
*State of Ohio and Frank LaRose*
*in his official capacity as Ohio*
*Secretary of State*

16

## CERTIFICATE OF COMPLIANCE

1.	This document complies with the type-volume limits of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4, this document contains 2,902 words.

2.	This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ David M.S. Dewhirst*
David M.S. Dewhirst

17

# CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2026, I electronically filed the foregoing response with the Clerk of Court by using the Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ David M.S. Dewhirst*
David M.S. Dewhirst