No. 26-12533-C

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

STATE OF FLORIDA, et al.

Plaintiffs-Appellees,

vs.

LEAGUE OF WOMEN VOTERS, et al.

Intervenors-Defendants-Appellants.

Appeal from the United States District Court for the Northern District of Florida
No. 3:24-cv-00509-TKW-HTC - The Honorable T. Kent Wetherell II

## REPLY IN SUPPORT OF MOTION TO EXPEDITE APPEAL

Mark B. Samburg
Ronald A. Fein
Robin F. Thurston
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090

Gerald E. Greenberg
Daniel R. Walsh
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, FL 33131
(305) 728-0950

Nikhel S. Sus
John B. Hill
Lauren C. Bingham
CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565

Jon Sherman
Michelle Kanter Cohen
FAIR ELECTIONS CENTER
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 331-0114

*Counsel for Intervenors-Defendants-Appellants*

**CERTIFICATE OF INTERESTED PERSONS**

Counsel for Intervenors-Defendants-Appellants hereby incorporates the CIP included with their July 21, 2026 motion to expedite the appeal, as well as the supplemental CIP filed by Plaintiffs-Appellees with their July 28, 2026 opposition to that motion. Intervenors-Defendants-Appellants further supplement those CIPs with the following interested person as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1:

1. Wessan, Eric H., *Counsel for Plaintiff-Appellee State of Iowa*

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Dated: July 31, 2026                                             */s/Mark B. Samburg*

## APPELLANTS' REPLY IN SUPPORT OF
## MOTION TO EXPEDITE APPEAL

Appellees oppose the motion to expedite for one reason: they want to keep the district court's order below in place for as long as possible, even though it directly contravenes a prior court order and every day is subjecting the Department of Homeland Security ("DHS") to conflicting obligations. But because the district court's order is plainly contrary to blackletter law—including principles of federal jurisdiction—this Court can and should expeditiously resolve this untenable situation.

On December 1, 2025, three days after receiving a settlement agreement from parties who were in total agreement about the underlying legal claims, and without the benefit of any briefing or argument—indeed, without any adversarial proceedings whatsoever—the district court entered the parties' proposed order approving the settlement without alteration. In so doing, the court evidently reached an "implicit determination" (not reflected on the face of the order) that complex modifications to the Systematic Alien Verification for Entitlements ("SAVE") system by DHS were lawful and complied fully with various federal statutes that the parties never even mentioned to the district court. *Florida v. DHS*, -- F. Supp. 3d --, 2026 WL 1968339, at \*2 (N.D. Fla. July 7, 2026).

Thereafter, following robust summary judgment briefing on the basis of a voluminous administrative record, a different federal court, exercising familiar and

long-established authority under the Administrative Procedure Act ("APA"), held those same modifications violated the Social Security Act, the Privacy Act, and the APA, and "set[] aside and vacate[d]" the modified system. *League of Women Voters v. DHS*, -- F. Supp. 3d --, 25-3501, 2026 WL 1784297, at *35 (D.D.C. June 22, 2026) (the "*LWV* Vacatur Decision").

At that moment, the *LWV* court was the *only* court to have considered the legality of the SAVE modifications after adversarial proceedings, or as part of an Article III "case or controversy." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2002) (case or controversy requirement serves, in part, to "guarantee[] that courts consider only matters presented in an actual adversarial context"). *See* U.S. Const. Art. III, § 2. And when the *Florida* court entered an enforcement order 15 days later "mak[ing] explicit" its view that the modifications to SAVE were lawful, *Florida*, 2026 WL 1968339, at *2 n.5, the *LWV* court was *still* the only court to have considered the legality of those modifications after adversarial proceedings or as part of a case or controversy. So too now: the legality of the modifications of the SAVE system has never been before the *Florida* court, and despite Appellees' unsupported suggestions to the contrary, this Court lacks jurisdiction to now consider their legality in the first instance.

Appellees want this to be a different case. But this Court should decline their invitation to ignore the structure of the federal judiciary and engage in direct review

of an out-of-circuit district court's merits decision. Appellees cannot litigate the merits of the *LWV* Vacatur Decision in this Court. If they wish to challenge that decision, they are free to seek intervention in the *LWV* litigation, just as the State of Texas successfully did.

