No. 26-12533-C

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

STATE OF FLORIDA, et al.

Plaintiffs-Appellees,

v.

LEAGUE OF WOMEN VOTERS, et al.

Intervenors-Defendants-Appellants.

———————————————

Appeal from the United States District Court for the Northern District of Florida
No. 3:24-cv-00509-TKW-HTC - The Honorable T. Kent Wetherell II

**APPELLANTS' BRIEF**

Aman T. George
Mark B. Samburg
Ronald A. Fein
Robin F. Thurston
DEMOCRACY FORWARD FOUNDATION
P.O. BOX 34553
Washington, DC 20043
(202) 448-9090

Gerald E. Greenberg
Daniel R. Walsh
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, FL 33131
(305) 728-0950

Nikhel S. Sus
John B. Hill
Lauren C. Bingham
CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565

Jon Sherman
Michelle Kanter Cohen
FAIR ELECTIONS CENTER
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 331-0114

*Counsel for Intervenors-Defendants-Appellants*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Counsel for Intervenors-Defendants-Appellants certify to the best of their knowledge that the following individuals and entities may have an interest in the outcome of this case or appeal:

1. American Civil Liberties Union, Amicus in League of Women Voters v. DHS

2. American Civil Liberties Union Foundation, Counsel for Amicus in League of Women Voters v. DHS

3. Azrak, Cesar, Counsel for Defendants in League of Women Voters v. DHS

4. Bingham, Lauren Crowell, Counsel for Intervenors-Defendants-Appellants

5. Bird, Brenna, Plaintiff-Appellee

6. Baum, Christopher J., Counsel for Plaintiffs-Appellees

7. Boyden Gray PLLC, Counsel for Plaintiffs-Appellees

8. Campaign Legal Center, Amicus in League of Women Voters v. DHS

9. Center for Media and Democracy, Amicus in League of Women Voters v. DHS

10. Cannon, Hope T., United States Magistrate Judge

C-1 of 8

11. Christmas, Natalie, Counsel for Plaintiffs-Appellees

12. Citizens for Responsibility and Ethics in Washington, Counsel for Intervenors-Defendants-Appellants

13. Cohen, Michelle Kanter, Counsel for Intervenors-Defendants-Appellants

14. Common Cause, Amicus in League of Women Voters v. DHS

15. Connolly, Jennifer Fountain, Counsel for Plaintiffs in League of Women Voters v. DHS

16. Dashevsky, Reuven, Counsel for Appellees in League of Women Voters v. DHS (D.C. Cir.)

17. Davis, Ashley E., Counsel for Plaintiffs-Appellees

18. Davis, Emily, Counsel for Plaintiffs in League of Women Voters v. DHS

19. Davisson, John L., Counsel for Plaintiffs in League of Women Voters v. DHS

20. Democracy Forward Foundation, Counsel for Intervenors-Defendants-Appellants

21. Department of Homeland Security, Defendant

22. DeSousa, Jeffrey Paul, Counsel for Plaintiffs-Appellees

23. Desta, Yoseph T., Counsel for Plaintiffs in League of Women Voters v. DHS

24. Dewhirst David, Counsel for Plaintiffs-Appellees

25. Electronic Privacy Information Center, Intervenor-Defendant-Appellant

26. Fair Elections Center, Counsel for Intervenors-Defendants-Appellants

27. Fein, Ronald, Counsel for Intervenors-Defendants-Appellants

28. Ferguson, Robert Brent, Counsel for Amicus in League of Women Voters v. DHS

29. State of Florida, Plaintiff-Appellee

30. Florida Attorney General's Office, Counsel for Plaintiffs-Appellees

31. Florida Department of State, Plaintiff-Appellee

32. Francois, Aderson Bellegarde, Counsel for Amicus in League of Women Voters v. DHS

33. Fusion Law, Counsel for Amicus in League of Women Voters v. DHS

34. Gelber Schachter & Greenberg, PA, Counsel for Intervenors-Defendants-Appellants

35. Gelber, Sophie Rose, Counsel for Plaintiffs in League of Women Voters v. DHS

36. George, Aman Tewari, Counsel for Intervenors-Defendants-Appellants

37. Georgetown University Law Center Civil Rights Clinic, Counsel for Amicus in League of Women Voters v. DHS

38. Golembiewski, Kevin A., Counsel for Plaintiffs-Appellees

39. Greenberg, Gerald Edward, Counsel for Intervenors-Defendants-Appellants

40. Guard, John Matthew, Counsel for Plaintiffs-Appellees

41. Hauss, Brian Matthew, Counsel for Amicus in League of Women Voters v. DHS

42. Hickman, Johanna M., Counsel for Plaintiffs in League of Women Voters v. DHS

43. Hill, John, Counsel for Intervenors-Defendants-Appellants

44. Israel, Celia, Amicus in League of Women Voters v. DHS

45. Kunkler, Abigail, Counsel for Plaintiffs in League of Women Voters v. DHS

46. Lanning, Blake E., Counsel for Plaintiffs-Appellees

47. Lawyers Defending American Democracy, Inc., Amicus in League of Women Voters v. DHS

48. League of Women Voters, Intervenor-Defendant-Appellant

49. League of Women Voters of Louisiana, Plaintiff in League of Women Voters v. DHS

50. League of Women Voters of Louisiana Education Fund, Plaintiff in League of Women Voters v. DHS

51. League of Women Voters of Virginia, Plaintiff in League of Women Voters v. DHS

52. LaRose, Frank, Plaintiff-Appellee

53. LeGrand Law, PLLC, Counsel for Amicus in League of Women Voters v. DHS

54. LeGrand, Rebecca S., Counsel for Amicus in League of Women Voters v. DHS

55. Limon-Mercado, Dyana, Amicus in League of Women Voters v. DHS

56. State of Indiana, Plaintiff-Appellee

57. Maradiaga, Karla, Counsel for Amicus in League of Women Voters v. DHS

58. Marziani, Mimi, Counsel for Amicus in League of Women Voters v. DHS

59. Marziani, Stevens & Gonzalez, PLLC, Counsel for Amicus in League of Women Voters v. DHS

60. McCotter, R. Trent, Counsel for Plaintiffs-Appellees

61. McVay, Bradley Robert, Counsel for Plaintiffs-Appellees

62. Montenegro, Steve, Amicus in League of Women Voters v. DHS

63. Morales, Diego, Plaintiff-Appellee

64. Muehlhoff, Jason John, Counsel for Plaintiffs-Appellees

65. Mullin, Markwayne, Defendant

66. Musser, Susan, Counsel for Amicus in League of Women Voters v. DHS

67. State of Ohio, Plaintiff-Appellee

68. Oishi, Nina, Counsel for Amicus in League of Women Voters v. DHS

69. Padilla, Alex, Amicus in League of Women Voters v. DHS

70. Pate, Paul, Plaintiff-Appellee

71. Percival, James Hamilton II, Counsel for Plaintiffs-Appellees

72. Peters, Gary, Amicus in League of Women Voters v. DHS

73. Petersen, Warren, Amicus in League of Women Voters v. DHS

74. Pezzi, Stephen Michael, Counsel for Defendants

75. Protect Democracy Project, Amicus in League of Women Voters v. DHS

76. Riess, Daniel Martin, Counsel for Defendants

77. Rohnicker, Michael J., Counsel for Amicus in League of Women Voters v. DHS

78. Samburg, Mark B., Counsel for Intervenors-Defendants-Appellants

79. Service Employees Internation Union, Amicus in League of Women Voters v. DHS

80. Sherman, Jonathan, Counsel for Intervenors-Defendants-Appellants

81. Soltan, Elizabeth, D., Counsel for Amicus in League of Women Voters v. DHS

82. Sooknanan, Sparkle L, United States District Court Judge

83. Stephens, Caleb Anthony, Counsel for Plaintiffs-Appellees

84. Sus, Nikhel, Counsel for Intervenors-Defendants-Appellants

85. State of Texas, Intervenor in League of Women Voters v. DHS

86. Texas Attorney General's Office, Counsel for Intervenor in League of Women Voters v. DHS

87. Texas Civil Rights Project, Amicus in League of Women Voters v. DHS

88. Thorburn, Ali, Counsel for Intervenor in League of Women Voters v. DHS

89. Thurston, Robin, Counsel for Intervenors-Defendants-Appellants

90. Travis County, Texas, Amicus in League of Women Voters v. DHS

91. Ury, Steven, Counsel for Amicus in League of Women Voters v. DHS

92. Valencia, Patrick C., Counsel for Plaintiffs-Appellees

93. Van de Bogart, Joseph Scott, Counsel for Plaintiffs-Appellees

94. Venzke, Cody James, Counsel for Amicus in League of Women Voters v. DHS

95. Walsh, Daniel R., Counsel for Intervenors-Defendants-Appellants

96. Wassdorf, William D., Counsel for Intervenor in League of Women Voters v. DHS

97. Wessan, Eric H., Counsel for Plaintiffs-Appellees

98. Wetherell, T. Kent II, United States District Judge

99. Whistleblower Partners, LLP, Counsel for Amicus in League of Women Voters v. DHS

100. Whitaker, Henry Charles, Counsel for Plaintiffs-Appellees

101. Whitesell, S. Lee, Counsel for Amicus in League of Women Voters v. DHS

102. Wilmer Cutler Pickering Hale and Dorr LLP, Counsel for Amicus in League of Women Voters v. DHS

103. Young, William D., Counsel for Plaintiffs-Appellees

Intervenors-Defendants-Appellants further state that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

Dated: August 7, 2026                              */s/ John B. Hill*

## STATEMENT REGARDING ORAL ARGUMENT

Because this appeal requires only that the Court interpret the straightforward language of a settlement agreement and apply blackletter law about when there is (and is not) a justiciable controversy between parties, the Court can decide the case expeditiously and without oral argument. If the Court believes oral argument is appropriate, however, Intervenors-Defendants-Appellants the League of Women Voters ("LWV") and the Electronic Privacy Information Center ("EPIC") (collectively, "Intervenors") are prepared to present oral argument on an expedited basis.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS  AND CORPORATE DISCLOSURE STATEMENT ..............................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS.................................................................................... ii

TABLE OF AUTHORITIES ............................................................................ iv

INTRODUCTION ..............................................................................................1

JURISDICTIONAL STATEMENT ...................................................................5

STATEMENT OF THE ISSUES........................................................................6

STATEMENT OF THE CASE............................................................................7

I.    Legal Background...................................................................................7

    A.    The Privacy Act of 1974 ...............................................................7

    B.    The SAVE System..........................................................................8

II.   Statement of the Facts...........................................................................10

    A.    Florida, Indiana, Iowa, and Ohio sue DHS over its response to voter citizenship verification requests. .......................................10