What Appellees *can* do in this Court is (attempt to) defend the *Florida* court's decision to enforce, in contravention of federal law, a seemingly collusive settlement agreement which expressly carved out any contractual obligations that would conflict with federal law. The modifications to SAVE have been found unlawful and vacated by the only court of competent jurisdiction to consider them on the merits. At this moment in time, therefore, as a matter of law, they are unlawful, and that makes this appeal a very simple matter.

### *This appeal presents a single, narrow issue, which can be briefed and resolved on an expedited schedule*

Appellants agree with Appellees that the central question in this appeal is whether "Defendants' obligations under the settlement agreement are contrary to law." Opp. 10. But contrary to Appellees' understanding, to prevail on that question in this Court, Appellants need only show that the *Florida* court could not—without any adversarial proceeding or consideration of the relevant legal questions— properly enforce a settlement agreement by requiring the federal government to use a system which had already been held unlawful and vacated by another district court. That question is easy: the *LWV* Vacatur Decision concluded the modified SAVE

system violated three federal statutes, 2026 WL 1784297, at *2, and the Settlement Agreement that the district court subsequently sought to enforce explicitly excused DHS from "the performance of" any "obligation" that "would be inconsistent with the United States Constitution, or with any federal statute in effect at the time of such performance." D.Ct. ECF 30-1, ¶ 17. Moreover, the *LWV* Vacatur Decision vacated and set aside the modified SAVE system, and "[w]hen a federal court sets aside an agency action, the federal court vacates that [action]—in much the same way that an appellate court vacates the judgment of a trial court," *Corner Post, Inc. v. Bd. Of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 830 (2024) (Kavanaugh, J., concurring). When a federal court exercises this power to "strike down an agency's work . . . the disapproved agency action is treated as though it had never happened." *Griffin v. HM Florida-ORL, LLC*, No. 23A366, 144 S.Ct. 1, 2 n.1 (Mem) (2023) (Kavanaugh, J., concurring in the denial of the application for stay) (internal quotation omitted).

The *LWV* Vacatur Decision holding unlawful, vacating, and setting aside the federal government's use of that system had exactly such effect. In the absence of any contrary determination by any court of competent jurisdiction on the basis of any adversarial proceeding or consideration of the merits, the *LWV* Vacatur Decision's holding on the unlawfulness of modified SAVE and its vacatur is the only relevant word on the subject. Thus, the modified SAVE system is–as of now–

unlawful, and the federal government's continued operation of it violates, at a minimum, the Administrative Procedure Act, the Social Security Act, and the Privacy Act. *See LWV*, 2026 WL 1784297 at *20, *21, *28.[1]

The only question that remains for this Court to consider, then, is whether, against that legal backdrop, the *Florida* court could nevertheless order DHS to make the system available as part of the enforcement of a settlement agreement which expressly disclaims any obligation on the federal government "inconsistent with . . . [a] federal statute in effect."[2] *Florida* ECF 30-1 ¶ 17. And that is a narrow question, requiring only consideration of: (1) the legal effect of the *LWV* decision; (2) the legal non-effect of the *Florida* court's "implicit determination" of the legality of the

---

[1] Not only is this the law, it is also the only workable rule. Allowing the federal government to contract around adverse APA vacatur would leave the judiciary's power to "say what the law is," *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 385 (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803), a paper tiger with no meaningful ability to rein in unlawful government action. *See United States v. Loew's, Inc.*, 371 U.S. 38, 51 (1962), *abrogated on other grounds by Illinois Tool Works, Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006) ("[L]aws cannot be avoided merely by claiming that the otherwise illegal conduct is compelled by contractual obligations. Were it otherwise, laws could be nullified. Contractual obligations cannot thus supersede statutory imperatives."). The "United States" is, therefore, not "bound" by an "agreement to do or cause to be done what the law does not sanction or permit." *OPM v. Richmond*, 496 U.S. 414, 420 (1990) (quoting *Utah Power & Light Co. v. United States*, 243 U.S. 389, 408-409 (1917)).

[2] Because the settlement agreement expressly does not and cannot compel a party to it to violate a federal statute, DHS did not in fact violate the settlement agreement when it disabled the unlawful portions of the SAVE system, *contra* Opp. 9 (falsely characterizing as "undisputed that Defendants breached the settlement agreement.").

modified SAVE system; and (3) how the *LWV* decision and the *Florida* non-decision interact under the relevant terms of the *Florida* settlement agreement.