    B.    DHS and SSA modify SAVE.........................................................11

    C.    Intervenors challenge the SAVE modifications. .............................13

    D.    Plaintiffs consolidate their litigation in *Florida* and enter into the Settlement Agreement with DHS........................................................14

    E.    The *LWV* court grants summary judgment and vacates modified SAVE and the SAVE SORNs. ..........................................................17

    F.    Plaintiffs move to enforce the Settlement Agreement in the district court below. ...................................................................................18

    G.    Post-Judgment proceedings in *LWV*................................................21

STANDARD OF REVIEW ..............................................................................23

SUMMARY OF THE ARGUMENT .................................................................23

ARGUMENT ...................................................................................................25

I.    Intervenors have standing...................................................................25

II.    The district court erred by ordering DHS to reinstate the SAVE modifications for Plaintiffs. ..................................................................26

    A.    DHS did not breach the Settlement Agreement by complying with the *LWV* Vacatur Decision. ...................................................................26

    B.    The district court erred in adjudicating the legality of the SAVE modifications with no adversarial briefing or party presentation of the issues..................................................................................................29

    C.    The district court abused its discretion because its Enforcement Order was inappropriately tailored. ..............................................................39

    D.    Principles of comity should have prevented the district court from reinstating modified SAVE when doing so contravened the *LWV* Vacatur Decision. ..............................................................................44

CONCLUSION ....................................................................................................46

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iii

# TABLE OF AUTHORITIES

## Cases

*Al Najjar v. Ashcroft*,
  273 F.3d 1330 (11th Cir. 2002) ..............................................................................2

*Azar v. Allina Health Servs.*,
  587 U.S. 566 (2019)...............................................................................................43

*Bird v. Noem*,
  No. 24-cv-423 (S.D. Iowa) ....................................................................................11

*Borup v. W. Operating Corp.*,
  130 F.2d 381 (2d Cir. 1942) ..................................................................................19

*Brittingham v. U.S. Comm'r*,
  451 F.2d 315 (5th Cir. 1971) .................................................................................45

*Carver v. Knox Cnty.*,
  887 F.2d 1287 (6th Cir. 1989) ...............................................................................46

*Chase Nat'l Bank v. City of Norwalk*,
  291 U.S. 431 (1934)...............................................................................................40

*Citizens for a Better Env't v. Gorsuch*,
  718 F.2d 1117 (D.C. Cir. 1983)..............................................................................30

*Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*,
  219 F.3d 1301 (11th Cir. 2000) .............................................................................38

*Cresthaven Ashley Master Ass'n, Inc. v. Empire Indem. Ins. Co.*,
  2024 WL 3690863 (11th Cir. Aug. 7, 2024) .........................................................38

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  592 U.S. 1 (2020)...................................................................................................42

*Doe ex rel. Doe v. School Bd. For Santa Rosa County, Fla*,
  711 F. Supp. 2d 1325 (N.D. Fla. 2010) ................................................................26

*Driftless Area Land Conservancy v. Valcq*,
  16 F.4th 508 (7th Cir. 2021) .................................................................................42

*FAA v. Cooper*,
  566 U.S. 284 (2012)..................................................................................................8

*Florida v. HHS*,
  19 F.4th 1271 (11th Cir. 2021) ...................................................................44, 45, 46

## Cases—continued

*Glassroth v. Moore*,
   347 F.3d 916 (11th Cir. 2003) ........................................................37

*Griffin v. HM Fla.-ORL, LLC*,
   144 S. Ct. 1 (2023) .........................................................................42

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*,
   445 U.S. 375 (1980) ........................................................................30

*Hewitt v. Comm'r*,
   21 F.4th 1336 (11th Cir. 2021) ......................................................43

*Indiana v. DHS*,
   No. 25-cv-732 (S.D. Ind.) ...............................................................11

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ......................................................23

*League of Women Voters v. DHS*,
   No. 26-5243 (D.C. Cir.) ..................................................................22

*Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of
   Cleveland*,
   478 U.S. 501 (1986) ........................................................................40

*Londrigan v. FBI*,
   670 F.2d 1164 (D.C. Cir. 1981) ........................................................7

*LWV v. DHS*,
   2026 WL 1784297 (D.D.C. June 22, 2026)........... 2, 8, 13, 17, 26, 27, 39, 42, 44

*LWV v. DHS*,
   2025 WL 3198970 (D.D.C. Nov. 17, 2025) ......................................14

*LWV v. DHS*,
   2026 WL 1972055 (D.D.C. July 8, 2026) ............................21, 28, 37

*Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*,
   939 F.3d 1145 (11th Cir. 2019) ...................................................5, 23

*Margolin v. National Association of Immigration Judges*,
   146 S.Ct. 1285 (2026)................................................................36, 37

*Mary v. QEP Energy Co.*,
   798 F. App'x 811 (5th Cir. 2020) ...................................................38

*Mayer v. Wall St. Equity Grp., Inc.*,
   672 F.3d 1222 (11th Cir. 2012) ........................................................5

**Cases—continued**

*Metro. Hous. Dev. Corp. v. Village of Arlington Heights*,
  616 F.2d 1006 (7th Cir. 1980) ....................................................................30

*Mi Familia Vota v. Fontes*,
  152 F.4th 1153 (9th Cir. 2025) ...................................................................30

*Moore v. Charlotte-Mecklenburg Bd. of Educ.*,
  402 U.S. 47 (1971)...............................................................30, 32, 36, 46

*Muskrat v. United States*,
  219 U.S. 346 (1911)...................................................................................30

*Nash., C. & St. L. Ry. Co. v. United States*,
  113 U.S. 261 (1885)...................................................................................29

*NLRB v. Ochoa Fertilizer Corp.*,
  368 U.S. 318 (1961)...................................................................................29

*NRC v. Texas*,
  605 U.S. 665 (2025)...................................................................................37

*Ohio v. DHS*,
  No. 24-cv-283 (S.D. Ohio) ........................................................................11

*OPM v. Richmond*,
  496 U.S. 414 (1990)...................................................................................28

*Original Brooklyn Water Bagel Co. v. Bersin Bagel Grp., LLC*,
  817 F.3d 719 (11th Cir. 2016) ...................................................................39

*Peery v. City of Miami*,
  977 F.3d 1061 (11th Cir. 2020) .................................................................23

*Rufo v. Inmates of Suffolk Cnty. Jail*,
  502 U.S. 367 (1992)...................................................................................30

*Salazar v. Buono*,
  559 U.S. 700 (2010)..............................................................................25, 26

*Stovall v. City of Cocoa*,
  117 F.3d 1238 (11th Cir. 1997) .....................................................32, 33, 34, 45

*Swift & Co. v. United States*,
  276 U.S. 311 (1928)...................................................................................29

*Texas v. Dep't of Labor*,
  756 F. Supp. 3d 361 (E.D. Tex. 2024)........................................................28

## Cases—continued

*Texas v. United States*,
   126 F.4th 392 (5th Cir. 2025) ...................................................................42

*U.S. Steel Corp. v. U.S. Envt'l Prot. Agency*,
   595 F.2d 207 (5th Cir. 1979) ...................................................................43

*United States v. Burke*,
   504 U.S. 229 (1992)...................................................................................36

*United States v. City of Miami*,
   664 F.2d 435 (5th Cir. 1981) .............................................................30, 33

*United States v. Loew's, Inc.*,
   371 U.S. 38 (1962).....................................................................................27

*United States v. Robinson*,
   83 F.4th 868 (11th Cir. 2023) ..................................................................40

*United States v. Sineneng-Smith*,
   590 U.S. 371 (2020)...................................................................................36

*Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*,
   701 F.3d 669 (11th Cir. 2012) ..................................................................23

*Utah Power & Light Co. v. United States*,
   243 U.S. 389 (1917)...................................................................................28

## Statutes & Regulations

5 U.S.C.
   § 552a(a)(5)..................................................................................................8
   § 552a(b) ......................................................................................................8
   § 552a(b)(3) ...............................................................................................43
   § 552a(e)(4)..................................................................................................8
   § 552a(e)(4)(D) .........................................................................................43
   § 552a(e)(11)................................................................................................8
   § 552a note).................................................................................................7
   § 706...........................................................................................................42

8 U.S.C. § 1373 ...................................................................................10, 31

28 U.S.C. § 1291 ........................................................................................5

42 U.S.C.
   § 1320b-7(d)................................................................................................8
   § 1320b-7 note ...........................................................................................8

**Statutes & Regulations—continued**

Notice of a Modified System of Records, 90 Fed. Reg. 48948 (Oct. 31, 2025) ................................................................................12, 13, 15

Notice of a Modified System of Records, 90 Fed. Reg. 50879 (Nov. 12, 2025) ........................................................................................12, 13

Notice of Modified System of Records, 85 Fed. Reg. 31798 (May 27, 2020) ...................................................................................................8, 9

Pub. L. No. 93-579, § 2(b)(4), 88 Stat. 1896 ............................................7

Pub. L. No. 99-603, title I
§ 121(a)(1)(C), 100 Stat. 3359.................................................................8
§ 121(c)(1), 100 Stat. 3391 .....................................................................8

**Other Authorities**

DHS, Optimizing SAVE: New Options to Create Cases with a Social Security Number and by Bulk Upload (May 22, 2025) ......................................12

DHS, Privacy Threshold Analysis for the SAVE Program (approved July 17, 2025)..........................................................................................13

DHS, Privacy Threshold Analysis for the SAVE Program (approved Sept. 11, 2025) ..................................................................................9, 11, 12

Letter Agreement Providing For Information Sharing Between DHS, USCIS, and SSA Regarding Citizenship (May 15, 2025)...................................11

Letter from President Trump to Ohio Secretary of State LaRose (Oct. 8, 2025) .....................................................................................................31

Letter from USCIS Director Ur M. Jaddou to Ohio Sec'y of State Frank La Rose (Oct. 10, 2024) .............................................................................9

Press Release, *Indiana Secretary of State Diego Morales Signs Agreement with Department of Homeland Security to Identify Noncitizens on Indiana Voter Rolls*, Ind. Sec'y of State (July 7, 2025) ...........................................................................................................31

Press Release, *Iowa Secretary of State's audit of voter registration lists finds 277 confirmed noncitizens registered to vote* Iowa Sec'y of State (March 20, 2025)......................................................................31

S. Comm. on Gov't Operations and H.R. Comm. on Gov't Operations, 94th Cong., Source Book on Privacy 168 (1976)................................................7

**Other Authorities—continued**

USCIS, *Voter Registration and Voter List Maintenance Fact Sheet*
(Jan. 24, 2025)........................................................................................9

**INTRODUCTION**

The district court misread straightforward language in a settlement agreement and misapplied blackletter law about what courts can (and cannot) do when approving and enforcing such agreements between non-adverse parties. This Court should correct those errors.