In contrast, Appellees want this Court to undertake a *de novo* consideration of the merits of the *LWV* Vacatur Decision rendered by the District Court for the District of Columbia. *See* Opp. 10 (listing as issues "relevant here" the full slate of issues considered by the *LWV* court after adversarial briefing, including "whether the modified SAVE system violates the Social Security Act," "whether the modified SAVE system violates the Privacy Act," "whether the modified SAVE system violates the Administrative Procedure Act," "whether other federal statutes nevertheless authorize the modified SAVE system," and "constitutional arguments."). Yet in the same breath, Appellees concede that "in this case, Plaintiffs and Defendants have never briefed or litigated *any* of those issues." *Id.*; *see also id.* 14 (conceding "Plaintiffs . . . never briefed" the lawfulness of the SAVE modifications below and thus the "record" is "empty" on those issues). The "empty record" below only confirms the lack of adversity (and thus a justiciable controversy) between Appellees and DHS on the legality of the modified SAVE system. *See Mi Familia Vota v. Fontes*, 152 F.4th 1153, 1156 (9th Cir. 2025) (Nelson, J., concurring in part and dissenting from denial rehearing en banc) ("When 'both litigants desire precisely the same result,' there is 'no case or controversy within the meaning of Art. III of the Constitution.'") (quoting *Moore v. Charlotte-*

*Mecklenburg Bd. of Educ.*, 402 U.S. 47, 48 (1971)).[3] And "[i]t is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). This Court should decline Appellees' implicit request to ignore this bedrock jurisprudential principle by reviewing the merits of the *LWV* court's decision.

The rest of Appellees' arguments suffer from the same misunderstanding about the issue before this Court. As noted, the *LWV* Vacatur Decision vacated modified SAVE, and no court has reached a contrary conclusion after proper consideration. Here, Appellants are not seeking to "bind" the *Florida* court with the decision of the *LWV* court, *contra* Opp. 12, but rather to prevent the *Florida* court from compelling a federal agency from taking incontrovertibly unlawful action. It does not matter that it was a coordinate court which held the modifications and operation of the modified SAVE system to be unlawful; that court vacated and set

---

[3] As Intervenors will explain in their opening brief, the district court also "shirk[ed] party presentation principles" by purporting to make "implicit" and "explicit" merits determinations about modified SAVE's legality despite a total lack of adversarial briefing by the parties on those questions. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) ("Federal courts adhere to the principle of party presentation" and must "rely on the parties to frame the issues for decision and decide only the questions presented") (cleaned up). While the district court saw fit to independently review "the merits briefing in the D.D.C. case" to make up for the lack of adversarial briefing in *this* case, N.D. Fla. ECF No. 54 at 4 n.2, in doing so it plainly exceeded its role in "our adversarial system of justice" by acting as a "roving commission[]" rather than a "passive instrument[] of government," *Margolin*, 146 S. Ct. at 1288.

aside the modifications and the system. That vacatur operates on the federal parties, and that decision has not been controverted. And there is no need or opportunity for Appellees to develop any record here, for the first time on appeal. *Contra* Opp. 14. Rather, the propriety of the *Florida* court's order must necessarily be assessed on the basis of the (lack of) evidence or arguments before that court at the time of its order, the existence of the *LWV* court's vacatur, and the terms of the settlement agreement.

If Appellees wish to argue the merits of the *LWV* Vacatur Decision, they are free to do so in the appropriate venue—including by seeking to intervene in the ongoing proceedings in the D.C. Circuit. Appellees characterize Appellants' decision not to seek to expedite *those* proceedings as undercutting Appellees' desire to reach a resolution of the current judicial deadlock. But those proceedings actually *do* present the issues Appellants seek to shoehorn into this Court, and a regular briefing schedule is appropriate for proper consideration and resolution of that set of complex questions. Further, it is not clear how the current judicial deadlock would be resolved by the D.C. Circuit, as there is no reason to believe that the *Florida* court will willingly withdraw its enforcement order simply because a different circuit affirms the vacatur of the modified SAVE system.