On November 28, 2025, Plaintiffs Florida, Indiana, Iowa, and Ohio and Defendants the Secretary of Homeland Security and the Department of Homeland Security (collectively, "DHS") filed a settlement agreement in the district court that requires maintaining certain modifications to DHS's Systematic Alien Verification for Entitlements ("SAVE") system, including integrating millions of Americans' sensitive personal data housed at the Social Security Administration ("SSA"). The next business day, on December 1, the district court entered the parties' proposed order without alteration, approving the settlement agreement in boilerplate language and dismissing the case with prejudice. At no point did those parties engage in adversarial proceedings over whether the SAVE modifications complied with federal law. Nor did the district court's cursory order approving the settlement address that unbriefed, unpresented legal question. And crucially, the settlement agreement includes a carve-out stating that "[n]othing contained in this Settlement Agreement shall impose on [DHS] any duty, obligation, or requirement, the

1

performance of which would be inconsistent with the United States Constitution, or with any federal statute in effect at the time of such performance." Doc. 30-1 ¶ 17.[1]

Thereafter, a different federal court, in a case filed months before the settlement agreement here, issued a thorough decision holding that those same SAVE modifications violated the Social Security Act, the Privacy Act, and the Administrative Procedure Act ("APA"), and therefore "set[] aside and vacate[d]" the modified system. *LWV v. DHS*, -- F. Supp. 3d --, 2026 WL 1784297, at *35 (D.D.C. June 22, 2026) (the "*LWV* Vacatur Decision"). The court issued that decision following robust summary judgment briefing and review of a voluminous administrative record. The *LWV* court was—and remains—the *only* court to consider the legality of the SAVE modifications after adversarial proceedings as part of a justiciable "case or controversy." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2002) (Article III's case-or-controversy requirement "guarantees that courts consider only matters presented in an actual adversarial context"). Indeed, Plaintiffs concede they "never briefed or litigated" or "develop[ed] any sort of record" on the legality of the SAVE changes in the proceedings below. Dkt. 20 at 10. That is

---

[1] Citations to this Court's docket use "Dkt." Citations to the docket in the district court proceedings below use "Doc." Citations to the docket in *LWV v. DHS*, No. 1:25-cv-03501-SLS (D.D.C.) use "*LWV* ECF."

because, at all relevant times, Plaintiffs and DHS *agreed* that the SAVE modifications were lawful, confirming their lack of adversity on that issue.

And so, when DHS complied with the *LWV* Vacatur Decision and Plaintiffs then moved to enforce their settlement agreement below to regain access to modified SAVE, the district court's response should have been straightforward: the *LWV* Vacatur Decision triggered the settlement agreement's carve-out for unlawful conduct and thus, under the agreement's plain terms, it could *not* be enforced against DHS—let alone SSA, which is not a party to this case. That should have been the end of the matter.

But the district court chose a different path. It erroneously interpreted the settlement agreement's carve-out for unlawful conduct and then compounded the error by reaching out to address an issue not before the district court. Despite the total absence of adversarial briefing or an evidentiary record on the legality of the SAVE modifications, the district court later explained that, in earlier approving the settlement agreement, it had "implicitly" determined that the SAVE modifications were lawful and complied fully with multiple statutes that the parties never even mentioned to the district court. *See* Doc. 45 (the "Enforcement Order") at 6. The court then made that determination "explicit," *id.* at 6 n.5, and ordered DHS to comply with the settlement agreement despite both the contrary *LWV* Vacatur Decision and the fact that SSA is not even a party to this case. But there was never

3

a justiciable controversy in the district court about the legality of the SAVE modifications, and this Court plainly lacks jurisdiction to evaluate their legality in the first instance. Because the Enforcement Order flouted basic principles of Article III adversity and party presentation, this Court should reverse.

Plaintiffs appear intent on using this appeal as a vehicle to collaterally attack the *LWV* Vacatur Decision. *See* Dkt. 20 at 10-12. But this Court should decline their invitation to ignore the structure of the federal judiciary and engage in direct review of an out-of-circuit district court's merits decision. Plaintiffs cannot litigate the merits of the *LWV* Vacatur Decision in this Court. If they wish to challenge that decision, they are free to seek intervention in the *LWV* litigation, just as the State of Texas successfully did. *See LWV* ECF 43, 86.

What Plaintiffs *can* do in this Court is (attempt to) defend the *Florida* court's decision to enforce a settlement agreement between non-adverse parties that expressly carved out any contractual obligations that would conflict with federal law. The modifications to SAVE have been held unlawful and vacated by the only court of competent jurisdiction to consider them on the merits. At this moment, therefore, as a matter of law, they are unlawful. And the Settlement Agreement excuses such unlawful conduct. That makes this appeal a simple matter.

Because DHS did not breach the settlement agreement by complying with the *LWV* Vacatur Decision, and because there was no adversarial briefing or record upon

4

which the district court could have rendered a contrary merits decision on the legality of the SAVE modifications, the Enforcement Order should be reversed.

## JURISDICTIONAL STATEMENT

This is an appeal of the district court's post-judgment order enforcing a settlement agreement between Plaintiffs and DHS. *See* Doc. 45; *see also* Doc. 30-1 (the "Settlement Agreement"); Doc. 31 ("the Dismissal Order"). The Enforcement Order was a final decision of the district court which is appealable under 28 U.S.C. § 1291. Such an order on a "motion to enforce [a] Settlement Agreement . . . is final when it disposes of all the issues raised in the motion that initiated the post-judgment proceedings." *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1161 (11th Cir. 2019). Because the Enforcement Order "disposed of the entire post-judgment action, leaving nothing more for the district court to do[,] . . . it is properly characterized as a final and appealable order." *Id.* at 1162; *accord Mayer v. Wall St. Equity Grp., Inc.*, 672 F.3d 1222, 1224 (11th Cir. 2012).

## STATEMENT OF THE ISSUES

(1) Whether the district court erred by concluding DHS violated the Settlement Agreement by complying with the *LWV* Vacatur Decision and disabling Plaintiffs' access to the modified SAVE system—considering the Agreement's carve-out for DHS's "performance of" any "duty, obligation, or requirement" that would be "inconsistent with . . . any federal statute."

(2) Whether the district court erred by ordering relief based on its "implicit" and post-judgment "explicit" determinations that the SAVE modifications complied with the Social Security Act and Privacy Act, despite the lack of adversarial briefing or any record developed by the parties below on those questions.

(3) Whether the district court erred by ordering relief that required: (1) SSA—a non-party to the Settlement Agreement and to the proceedings below—to violate a binding decision of another federal court; and (2) DHS and SSA to immediately reinstate SAVE's previously vacated functionality, circumventing the requirements for new agency action under the Privacy Act and APA.

**STATEMENT OF THE CASE**

## I.    Legal Background

### A.    The Privacy Act of 1974

The Privacy Act of 1974 established "certain safeguards for an individual against an invasion of personal privacy." Pub. L. No. 93-579, § 2(b)(4), 88 Stat. 1896, 1896 (codified at 5 U.S.C. § 552a note). Congress enacted the statute amid the "growing awareness that governmental agencies were accumulating an ever-expanding stockpile of information about private individuals that was readily susceptible to both misuse and the perpetuation of inaccuracies that the citizen would never know of, let alone have an opportunity to rebut or correct," which "could soon make Orwell's vision of 1984 a reality." *Londrigan v. FBI*, 670 F.2d 1164, 1169 (D.C. Cir. 1981) (cleaned up). The Act erects a series of substantive and procedural safeguards that work together to prevent the government from creating "centralized Federal information systems" or "interagency computer data banks" that consolidate Americans' sensitive information across agencies in ways that could endanger our fundamental rights. S. Comm. on Gov't Operations and H.R. Comm. on Gov't Operations, 94th Cong., Source Book on Privacy 168, 217, 885 (1976), https://perma.cc/9W9F-R5ZL.

Pertinent here, the Privacy Act makes it "unlawful for an agency to disclose a record to another agency" or to any other entity "without the written consent of the

person to whom the record pertains," subject to "certain exceptions." *FAA v. Cooper*, 566 U.S. 284, 289 n.2 (2012) (citing 5 U.S.C. § 552a(b)). It also requires that when federal agencies establish or modify "systems of records"—*i.e.*, systems containing records about individuals that are retrievable by unique identifiers, *see* 5 U.S.C. § 552a(a)(5)—agencies must publish a notice (called a System of Records Notice, or SORN) in the Federal Register explaining the system, its records, and its uses, and provide opportunity for public comment at least 30 days before the system takes effect. *See id.* § 552a(e)(4), (e)(11) (detailing SORN requirements).

### B.    The SAVE System

The Immigration Reform and Control Act of 1986 directed DHS's predecessor to establish a "system"—the SAVE system—to help federal, state, and local agencies verify whether "aliens" were eligible for certain government "benefits." *See* Pub. L. No. 99-603, title I, § 121(a)(1)(C), 100 Stat. 3359, 3384-86 (1986), *codified at* 42 U.S.C. § 1320b-7(d); *id.* § 121(c)(1), 100 Stat. at 3391, *codified at* 42 U.S.C. § 1320b-7 note. SAVE is a "system of records" under the Privacy Act subject to the statute's notice-and-comment requirements. *See, e.g.*, Notice of Modified System of Records, 85 Fed. Reg. 31798 (May 27, 2020) ("2020 SAVE SORN"); *LWV* Vacatur Decision, 2026 WL 1784297, at *5 ("prior to May 2025, DHS recognized SAVE as a system of records subject to the Privacy Act— which means that DHS appeared to comply with the statute's notice-and-comment

8

requirements and issued SORNs for changes to SAVE"). Since 2009, one purpose for which states may opt to use SAVE is to verify the citizenship of certain registered voters. *See* Letter from USCIS Director Ur M. Jaddou to Ohio Sec'y of State Frank La Rose at 1, (Oct. 10, 2024), https://perma.cc/7JNB-TUPD. Plaintiffs Ohio and Florida are two of the states that previously used SAVE for that purpose. *See id.* at 1 n.3.

Before 2025, SAVE was limited in three critical respects. First, SAVE only enabled queries of records of individuals who were born abroad; SAVE was "unable to verify information on citizens born in the United States . . . under any circumstances." USCIS, *Voter Registration and Voter List Maintenance Fact Sheet* (Jan. 24, 2025), https://perma.cc/QW29-JZK8. Second, SAVE only accessed records stored in DHS systems and certain immigration-related systems at the Department of Justice and the State Department. *See* 2020 SAVE SORN, 85 Fed. Reg. at 31802. SAVE did not access SSA databases or allow searches using full or partial SSNs. Third, SAVE only allowed individualized searches; users could not conduct bulk searches of more than one person's data at a time. *See* DHS, Privacy Threshold Analysis for the SAVE Program, at 3 (approved Sept. 11, 2025), https://perma.cc/A44N-4729 ("Sept. 2025 SAVE PTA").