So long as the *LWV* Vacatur Decision stands, Appellants are entitled to the full benefit of that order—namely, the complete shutdown of the modified SAVE

system and system-wide reversion to its pre-modified state. Appellees' suggestion that Appellants should be satisfied with the system not being available in 46 states, Opp. 13, ignores that vacatur acts on a federal agency, and "is not party-restricted." *Career Colleges & Schs. of Texas v. United States Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024), *cert. granted in part sub nom.*, *Dep't of Educ. v. Career Colleges & Schs. of Texas*, 145 S. Ct. 1039 (2025). And while Appellees are correct that "it is the federal government, not [Appellants], that is subject to conflicting orders," Opp. 13, that observation is legally irrelevant, and ignores that the ongoing conflict between those orders nevertheless denies Appellants the full benefit of the *LWV* Vacatur Decision.

***Appellees identify no other issue that cannot be briefed on an expedited basis***

This Court's unambiguous precedents make clear that the *Florida* court's enforcement order is a final order subject to appeal. For purposes of identifying a final order, a "post-judgment proceeding [is] a free-standing litigation," *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 829 (11th Cir. 2010) (quoting *Ass'n of Cmty. Orgs. for Reform Now v. Ill. State Bd. of Elections*, 75 F.3d 304, 206 (7th Cir. 1996)). A postjudgment order—like the *Florida* court's enforcement order—is therefore "deemed final if it disposes of all the issues raised in the motion that initially sparked the postjudgment proceedings." *Mayer v. Wall St. Equity Grp., Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012). Appellees' half-hearted suggestion that the

finality or appealability of the enforcement order presents a live issue requiring time to brief, Opp. 14, is wholly foreclosed by the fact that the order is "apparently the last order to be entered in the action." *Mayer*, 672 F.3d at 1224 (quoting *Delaney's Inc. v. Illinois Union Ins. Co.*, 894 F.2d 1300, 1304 (11th Cir. 1990)).

Appellees also suggest that they need an unexpedited briefing schedule to argue that Appellants lack standing. Opp. 14. Setting to one side that Appellants' standing is not reasonably in question, *see, e.g.*, *Florida* ECF 54 at 11 (district court concluded enforcement "order adversely impacts [Appellants'] interests by depriving them of a portion of the relief that they obtained" in *LWV*), Appellees have already briefed this exact issue below; as Appellees point out, it was *in response* to that briefing that the district court reserved the question of Appellants' standing for this Court. *Id.*

***

Appellants respectfully request the Court expedite this appeal as proposed in their motion to expedite.

10

Dated: July 31, 2026

Respectfully Submitted,

Mark B. Samburg
(D.C. Bar No. 1018533)
Ronald A. Fein
(D.C. Bar No. 90026641)
Robin F. Thurston
(D.C. Bar No. 1531399)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
msamburg@democracyforward.org
rfein@democracyforward.org
rthurston@democracyforward.org

Gerald E. Greenberg
(Fl. Bar No. 440094)
Daniel R. Walsh
(Fl. Bar No. 0124282)
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, FL 33131
(305) 728-0950
ggreenberg@gsgpa.com
dwalsh@gsgpa.com
E-service: efilings@gsgpa.com

*/s/Mark B. Samburg*
Nikhel S. Sus
(D.C. Bar No. 1017937)
John B. Hill
(N.Y. Bar No. 5505508)
Lauren C. Bingham
(Fl. Bar No. 105745)
CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565
nsus@citizensforethics.org
jhill@citizensforethics.org
lbingham@citizensforethics.org

Jon Sherman
(D.C. Bar No. 998271)
Michelle Kanter Cohen
(D.C. Bar No. 989164)
FAIR ELECTIONS CENTER
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 331-0114
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter
.org

*Counsel for Intervenors-Defendants-Appellants*

# CERTIFICATE OF COMPLIANCE

This motion complies with Fed. R. App. P. 27(d)(2)(A) because it contains 2,566 words, excluding those parts of the motion exempted by Fed. R. App. P. 32(f) and Eleventh Circuit Rule 32-4. This motion complies with Fed. R. App. P. 27(a)(5) and (6) because it has been prepared in 14-point Times New Roman font.

Dated: July 31, 2026                                    */s/Mark B. Samburg*