9

## II.    Statement of the Facts

### A. Florida, Indiana, Iowa, and Ohio sue DHS over its response to voter citizenship verification requests.

The State of Florida and the Florida Department of State (the "Florida Plaintiffs") initiated this case against DHS on October 16, 2024. Doc. 1. The complaint claimed that DHS failed to respond to inquiries regarding voter verification—in particular requests to confirm voters' citizenship—in a timely manner, and that DHS should have to respond to such inquiries using "any and all reasonably available information in Defendants' custody." *Id.* ¶¶ 46, 52, 61. The Florida Plaintiffs' legal claims focused on DHS's alleged obligations under 8 U.S.C. § 1373(c), which requires immigration authorities to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual . . . by providing the requested verification or status information." *See* Doc. 1, ¶¶ 43-62. Although the original complaint discussed the SAVE system in the "Factual Background" section, *see id.* ¶¶ 27-42, and argued that SAVE responses were inadequate to satisfy DHS's duties under § 1373, *see id.* ¶¶ 53-62, the Florida Plaintiffs did not request any relief related to SAVE, *see id.* at pp. 15-16 ("Prayer for Relief").

DHS never answered the complaint, instead filing unopposed or consent extensions to respond on December 9, 2024, Doc. 8; February 5, 2025, Doc. 15; May 15, 2025, Doc. 19; July 15, 2025, Doc. 23; and September 11, 2025, Doc. 25.

10

While this litigation was in a holding pattern, DHS also effectively paused similar litigation brought by Indiana, Iowa, and Ohio. *See Indiana v. DHS*, No. 25-cv-732 (S.D. Ind., filed Apr. 16, 2025); *Bird v. Noem*, No. 24-cv-423 (S.D. Iowa, filed Dec. 3, 2024); *Ohio v. DHS*, No. 24-cv-283 (S.D. Ohio, filed Oct. 24, 2024).

### B.    DHS and SSA modify SAVE.

In May 2025, DHS and SSA executed an agreement outlining a new "information sharing" arrangement between the two agencies for purposes of providing SAVE access to SSA information and allowing SAVE users to run bulk searches, including searches of SSA databases, using full or partial SSNs. *See* Letter Agreement Providing For Information Sharing Between DHS, USCIS, and SSA Regarding Citizenship (May 15, 2025).[2]

The resulting modified SAVE system transformed SAVE's prior functionality in three key ways:

First, modified SAVE for the first time included records about individuals who are U.S. citizens by birth, "which was previously not available." *See* Sept. 2025 SAVE PTA, *supra*, at 5.

Second, modified SAVE incorporated SSA records, allowing user agencies to search citizenship information using full and partial SSNs, *id.* at 3, 21, and allowing

---

[2] https://www.ssa.gov/foia/resources/proactivedisclosure/2025/May%2015,%20202 5%20SSA-DHS-USCIS%20Agreement_Redacted.pdf.

SAVE to access SSA's "Numident" system, "the master file of Social Security Administration records containing information about individuals who have applied for or been assigned a Social Security Number. This file includes records for applications, claims, and death records related to individuals with a Social Security Number." *Id.* at 10.

And third, modified SAVE added a "new bulk uploader/list processor function that allows user agencies to upload lists of benefit applicants." *Id.* at 3.

DHS launched modified SAVE that same month. *See* DHS, Optimizing SAVE: New Options to Create Cases with a Social Security Number and by Bulk Upload (May 22, 2025), https://perma.cc/5WDA-AD3W. At that time, neither DHS nor SSA published a revised SORN or provided an opportunity for the public to comment on the modifications to the system. *See* Notice of a Modified System of Records, 90 Fed. Reg. 48948 (Oct. 31, 2025) ("2025 DHS SAVE SORN") (dated five months after launch of modified SAVE); Notice of a Modified System of Records, 90 Fed. Reg. 50879 (Nov. 12, 2025) ("2025 SSA SAVE SORN") (dated six months after launch of modified SAVE). Internal DHS "Privacy Threshold Analysis" documents from July and September 2025 reveal that DHS knew the SAVE modifications were "not in compliance" with the Privacy Act, and that "[s]hortfalls in data accuracy" with respect to SAVE's newly incorporated data "could cause incomplete or false results." Sept. 2025 SAVE PTA, *supra*, at 17, 41;

12

*see also* DHS, Privacy Threshold Analysis for the SAVE Program, at 3 (approved July 17, 2025), https://perma.cc/MR4J-P2FR.

### C.    Intervenors challenge the SAVE modifications.

Intervenors (and other plaintiffs) sued DHS and SSA in September 2025 in the District Court for the District of Columbia to challenge modified SAVE as substantively and procedurally unlawful. *See generally LWV* Vacatur Decision, 2026 WL 1784297. The plaintiffs also moved for preliminary relief. *Id.* While that motion was pending, DHS and SSA belatedly published updated SORNs for modified SAVE. *See* 2025 DHS SAVE SORN, 90 Fed. Reg. 48948; 2025 SSA SAVE SORN, 90 Fed. Reg. 50879. Although DHS and SSA solicited comments from the public on the SORNs, the SORNs also provided that modified SAVE would be effective automatically at the close of the comment period (*i.e.*, before either agency could consider, respond to, or address the comments). *See* 2025 DHS SAVE SORN, 90 Fed. Reg. at 48949 ("This modified system will be effective upon publication. New or modified routine uses will be effective December 1, 2025."); 2025 SSA SAVE SORN, 90 Fed. Reg. at 50880 (similar).

On November 17, 2025, the *LWV* court wrote it was "troubled by the recent changes to SAVE" and that it "doubt[ed] the lawfulness of the Government's actions," but denied preliminary relief because the plaintiffs had not yet

13

demonstrated irreparable injury. *LWV v. DHS*, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025).

While the *LWV* litigation was ongoing, the State of Texas filed an emergency motion to intervene in that case to protect its access to modified SAVE. *LWV* ECF 43 at 6. Texas, like Florida, had filed its own suit against DHS "seeking to compel Federal Defendants' disclosure of citizenship and immigration information through the SAVE system under 8 U.S.C. § 1373." *Id.* at 9. On April 6, 2026, the *LWV* court permitted Texas to intervene. *LWV* ECF 86. None of the Plaintiffs here have moved to intervene in *LWV* or the appeal of the *LWV* Vacatur Decision.

**D.    Plaintiffs consolidate their litigation in *Florida* and enter into the Settlement Agreement with DHS.**

There was a flurry of activity in this case on the day after Thanksgiving, November 28, 2025—six months after DHS and SSA modified SAVE based on the assertion that 8 U.S.C. § 1373 required DHS to respond to states' inquiries about voters' citizenship, four months after DHS internally acknowledged the SAVE modifications were "not in compliance" with the Privacy Act, and just eleven days after the *LWV* court expressed doubts about the SAVE modifications' legality.

To start, the Florida Plaintiffs filed an amended complaint, adding the other Plaintiffs—Ohio, the Ohio Secretary of State, the Iowa Attorney General, the Iowa Secretary of State, Indiana, and the Indiana Secretary of State—as parties. Doc. 29.

14

The causes of action and prayer for relief in the Amended Complaint were unchanged from the original complaint, focusing again on allegations about DHS's failure to comply with 8 U.S.C. § 1373, notwithstanding the changes to modified SAVE. *Compare* Doc. 1, pp. 11-16 (Counts 1-4 and "Prayer for Relief") *and* Doc. 29, pp. 20-24 (Counts 1-4 and "Prayer for Relief").[3] The amended complaint was filed with DHS's consent. *See* Doc. 29 at p. 1 n.1.

Along with the Amended Complaint, Plaintiffs also filed an unopposed motion to dismiss. *See* Doc. 30. The motion to dismiss stated that Plaintiffs and DHS had settled all claims and attached the Settlement Agreement as an exhibit. *See id.*; *see also* Doc. 30-1 (Settlement Agreement). In the motion to dismiss, Plaintiffs requested that the district court "dismiss this case with prejudice pursuant to Rule

---

[3] The Amended Complaint addressed the 2025 modifications to SAVE in a single paragraph, stating:

> Beginning in 2025, DHS/USCIS began making several changes to the SAVE system. *See* Privacy Act of 1974; System of Records, 90 Fed. Reg. 48948 (Oct. 31, 2025) (describing changes). DHS/USCIS is in the process of adding individuals who are U.S. citizens by birth to the categories of individuals SAVE covers, and is updating the categories of records in the SAVE system to include collecting both full and truncated (last four digits) Social Security number, U.S. passport number, and driver's license number to enable State government users to use any of these numbers as an identifier to run SAVE searches. *See Id.* at 48,949. Despite these changes, Plaintiffs remain unable to confirm citizenship status for all individuals necessary.

Doc. 29, ¶ 71. The Amended Complaint did not explain how or why the Plaintiff States believed the changes to SAVE did not adequately remedy their claims.

41(a)(2) of the Federal Rules of Civil Procedure, subject to the Court's approval of and retention of jurisdiction to enforce the Parties' Settlement Agreement." *Id.*

The next business day, the district court granted the unopposed motion by entering the parties' proposed order without alteration. *Compare* Doc. 31 (Dismissal Order) *and* Doc. 30-2 (Proposed Order). The Dismissal Order stated the case was "dismissed with prejudice under Federal Rule of Civil procedure 41(a)(2)" but added that the district court "retain[ed] jurisdiction over this case for a period of twenty years . . . for the purpose of enforcement of the parties' settlement agreement," which the court "approved" and "incorporated by reference" into its order dismissing the case. Doc. 31.

Before the Dismissal Order, the parties did not engage in any adversarial litigation in the district court. Accordingly, the Dismissal Order neither analyzed the legality of the 2025 SAVE modifications nor addressed whether those modifications complied with the Social Security Act, the Privacy Act, or the APA, as no party presented those questions for the district court's resolution.

The Settlement Agreement required DHS to "ensure that the SAVE system has, at a minimum" many of the features that DHS and SSA had incorporated into SAVE as part of the 2025 SAVE modifications, and that were concurrently being litigated in the *LWV* case. Doc. 30-1, ¶¶ 9-10. The Settlement Agreement also included an explicit carve-out for unlawful activity, stating "[n]othing contained in

16

this Settlement Agreement shall impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, or with any federal statute in effect at the time of such performance." *Id.* ¶ 17. Because SSA is not a party to this action, it also is not a party to the Settlement Agreement. *See id.* at pp. 13-15.

**E.    The *LWV* court grants summary judgment and vacates modified SAVE and the SAVE SORNs.**

On June 22, 2026, after months of litigation and cross-dispositive motions, the *LWV* court entered summary judgment for the plaintiffs (including Intervenors here) on multiple claims and vacated and set aside the modified SAVE system as well as the SAVE SORNs. *See LWV* Vacatur Decision, 2026 WL 1784297, *2. The *LWV* court found that at least two plaintiffs, including Intervenor LWV, had associational standing based on their members' privacy, reputational, voting, and procedural injuries. *See id*. at *10-19. On the merits, the *LWV* court held that modified SAVE and the associated SORNs were "unlawful in several respects": they violated the Social Security Act's prohibition against "disclosure of Social Security numbers and other related SSA records," substantive and procedural protections of the Privacy Act, and the APA. *Id.* at *2. The *LWV* court therefore "set[] aside and vacate[d] the 2025 SAVE modified system and the related [SORNs]." *Id.*

17

**F.      Plaintiffs move to enforce the Settlement Agreement in the district court below.**

After the *LWV* court vacated the modified SAVE system, Plaintiffs moved to enforce the Settlement Agreement on June 30, 2026. Doc. 32. The district court set an expedited briefing schedule. Doc. 33.

On July 1, Intervenors submitted an *amicus* brief opposing enforcement. *See* Doc. 37-1, 39. Intervenors argued that DHS did not breach the Settlement Agreement by complying with the *LWV* Vacatur Decision. Doc. 37-1 at 8-11. They contended that the Settlement Agreement could not impose unlawful obligations and that DHS is bound by the *LWV* Vacatur Decision. *See id.* Intervenors also asserted that the Settlement Agreement does not support entering relief against SSA, which is not a party to the Settlement Agreement. *See id.* at 11-12. Finally, Intervenors argued that reimposing the modifications to SAVE would violate the Privacy Act and APA. *See id.* at 12-14.

On July 2, DHS opposed the motion to enforce. Doc. 42. First, DHS urged the court to "defer ruling on Plaintiffs' motion until stay proceedings in the District of Columbia have been completed." *Id.* at 1, 4-6. Next, DHS argued that it did not breach the Settlement Agreement based on the *LWV* Vacatur Decision and the Settlement Agreement provision carving out obligations inconsistent with federal law. *See id.* at 6-7. In so arguing, DHS explicitly agreed with Intervenors (then *amici*) that "a party does not breach its obligations under a settlement agreement by

18

refusing to violate a court order." *Id.* at 7 (citing *Borup v. W. Operating Corp.*, 130 F.2d 381, 384 (2d Cir. 1942)). DHS further objected to Plaintiffs' requested relief because "the SAVE system's ability to search SAVE with SSNs and last-four-digit SSNs was enabled by data shared to DHS by SSA, and . . . SSA is not a party to this case." *Id.* at 8. DHS also claimed that the Tucker Act deprived the district court of jurisdiction to enforce the Settlement Agreement and, even if the court had jurisdiction, it could not award Plaintiffs' requested relief because "specific performance is not an available remedy against the United States under federal contract law." *Id.* at 8-9 (citing cases). Finally, DHS argued the district court should not enforce the Settlement Agreement based on equitable principles, the public interest, and principles of comity. *See id.* at 10-12.

On July 7, the district court granted Plaintiffs' motion to enforce, finding that DHS had violated the Settlement Agreement by complying with the *LWV* Vacatur Decision and "disabl[ing] the bulk-upload and SSN-search features that the agreement expressly required the SAVE system to have." Doc. 45 at 5. The district court stated that, in entering the parties' proposed order approving the Settlement Agreement, it had "implicitly found that the modifications [to SAVE] were not inconsistent with federal law when it approved the settlement agreement," *id.* at 6, even though the parties never briefed or engaged in adversarial proceedings on those issues below. The district court added that its July 7 decision "makes explicit what

19

was implicit in the approval of the settlement agreement—the modifications to the SAVE system . . . do not violate the Social Security Act or the Privacy Act." *Id.* at 6 n.5; *see also id.* at 7-8. The district court acknowledged that its decision "puts [DHS] in a bind because they are subject to two contradictory orders—one from this Court requiring them to include certain features in the SAVE system and one from [the *LWV* court] prohibiting them from doing so." *Id.* at 7. The district court also recognized that "[o]ne of the orders has to give" but noted that it "is not persuaded . . . that its order is the one that should give." *Id.* The district court thus ordered DHS to "reinstat[e] Plaintiffs' access to the bulk-upload and SSN-search features in the SAVE system." *Id.* at 9.

On July 9, DHS notified Plaintiffs that DHS was reinstating modified SAVE's vacated features for the four Plaintiff States. *See* Doc. 53 at ¶ 3. Despite having opposed Plaintiffs' motion to enforce, DHS has neither appealed nor sought any relief from the Enforcement Order. DHS has explained that it has not sought immediate relief from the Enforcement Order because it merely "orders the government to do what the United States already believes it is required to do under 8 U.S.C. § 1373." *LWV* ECF 131 at 2.

The day after the Enforcement Order, LWV and EPIC moved to intervene for purposes of appealing that order. Doc. 48. On July 19, the district court granted the motion, holding that Intervenors met the criteria for intervention since there "is no

20

real question" that Intervenors' interests are directly affected by the enforcement proceedings, and that the relief Intervenors won in the *LWV* Vacatur Decision would be "substantially impaired if the enforcement order is not reversed on appeal." Doc. 54 at 7. Although it did not bear on the motion to intervene, the district court also reaffirmed its prior "implicit" and "explicit" "assessment[s] of the legality of the modifications to the SAVE system" based not on any adversarial briefing by the parties here, but rather on the court's independent "review of all of the merits briefing in the D.D.C. case." *Id.* at 3-4 n.2.

### G.    Post-Judgment proceedings in *LWV*.

While the enforcement proceedings were ongoing in the district court, DHS and SSA appealed and moved to stay the *LWV* Vacatur Decision. *LWV v. DHS*, 2026 WL 1972055, at *1 (D.D.C. July 8, 2026). The *LWV* court denied the motion. *Id.* It held that the government was unlikely to succeed on the merits because they relied on forfeited arguments, *id.* at *2, and "mischaracterize[d] the Court's Privacy Act conclusions," *id.* at *4, despite "DHS itself recogniz[ing] that the modified SAVE was not in compliance with the Privacy Act," *id.* at *2. The *LWV* court also found any injury to the government's voter verification processes was "minimal" and not irreparable. *Id.* at *7. The *LWV* court added that any injuries to DHS and SSA related to DHS's Settlement Agreement with the *Florida* Plaintiffs were "self-inflicted," *id.* at *7, and that the district court here "had no authority to make merits determinations

21

about the legality of SAVE, either implicitly or explicitly," when it approved the Settlement Agreement. *Id*. at 9. Lastly, the *LWV* court concluded any harm to the *Florida* Plaintiffs was outweighed by the public's "substantial" interest in halting "unlawful" agency action. *Id*. at 8.

On July 9, DHS and SSA notified the *LWV* court that they were reinstating modified SAVE's vacated features for the four Plaintiff States. *LWV* ECF 125. The *LWV* court then issued an order for a further status report and set a schedule for briefing on a motion to enforce its summary judgment order. The *LWV* court determined that "[i]n light of the Northern District of Florida's grant of the [] Intervention Motion, there is a possibility that further proceedings in the Eleventh Circuit may moot the Court's need to address the [128] Motion to Enforce" and thus it would "defer[] ruling on the [128] Motion to Enforce pending further proceedings in the Eleventh Circuit that may grant the [*LWV*] Plaintiffs the relief that they seek." *LWV*, Minute Order of July 20, 2026. The *LWV* court has required the parties there to submit weekly status reports on the status of this appeal. *See LWV*, Minute Order of July 20, 2026.

DHS and SSA also moved for a stay of the vacatur order in the D.C. Circuit on July 8. *See League of Women Voters v. DHS*, No. 26-5243 (D.C. Cir.). As of this filing, that motion remains pending.

22

**STANDARD OF REVIEW**

"[T]his Court reviews a district court's interpretation of a settlement agreement *de novo*, and decisions regarding motions to enforce settlements for abuse of discretion." *Managed Care Advisory Grp.*, 939 F.3d at 1153. The same is true for review of a district court's interpretation of a consent decree and decisions enforcing consent decrees. *See Peery v. City of Miami*, 977 F.3d 1061, 1068-69 (11th Cir. 2020). "Whether a contract"—such as a settlement agreement—"has been breached is a pure and simple question of contract interpretation," *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004) (cleaned up), and thus is reviewed *de novo*. Finally, this Court reviews "*de novo* a district court's legal conclusion that it has subject matter jurisdiction over a case or controversy." *Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 679 (11th Cir. 2012).

**SUMMARY OF THE ARGUMENT**

The district court erred in finding that DHS breached the Settlement Agreement and ordering the immediate reinstatement of modified SAVE. In so doing, the district court both exceeded its Article III authority and abused its discretion. The Enforcement Order should therefore be reversed.

To start, intervenors have standing to pursue this appeal. By ordering DHS to reinstate the SAVE modifications, the Enforcement Order substantially impairs the relief Intervenors obtained against DHS and SSA as plaintiffs in *LWV*. The *LWV*

23

Vacatur Decision found these very modifications unlawful under the Social Security Act, Privacy Act, and APA, and vacated the modified system and related SORNs.

As to the merits, as DHS itself correctly argued below, DHS did not breach the Settlement Agreement by removing Plaintiffs' access to modified SAVE. The Settlement Agreement expressly disclaims imposing any duty or obligation on DHS that is inconsistent with federal law. Because the *LWV* court found DHS had violated multiple federal statutes by modifying and operating modified SAVE, the plain language of the Settlement Agreement nullifies DHS's obligations regarding operating modified SAVE and therefore excuses DHS from fulfilling them.

The district court wrongly bypassed this incontrovertible conclusion because of its disagreement with the *LWV* Vacatur Decision, determining that it had already "implicitly" found the SAVE modifications to be lawful when it accepted the Settlement Agreement and stating in the Enforcement Order that it was making that finding "explicit." The district court lacked authority to address this question—either explicitly or implicitly. Indeed, any determination it made as to the lawfulness of the SAVE modifications was reached without the benefit of adverse parties, briefing, or an administrative record. Nor did the parties ever ask the court to consider this issue. Rather, without the adversity required to establish Article III jurisdiction and in violation of party-presentation principles, the district court issued an advisory opinion that it disagreed with the conclusions of the *LWV* Vacatur Decision—a 75-

24

page opinion issued after extensive summary judgment briefing by adverse parties (including Texas as intervenor) on the basis of a voluminous administrative record.

On top of these fundamental errors, the district court abused its discretion in multiple other ways. Over Intervenors' and DHS's objections, the district court ordered reinstatement of modifications contingent on action by SSA, which is a party in the *LWV* case (and therefore bound by the *LWV* Vacatur Order) but is not a party to this case or the Settlement Agreement. The court also ordered DHS to "immediately reinstate" the modifications without allowing for compliance with the Privacy Act's and the APA's requirements for new agency action.

Finally, the district court should have deferred consideration of the motion to enforce based on principles of comity. The district court compounded its disregard of Article III's case-or-controversy requirement and party-presentation principles by running roughshod over the findings of its sister court—the only court to properly consider an Article III controversy concerning the SAVE modifications' lawfulness.

**ARGUMENT**

## I. Intervenors have standing.

Intervenors have standing in this appeal to defend the judgment they secured in *LWV*. "A party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment" and therefore "ha[s] standing to seek its vindication." *Salazar v. Buono*, 559 U.S. 700, 712 (2010)

25

(plurality).[4] As the district court correctly concluded when it granted Intervenors' motion to intervene, "there is no real question" that Intervenors' "interests are directly affected by the enforcement proceedings in this case based on the relief that they obtained—rightly or wrongly—in the D.D.C. case," and the relief Intervenors obtained in the *LWV* Vacatur Decision "will be substantially impaired if the enforcement order is not reversed on appeal." Doc. 54 at 7. That alone is dispositive of Intervenors' standing under *Salazar*.[5]

## II. The district court erred by ordering DHS to reinstate the SAVE modifications for Plaintiffs.

### A. DHS did not breach the Settlement Agreement by complying with the *LWV* Vacatur Decision.

The plain terms of the Settlement Agreement excuse DHS from providing Plaintiffs with access to the SAVE modifications, which have been held unlawful and vacated by another federal court. The Settlement Agreement expressly carves

---

[4] All nine justices in *Salazar* appeared to agree on this point. *Cf. Doe ex rel. Doe v. School Bd. For Santa Rosa County, Fla*, 711 F. Supp. 2d 1325, 1328 n.8 (N.D. Fla. 2010) (discussing *Salazar* opinions).

[5] Because Intervenors plainly have standing to appeal based on the impairment of their interest in the *LWV* judgment, this Court need not consider Intervenors' injuries resulting from reinstating the SAVE modifications. But insofar as the Court deems it necessary to reach those issues, Intervenors have standing because they have members—including U.S. citizens who were born abroad—in Florida, Iowa, Indiana, and Iowa who will be harmed by DHS and SSA providing Plaintiffs access to the modified SAVE system and the unreliable citizenship data it incorporates. *See LWV*, 2026 WL 1784297, at *10-19 (outlining the "privacy," "reputational," and "voting" injuries to LWV's members caused by modified SAVE).

out unlawful actions, stating that it does not impose on DHS "any duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, or with any federal statute in effect at the time of such performance." Doc. 30-1, ¶ 17. And, as recognized by the district court below, the *LWV* Vacatur Decision held that DHS operating modified SAVE violated federal law. *See* Doc. 45 at 3 (stating *LWV* Vacatur Decision "concluded that the modifications to the SAVE system violated the Social Security Act and the Privacy Act"); *accord LWV* Vacatur Decision, 2026 WL 1784297, at *2 (holding modified SAVE violated the Social Security Act, Privacy Act, and APA). Because of the Settlement Agreement's carve-out addressing situations just like this, DHS did not breach the Agreement when it ceased providing access to the very functionality found to be unlawful in the *LWV* Vacatur Decision. Thus, the district court should have denied the motion to enforce.

This outcome is compelled by the Settlement Agreement's plain text. It is also consistent with basic principles of contract law. "[T]he thrust of the [] laws cannot be avoided merely by claiming that the otherwise illegal conduct is compelled by contractual obligations. Were it otherwise, the [] laws could be nullified. Contractual obligations cannot thus supersede statutory imperatives." *United States v. Loew's, Inc.*, 371 U.S. 38, 51 (1962), *abrogated on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006). For this reason, the "United States" cannot be

27

"bound" by an "agreement to do or cause to be done what the law does not sanction or permit." *OPM v. Richmond*, 496 U.S. 414, 420 (1990) (quoting *Utah Power & Light Co. v. United States*, 243 U.S. 389, 408-09 (1917)).

A contrary conclusion would incentivize collusive settlements resulting in consent decrees, in which aligned federal and state entities could lock in agreements to perform unlawful conduct while evading meaningful judicial review of that conduct. *See LWV*, 2026 WL 1972055, at *7 (noting that accepting the government's argument would mean the "Executive Branch could enter into settlement agreements to engage in statutorily prohibited conduct and thus circumvent any restriction that Congress placed on it"). Sanctioning such sue-and-settle tactics "would make a mockery of Congress and our constitutional structure." *Id.* at *8.[6]

---

[6] For example, in 2024, the state of Texas sued the Department of Labor, challenging (ultimately successfully) a rule that substantially increased the number of people entitled to overtime compensation. *See Texas v. Dep't of Labor*, 756 F. Supp. 3d 361 (E.D. Tex. 2024). If, hypothetically, the state of California had read the writing on the wall and anticipated the result, California could have sued DOL for non-enforcement of its overtime policy and, with the cooperation of the federal government, raced the *Texas* court to a settlement requiring the federal government to enforce the standards challenged by Texas. Under the view adopted by the district court, such a settlement would displace any decision by the court considering Texas's challenge, even though the settlement would not reflect any court judgment concerning the legality of the challenged regulation.

**B.    The district court erred in adjudicating the legality of the SAVE modifications with no adversarial briefing or party presentation of the issues.**

The district court refused to apply the Settlement Agreement's carve-out for unlawful actions because, it explained, it had already "implicitly" found the SAVE modifications to be lawful when it adopted the Settlement Agreement, and its Enforcement Order then "ma[de] explicit what was [previously] implicit." Doc. 45 at 6 n.5. But because there was never any adversarial litigation by the parties on the legality of the SAVE modifications or a developed record before the district court on which it could have made those determinations, the district court lacked authority to independently resolve that question on its own accord, either implicitly or explicitly.

1. The district court did not properly "implicitly" decide the lawfulness of modified SAVE when it approved the Settlement Agreement. Doc. 45 at 6. According to the district court, its approval of the Settlement Agreement was "the 'functional equivalent of a consent decree.'" *Id.* at 5. But it is blackletter law that consent decrees are affirmed "*without* considering the merits of the cause." *Swift & Co. v. United States*, 276 U.S. 311, 324 (1928) (emphasis added) (quoting *Nash., C. & St. L. Ry. Co. v. United States*, 113 U.S. 261, 265 (1885)); *accord NLRB v. Ochoa Fertilizer Corp.*, 368 U.S. 318, 323 (1961). When entering consent decrees, courts do "not inquire into the precise legal rights of the parties nor reach and resolve the

29

merits of the claims or controversy." *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983) (quoting *Metro. Hous. Dev. Corp. v. Village of Arlington Heights*, 616 F.2d 1006 (7th Cir. 1980), and collecting cases)); *accord United States v. City of Miami,* 664 F.2d 435, 436 n.13 (5th Cir. 1981) (Rubin, J., concurring). Indeed, even after a court enters a consent decree, it "must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law," including intervening "decisional law." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388 (1992).

This accords with Article III's limitation of the "judicial power" to "actual controversies arising between *adverse* litigants." *Muskrat v. United States*, 219 U.S. 346, 361 (1911) (emphasis added). When "both litigants desire precisely the same result," as with consent decrees, there is "no case or controversy within the meaning of Art. III of the Constitution." *Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 47, 48 (1971); s*ee also GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 383 (1980) ("[T]here is no Art. III case or controversy when the parties desire 'precisely the same result'"); *Mi Familia Vota v. Fontes*, 152 F.4th 1153, 1156 (9th Cir. 2025) (Nelson J., concurring in part and dissenting from denial of rehearing *en banc*) (applying principle in consent decree context).

Here, even beyond their desire to enter into a consent decree, there was no adversity between Plaintiffs and DHS when they entered the Settlement Agreement.

30

The Amended Complaint sought to force DHS to comply with the States' views of DHS's obligations under 8 U.S.C. § 1373 and provide the features in SAVE that the States desired. *See* Doc. 29, pp. 20-24 (Counts 1-4 and "Prayer for Relief"). But Plaintiffs and DHS shared an *identical* understanding of these obligations when the States filed the Amended Complaint, as well as when the parties settled and when the district court approved the Settlement Agreement.

By the time of the consent decree, DHS had already implemented the modifications to SAVE and at least some Plaintiffs had already begun using modified SAVE.[7] Those changes to SAVE brought the system into alignment with the parties' shared interpretation of § 1373. *Compare* Sept. 2025 SAVE PTA, *supra*, at 14 (describing DHS's interpretation of § 1373) *and* Doc. 29, ¶¶ 45-47 (describing Plaintiffs' interpretation of § 1373 in Amended Complaint). Indeed, the administrative record in *LWV* shows that DHS's decision to modify SAVE was based in part on its consideration of letters (separate from this litigation) sent by

---

[7] Ohio, Iowa, and Indiana all had access to the modified SAVE system long before the Settlement Agreement with DHS. *See* Letter from President Trump to Ohio Secretary of State LaRose (Oct. 8, 2025), https://perma.cc/E6P2-ZDML; Press Release, *Iowa Secretary of State's audit of voter registration lists finds 277 confirmed noncitizens registered to vote*, Iowa Sec'y of State (March 20, 2025), https://perma.cc/DS4F-K439; Press Release, *Indiana Secretary of State Diego Morales Signs Agreement with Department of Homeland Security to Identify Noncitizens on Indiana Voter Rolls*, Ind. Sec'y of State (July 7, 2025), https://perma.cc/T7X2-D3PH.

Florida, Indiana, Iowa, Ohio, and several other states. *See LWV* ECF 65-2, https://perma.cc/B4RM-4ZU6 (DHS corrected Administrative Record Index, including letters regarding changes to SAVE from Florida, Indiana, Ohio, and multistate letter); *LWV* ECF 110-1 at DHS-AR-000001-4, https://perma.cc/UE7B-RBE2 (multistate letter, including Iowa, Indiana, and Ohio); *LWV* ECF 110-4 at DHS-AR-000398-400, https://perma.cc/YA84-H7SD (Ohio Letter). Because, ever since the Settlement Agreement, "both litigants desire[d] precisely the same result," there was "no case or controversy within the meaning of Art. III," and the district court lacked jurisdiction to adjudicate the lawfulness of the SAVE modifications when it approved the Agreement and later when it enforced the Agreement. *Moore*, 402 U.S. at 48.[8]

2. Further, even if this Court requires a more searching inquiry before entering a consent decree (which the district court below did not conduct), any such pre-consent decree examination would *not reach the merits*, as the district court suggested. *See* Doc. 54 at 3 n.2 (citing *Stovall v. City of Cocoa,* 117 F.3d 1238, 1242-43 (11th Cir. 1997)). Rather than support the district court's decisionmaking, *Stovall* fatally undermines any claim that the district court properly made an "implicit"

---

[8] Given the lack of adversity, it is possible that the district court should have dismissed the case without incorporating the Settlement Agreement into its order. Nonetheless, Intervenors are not challenging the validity of the Settlement Agreement in this appeal.

determination that the SAVE modifications were lawful, and *Stovall* in fact suggests

the district court did not properly enter a consent decree at all. In *Stovall*, the Court

vacated a district court's consent decree, explaining:

> Even though the decree is predicated on consent of the parties, the judge must not give it perfunctory approval. . . . [I]ts terms require more careful scrutiny. . . . [T]he court should, therefore, examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence. This requires a determination that the proposal represents a reasonable factual and legal determination based on the facts of record, whether established by evidence, affidavit, or stipulation. If the decree also affects third parties, the court must be satisfied that the effect on them is neither unreasonable nor proscribed.

*Stovall*, 117 F.3d at 1242 (quoting *United States v. City of Miami,* 664 F.2d 435,

440-41 (5th Cir. 1981) (en banc)). Applying these standards, *Stovall* held the district

court abused its discretion by approving a consent decree based on a record that was

"not adequately developed to permit meaningful review." *Id.* at 1243. While the

district court there held a "limited" hearing before approving the decree, the record

was nevertheless "insufficient" to evaluate whether the decree was "fair, reasonable,

and lawful" where the parties "conducted no discovery" and the relevant record

evidence was limited to two expert affidavits that were "not enough to permit the

district court to evaluate constitutionality." *Id.* at 1243. *Stovall* establishes that the

district court here similarly strayed from the proper course.

33

During the proceedings below, the district court approved the Settlement Agreement without the benefit of *any* record or briefing, signing the parties' proposed order the next business day after it was docketed. *See* Doc. 30, 31. There was no discovery, no administrative record, no affidavits, no substantive briefing, and no hearing. Other than the Complaint and Amended Complaint, both of which were unanswered, there were no substantive filings on the docket. And, besides motions to extend its deadline to file an answer, DHS never filed anything.

Thus, to the extent that the district court was obligated to contemporaneously conduct a substantive inquiry into the Settlement Agreement, the only plausible inference to draw from this record is that it failed to satisfy that obligation—not that it implicitly engaged in a searching inquiry of whether the SAVE modifications complied with multiple statutes never raised or briefed by the parties (*i.e.*, the Social Security Act, the Privacy Act, and the APA). As Plaintiffs recognize, these are "novel and complex questions" on which the parties spent "months" building an extensive record "in D.D.C."; by contrast, Plaintiffs here "never briefed those issues," and the record below is "empty." Dkt. 20 at 14. The district court, in its own words, approved the Settlement Agreement without "undertak[ing] an extensive assessment of the legality of the features that the settlement agreement required the SAVE system to include." Doc. 45 at 6 n.5. There can be no doubt that the record

34

below was "not adequately developed to permit meaningful review." *Stovall*, 117 F.3d at 1243.

3. Nor did the district court have authority to render its after-the-fact, "explicit" determination that, notwithstanding a final federal court judgment to the contrary, the SAVE modifications were legal. *Contra* Doc. 45 at 7-8. Because of the parties' lack of adversity during the enforcement proceedings below, the district court lacked subject-matter jurisdiction to adjudicate these questions in its Enforcement Order and flouted party presentation principles in doing so.

Just as there was no Article III adversity between the parties as to whether modified SAVE was lawful when the district court adopted the Settlement Agreement, no adversity existed between them regarding the lawfulness of the SAVE modifications when the district court issued its Enforcement Order. In moving to enforce, Plaintiffs argued the *LWV* Vacatur Decision was "clearly wrong" by holding that the SAVE modifications were unlawful, and stressed DHS had "vigorously argued" the same thing. Doc. 43 at 3. DHS was fully aligned in its response, stating the *LWV* court "erred" and that DHS "expect[ed] to prevail on their arguments seeking a stay of the *League of Women Voters* order." Doc. 42 at 4-5. And following the Enforcement Order, DHS explained it was not seeking immediate relief from that order because it merely directs "the government to do what the United States already believes it is required to do under 8 U.S.C. § 1373." *LWV* ECF

35

131 at 2. With no adversity between Plaintiffs and DHS about whether the SAVE modifications were lawful, the district court lacked subject-matter jurisdiction to reach this issue when deciding the motion to enforce. *See Moore*, 402 U.S. at 48.

The district court also "shirk[ed] party presentation principles" by making merits determinations about modified SAVE's legality despite a total lack of adversarial briefing by the parties on those questions. *See Margolin v. National Association of Immigration Judges*, 146 S.Ct. 1285, 1288 (2026) (per curiam). The party presentation principle—"the 'rule that points not argued will not be considered'—distinguishes our adversarial system of justice from an inquisitorial one." *Id.* (quoting *United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring in judgment)). "Because courts are 'essentially passive instruments of government,' [they] rely on the parties to 'frame the issues for decision' and decide 'only the questions presented.'" *Id.* (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020)). The district court flouted this bedrock principle. As Plaintiffs concede, no party briefed or argued the lawfulness of the SAVE modifications in the district court. *See* Dkt. 20 at 10 (noting that the *LWV* Vacatur Decision addressed many issues concerning the lawfulness of modified SAVE, but that, "in this case, Plaintiffs and Defendants have never briefed or litigated *any* of

36

those issues"); *id.* at 14 (conceding "Plaintiffs . . . never briefed" the lawfulness of the SAVE modifications below and thus the "record" is "empty" on those issues).[9]

To make up for the empty record and lack of adversarial briefing by the parties below, the district court took the extraordinary step of reviewing *sua sponte* the *LWV* Vacatur Decision and "all of the merits briefing in the D.D.C. case" in making its own determination of whether the SAVE modifications complied with the Social Security Act, the Privacy Act, and the APA. *See* Doc. 54 at 4 n.2; *see also* Doc. 45 at 6 n.5. But in conducting this "inquisitorial" analysis of a record compiled by parties in a different case, the court exceeded its role in "our adversarial system of justice" by acting as a "roving commission[]" rather than a "passive instrument[] of government." *Margolin*, 146 S. Ct. at 1288. This "drastic departure from the principle of party presentation constituted an abuse of discretion." *Id.* (cleaned up).[10]

---

[9] Nor did the *amicus* brief by LWV and EPIC disputing the legality of modified SAVE create the requisite adversity *between the parties* at that time, since "participation by *amici* in a court proceeding does not make the *amici* parties." *NRC v. Texas*, 605 U.S. 665, 677 (2025); *see also Glassroth v. Moore*, 347 F.3d 916, 919 (11th Cir. 2003) (an *amicus* "is not a party").

[10] The numerous "errors" in the district court's cursory merits analysis also aptly "illustrate why courts do not proceed in this way." *LWV*, 2026 WL 1972055, at *9 (describing errors). While *this* case involves only straightforward questions involving interpretation of a settlement agreement and the existence of a justiciable controversy, *LWV* involves heavily contested and complex questions about the interpretation of and interplay between multiple federal statutes. The parties did not present *any* of those to the court below.

37

The district court's statement that it was "not bound by [the *LWV* court's] order," Doc. 45 at 7, misses the point. The *LWV* court did not purport to bind the district court below, but rather *the parties to that case—i.e.*, DHS and SSA. *See Cresthaven Ashley Master Ass'n, Inc. v. Empire Indem. Ins. Co.*, 2024 WL 3690863, at *3 (11th Cir. Aug. 7, 2024) (a "district court's holding" is "binding" on the parties); *Mary v. QEP Energy Co.*, 798 F. App'x 811, 814 (5th Cir. 2020) (even "erroneous holding" continues to "bind[] . . . the parties to that case" unless changed on appeal). More importantly, the *LWV* court is the only court to have considered the lawfulness of the SAVE modifications on the merits after briefing by adverse parties and consideration of the relevant administrative record. The *LWV* Vacatur Decision binds DHS, triggering the Settlement Agreement's carve-out for unlawful action and excusing DHS from any obligation it had under the Settlement Agreement to provide the functionality found to be unlawful. While the district court may "disagree[] with the conclusions in [the *LWV* Vacatur Decision]," Doc. 45 at 7, its attempt to adjudicate those issues in a case lacking the requisite Article III adversity constituted an impermissible advisory opinion. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1309 (11th Cir. 2000) ("There must be a present, live controversy in order to avoid advisory opinions on abstract propositions of law." (cleaned up)).

38

#### C.    The district court abused its discretion because its Enforcement Order was inappropriately tailored.

1. The district court improperly ordered relief against SSA, a non-party. As the court made clear, it "did not overlook amici's argument that the Court [could not] grant Plaintiffs the relief they are seeking in their motion because the agency whose cooperation is necessary for the SSN feature [SSA] is not a party to this case but is a party to" the *LWV* case. Doc. 45 at 9. The district court even conceded "[t]hat argument is not without some merit." *Id.* Nonetheless, the court ordered DHS to fully reinstate Plaintiffs' access to the "SSN-search features in the SAVE system," *id.*, and left it to DHS "to figure out how best to fulfill those obligations," *id.* This was an abuse of discretion because the modified SAVE features involving SSNs—search functionality using SSNs and access to SSA's Numident master file of SSA records—are enabled by SSA, *not* DHS. *See, e.g.*, *LWV* Vacatur Decision, 2026 WL 1784297, at *6 (describing data sharing agreement between SSA and DHS and modification to SSA system of records to enable the SAVE system to accept queries based on Social Security Numbers).

SSA is neither a defendant here nor a party to the Settlement Agreement, so neither the Settlement Agreement nor any consent decree can or does bind SSA. *See Original Brooklyn Water Bagel Co. v. Bersin Bagel Grp., LLC*, 817 F.3d 719, 727 (11th Cir. 2016) (refusing to bind third-parties to terms of Settlement Agreement because there is "no authority in support of the proposition that two parties can bind

39

an unrelated third party to a settlement agreement no matter how broad the language the parties chose to employ"); *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986) ("[O]f course, a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree."). And SSA is also subject to obligations, under the Social Security Act, that do not apply to DHS that the parties below did not present to the district court, given SSA's non-party status.

Nor can the district court's Enforcement Order bind SSA. Courts "may not enjoin a non-party that has not appeared before it to have its rights legally adjudicated." *United States v. Robinson*, 83 F.4th 868, 879 (11th Cir. 2023) (citing *Chase Nat'l Bank v. City of Norwalk*, 291 U.S. 431, 436-37 (1934)). Yet as the district court recognized, its Enforcement Order effectively forced SSA to reinstate modified SAVE for Plaintiffs. Doc. 45 at 9. Indeed, that is the precise position DHS and SSA have taken in their filings updating the *LWV* court about the district court's Enforcement Order here: "as a practical matter, [the *Florida* district court's] injunction necessarily requires SSA's participation for DHS to comply fully." *LWV* ECF 127 at 1.

The district court's error is compounded by the fact that, although SSA was not subject to the Settlement Agreement here, it was bound by the *LWV* Vacatur Decision. In other words, SSA was and is subject to only one court order—the one

40

in D.C. Nonetheless, at the district court's direction, SSA is complying with the Enforcement Order *here* (which does not bind it) and violating the *LWV* Vacatur Decision (which does): "after the *Florida* order, the Social Security Administration is making NUMIDENT records available for purposes of responding to SAVE requests, though solely with respect to Florida, Ohio, Iowa, and Indiana." *LWV* ECF 126 at 3. Even if the Court otherwise concludes the Enforcement Order was proper—which it was not—the Court should, at minimum, vacate the Enforcement Order insofar as it purports to enjoin SSA and remand with instructions that the District Court clarify its injunction to ensure any injunction does not apply to SSA and does not conflict with SSA's obligations under the *LWV* Vacatur Decision.

Nor is it an answer that compliance with a judgment against Agency A sometimes requires cooperation from Agency B, which was not a named defendant. No authority excuses a party from complying with a judgment because of its collateral consequences.

2. Even if the district court properly considered the lawfulness of the SAVE modifications, its order to reinstate this functionality was still inconsistent with the procedural requirements of the Privacy Act and APA. The district court below did not even mention how its relief interacted with the *LWV* court's vacatur of the 2025 SAVE SORNs and the Privacy Act's SORN requirements, nor did it address the conclusion in the *LWV* Vacatur Decision that DHS had the APA's prohibition on

41

arbitrary-and-capricious decision making. *Compare* 2026 WL 1784297, at \*28-30, 35 *and generally* Doc. 45.

The district court order reinstating modified SAVE is requiring DHS and SSA to violate the Privacy Act and the APA. The *LWV* Vacatur Decision vacated and set aside all the modifications to SAVE *and* the related SORNs. *See* 2026 WL 1784297, at \*35. When an action is "set aside" under 5 U.S.C. § 706, "the disapproved agency action is treated as though it had never happened." *Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1, 2 n.1 (2023) (Kavanaugh, J., concurring) (citation omitted). The *LWV* vacatur thus rendered the "challenged agency action[s] 'void,'" *Texas v. United States*, 126 F.4th 392, 418 (5th Cir. 2025), and "retroactively und[id] or expunge[d]" the government's changes to SAVE and the associated SORNs, *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021).

As a result, after the *LWV* Vacatur Decision on June 22, 2026, there was no modified SAVE for the district court to reinstate, and there were (and are) no operative SORNs. It is like the previous SORNs never existed. Thus, the district court's order, requiring Defendants to "immediately . . . reinstat[e] Plaintiffs' access to the bulk-upload and SSN-search features in the SAVE system," Doc. 45 at 9, required *new* agency action—which carries with it the obligation to "comply with the procedural requirements for new agency action." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 592 U.S. 1, 21 (2020). The district court overlooked

this legal obstacle to the relief in the Enforcement Order; by requiring "immediate[] reinstat[ement]," the Enforcement Order did not allow for the required notice-and-comment process or the issuance of necessary new SORNs to cover routine uses and disclosures, as required by the Privacy Act. *See* 5 U.S.C. § 552a(b)(3), (e)(4)(D).

The Enforcement Order also caused DHS to violate the APA's procedural requirements for new final agency action when the court ordered DHS to reintroduce the since-vacated SAVE modifications. The purpose of these protections "is to 'give[] affected parties fair warning of potential changes in the law and an opportunity to be heard on those changes' while 'afford[ing] the agency a chance to avoid errors and make a more informed decision.'" *Hewitt v. Comm'r,* 21 F.4th 1336, 1343 (11th Cir. 2021) (quoting *Azar v. Allina Health Servs.*, 587 U.S. 566, 582 (2019)). These procedural requirements attach to agency action even when such action has been required by law. *Cf.*, *e.g.*, *U.S. Steel Corp. v. U.S. Envt'l Prot. Agency*, 595 F.2d 207, 213 (5th Cir. 1979) ("[T]he mere existence of deadlines for agency action, whether set by statute or court order, does not in itself constitute good cause" for exception from the APA's requirements). In other words, a court order requiring an agency to take a final action—like the Enforcement Order here—also triggers the APA's procedural requirements for final agency action.

The *LWV* court was explicit that its vacatur reset the APA and Privacy Act playing fields: "this Court must vacate the modified SAVE system and the Federal

43

Defendants 'must comply with the procedural requirements for new agency action.' That means revising SAVE or authorizing any other 'new use or intended use of the information in the system' only *after* engaging in notice and comment." 2026 WL 1784297, at *29 (cleaned up). So even if this Court agrees with the district court that the Settlement Agreement required DHS to reinstate the SAVE modifications for Plaintiffs after the *LWV* Vacatur Decision, DHS still should have had to comply with the APA's and Privacy Act's procedural protections. Nothing in the Settlement Agreement purported to relieve DHS of these obligations, nor could it. As a result, the Court should, at a minimum, vacate the decision below and require DHS to comply with its procedural obligations before reinstating modified SAVE for Plaintiffs.

> **D.    Principles of comity should have prevented the district court from reinstating modified SAVE when doing so contravened the *LWV* Vacatur Decision.**

The district court also should have deferred or denied Plaintiffs' motion to enforce based on principles of comity. "The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *Florida v. HHS*, 19 F.4th 1271, 1285 (11th Cir. 2021). Thus, "[p]rinciples of comity generally guide federal courts to 'exercise restraint' when an injunction in

44

one federal proceeding would interfere with another federal proceeding." *Id.* (quoting *Brittingham v. U.S. Comm'r*, 451 F.2d 315, 318 (5th Cir. 1971)).

The Enforcement Order here gave short shrift to these principles. The district court stated:

> [T]he principles of comity that might otherwise weigh in favor of deferring consideration of the motion to enforce until [a court in the *LWV* litigation] determines whether to enter a stay are not entitled to much weight here because if [the *LWV* court] had deferred to this Court's implicit determination that the modifications to the SAVE system were lawful, the parties (and the courts) would not be in the current predicament.

Doc. 45 at 6. To start, because any such findings were, by the district court's own characterization, "implicit," there was no evidence of them available in the district court's Dismissal Order approving the Settlement Agreement, when the *LWV* court subsequently reached the merits of the issues concerning modified SAVE. *See* Doc. 31. To the contrary, the fact that the court-approved settlement included an explicit carve-out for unlawful action provided the *LWV* court and others the assurance (if it had been correctly applied) that any "implicit" findings could not and would not create any conflict with a subsequent *explicit* judicial decision on the merits. And as described above, this Court's precedents would have prohibited the district court from making an implicit finding based on the sparse record before it, *see Stovall*, 117 F.3d at 1242-43, as would Article III's limitation that federal courts can only decide actual controversies between adverse parties, *see Moore*, 402 U.S. at 48.

45

Equally unavailing is the district court's statement that, although the Enforcement Order put DHS "in a bind because they are subject to two contradictory orders," the district court was "not persuaded . . . that its order is the one that should give." Doc. 45 at 7. Comity and deference to avoid conflicting orders "require[s] more than the usual measure of restraint." *Carver v. Knox Cnty.*, 887 F.2d 1287, 1293 (6th Cir. 1989). The district court's desire for its own order to prevail was inconsistent with this Court's mandate that "comity requires federal district courts . . . to exercise care to avoid interference with each other's affairs." *State of Fla.,* 19 F.4th at 1285.[11]

## CONCLUSION

When the *LWV* court vacated the modified SAVE system and associated SORNs as contrary to three federal statutes, it necessarily triggered the Settlement Agreement's carve-out excusing DHS's "performance" of "any duty, obligation, or requirement" inconsistent with "any federal statute." Because the district court misapplied that provision and improperly decided the question of modified SAVE's legality—even though the issue was not presented and there was no adversity

---

[11] The district court also erred in weighing the remaining permanent injunction factors, both by minimizing the harm the Enforcement Order imposes on Intervenors, and by disregarding unrebutted evidence in the *LWV* case of SAVE's known shortfalls in data accuracy and attendant risks of error. *See* Doc. 45 at 9.

46

between the parties—this Court should reverse the district court's order enforcing the parties' Settlement Agreement.

Dated: August 7, 2026

Respectfully submitted,

/s/ John B. Hill

| | |
|---|---|
| Aman T. George | Nikhel S. Sus |
| Mark B. Samburg | John B. Hill |
| Ronald A. Fein | Lauren C. Bingham |
| Robin F. Thurston | CITIZENS FOR RESPONSIBILITY |
| DEMOCRACY FORWARD FOUNDATION | AND ETHICS IN WASHINGTON |
| P.O. BOX 34553 | P.O. Box 14596 |
| Washington, DC 20043 | Washington, DC 20044 |
| (202) 448-9090 | (202) 408-5565 |
| | |
| Gerald E. Greenberg | Jon Sherman |
| Daniel R. Walsh | Michelle Kanter Cohen |
| GELBER SCHACHTER & GREENBERG, P.A. | FAIR ELECTIONS CENTER |
| One Southeast Third Avenue, Suite 2600 | 1629 K Street NW, Suite 300 |
| Miami, FL 33131 | Washington, DC 20006 |
| (305) 728-0950 | (202) 331-0114 |

47

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 10,838 words, excluding those parts exempted by 11th Cir. R. 32-4.

I certify that this brief complies with the typeface and style requirements of FRAP 32(a)(5) and (6) because it has been prepared using Microsoft Word in 14-point Times New Roman font.

Dated: August 7, 2026                                    */s/ John B. Hill*

## CERTIFICATE OF SERVICE

I certify that on this date, I filed this brief through CM/ECF, which will deliver a copy to all counsel who have appeared. I also emailed a copy to Assistant Chief Deputy Blake Lanning, Office of the Indiana Attorney General, at blake.lanning@atg.in.gov, who signed the Amended Complaint on behalf of Indiana below.

Dated: August 7, 2026 /s/ John B. Hill