No. 26-12533-C

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

STATE OF FLORIDA, et al.

Plaintiffs-Appellees,

v.

LEAGUE OF WOMEN VOTERS, et al.

Intervenors-Defendants-Appellants.

_____

Appeal from the United States District Court for the Northern District of Florida
No. 3:24-cv-00509-TKW-HTC - The Honorable T. Kent Wetherell II

**APPENDIX**

Aman T. George
Mark B. Samburg
Ronald A. Fein
Robin F. Thurston
DEMOCRACY FORWARD FOUNDATION
P.O. BOX 34553
Washington, DC 20043
(202) 448-9090

Gerald E. Greenberg
Daniel R. Walsh
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, FL 33131
(305) 728-0950

Nikhel S. Sus
John B. Hill
Lauren C. Bingham
CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565

Jon Sherman
Michelle Kanter Cohen
FAIR ELECTIONS CENTER
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 331-0114

*Counsel for Intervenors-Defendants-Appellants*

## INDEX OF APPENDIX

Docket/Tab #

District Court Docket Sheet ...................................................................... A

Complaint (Doc. 1) ................................................................... 1

First Amended Complaint (Doc. 29) ...................................................... 29

Motion to Dismiss and Exhibits (Doc. 30, 30-1, 30-2) ......................... 30

Dismissal Order (Doc. 31) ....................................................... 31

Motion to Enforce (Doc. 32) ..................................................... 32

Amicus Opposition to Motion to Enforce (Doc. 37-1)........................... 37-1

Government Opposition to Motion to Enforce (Doc. 42) ...................... 42

Reply to Opposition to Motion to Enforce (Doc. 43) ........................... 43

Enforcement Order (Doc. 45) ................................................... 45

Intervention Order (Doc. 54) ................................................... 54

A

8/7/26, 11:26 AM                    CM/ECF - U.S. District Court:flnd

USCA11 Case: 26-12533    Document: 26    Date Filed: 08/07/2026    Page: 4 of 181
**Query**    **Reports**    **Utilities**    **Help**    Log Out

CLOSED,APPEAL

# U.S. District Court
## Northern District of Florida (Pensacola)
## CIVIL DOCKET FOR CASE #: 3:24-cv-00509-TKW-HTC

STATE OF FLORIDA et al v. DEPARTMENT OF HOMELAND
SECURITY et al
Assigned to: JUDGE T KENT WETHERELL II
Referred to: MAGISTRATE JUDGE HOPE T CANNON
Case in other court: USCA, 26-12533-C
Cause: 05:702 Administrative Procedure Act

Date Filed: 10/16/2024
Date Terminated: 12/01/2025
Jury Demand: None
Nature of Suit: 899 Other Statutes:
Administrative Procedures Act/Review or
Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**STATE OF FLORIDA**                    represented by   **JAMES HAMILTON PERCIVAL , II**
FLORIDA ATTORNEY GENERALS
OFFICE
OFFICE OF THE ATTORNEY GENERAL
Pl-01
THE CAPITOL
TALLAHASSEE, FL 32399
850-414-3300
Email: james.percival@myfloridalegal.com
*TERMINATED: 01/15/2025*
*LEAD ATTORNEY*

**JOHN MATTHEW GUARD**
1715 OAKWOOD ESTATES DRIVE
PLANT CITY, FL 33563
813-789-4468
Email: johnmguard@hotmail.com
*TERMINATED: 06/23/2025*
*LEAD ATTORNEY*

**CALEB ANTHONY STEPHENS**
FLORIDA ATTORNEY GENERAL'S
OFFICE
THE CAPITOL
PL-01
TALLAHASSEE, FL 32399
850-414-3300
Email: caleb.stephens@myfloridalegal.com
*ATTORNEY TO BE NOTICED*

**HENRY CHARLES WHITAKER**
FLORIDA OFFICE OF THE ATTORNEY
GENERAL
PL-01 THE CAPITOL

TALLAHASSEE, FL 32399-1050
850-414-3688
Email: henry.whitaker@usdoj.gov
*TERMINATED: 07/08/2026*

**JASON JOHN MUEHLHOFF**
FLORIDA ATTORNEY GENERAL'S
OFFICE
107 W GAINES STREET
TALLAHASSEE, FL 32399
714-330-6936
Email:
jason.muehlhoff@myfloridalegal.com
*ATTORNEY TO BE NOTICED*

**NATALIE CHRISTMAS**
FLORIDA ATTORNEY GENERAL'S
OFFICE
PL-01 THE CAPITOL
TALLAHASSEE, FL 32399
850-414-3300
Email:
natalie.christmas@myfloridalegal.com
*TERMINATED: 02/20/2025*

**Plaintiff**

**FLORIDA DEPARTMENT OF STATE**          represented by   **JAMES HAMILTON PERCIVAL , II**
(See above for address)
*TERMINATED: 01/15/2025*
*LEAD ATTORNEY*

**JOHN MATTHEW GUARD**
(See above for address)
*TERMINATED: 06/23/2025*
*LEAD ATTORNEY*

**ASHLEY E DAVIS**
FLORIDA DEPARTMENT OF STATE
RA GRAY BUILDING
500 SOUTH BRONOUGH STREET
SUITE 100
TALLAHASSEE, FL 32399
850-245-6531
Email: ashley.davis@dos.fl.gov
*ATTORNEY TO BE NOTICED*

**BRADLEY ROBERT MCVAY**
FLORIDA DEPARTMENT OF STATE
OFFICE OF GENERAL COUNSEL
500 S BRONOUGH STREET
TALLAHASSEE, FL 32399
352-219-5195
Email: brad.mcvay@dos.myflorida.com
*ATTORNEY TO BE NOTICED*

**HENRY CHARLES WHITAKER**
(See above for address)
*TERMINATED: 07/08/2026*

**JASON JOHN MUEHLHOFF**
(See above for address)
*ATTORNEY TO BE NOTICED*

**JOSEPH SCOTT VAN DE BOGART**
FLORIDA DEPARTMENT OF STATE
OFFICE OF GENERAL COUNSEL
500 S BRONOUGH STREET
TALLAHASSEE, FL 32399
850-245-6519
Fax: 850-245-6127
Email: jvandebogart@fau.edu
*ATTORNEY TO BE NOTICED*

**NATALIE CHRISTMAS**
(See above for address)
*TERMINATED: 02/20/2025*

**CALEB ANTHONY STEPHENS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**STATE OF OHIO**                    represented by    **STATE OF OHIO**
                                                        PRO SE

**Plaintiff**

**FRANK LAROSE**                     represented by    **FRANK LAROSE**
*IN HIS OFFICIAL CAPACITY AS OHIO*                      PRO SE
*SECRETARY OF STATE*

**Plaintiff**

**BRENNA BIRD**                      represented by    **BRENNA BIRD**
*IN HER OFFICIAL CAPACITY AS THE*                       PRO SE
*ATTORNEY GENERAL OF IOWA*

**Plaintiff**

**PAUL PATE**                        represented by    **PAUL PATE**
*IN HIS OFFICIAL CAPACITY AS THE*                       PRO SE
*SECRETARY OF STATE OF IOWA*

**Plaintiff**

**STATE OF INDIANA**                 represented by    **STATE OF INDIANA**
                                                        PRO SE

**Plaintiff**

**DIEGO MORALES**                    represented by    **DIEGO MORALES**
*IN HIS OFFICIAL CAPACITY AS INDIANA*                   PRO SE

V.

**Defendant**

**DEPARTMENT OF HOMELAND SECURITY**

represented by **DANIEL MARTIN RIESS**
DOJ-CIV
1100 L STREET NW
WASHINGTON, DC 20005
202-353-3098
Email: daniel.riess@usdoj.gov
*ATTORNEY TO BE NOTICED*

**STEPHEN MICHAEL PEZZI**
US DEPARTMENT OF JUSTICE
1100 L STREET NW
WASHINGTON, DC 20005
202-305-8576
Email: stephen.pezzi@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**ALEJANDRO MAYORKAS**
*TERMINATED: 02/06/2025*

represented by **STEPHEN MICHAEL PEZZI**
(See above for address)

**Defendant**

**KRISTI NOEM**
*IN HER OFFICIAL CAPACITY AS
SECRETARY OF THE UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY*
*TERMINATED: 07/07/2026*

represented by **DANIEL MARTIN RIESS**
(See above for address)

**STEPHEN MICHAEL PEZZI**
(See above for address)

**Defendant**

**MARKWAYNE MULLIN**
*SECRETARY DEPARTMENT OF
HOMELAND SECURITY*

represented by **DANIEL MARTIN RIESS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**STEPHEN MICHAEL PEZZI**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor**

**LEAGUE OF WOMEN VOTERS**

represented by **AMAN TEWARI GEORGE**
DEMOCRACY FORWARD
FOUNDATION
PO BOX 34553
WASHINGTON, DC 20043
202-448-9090
Email: ageorge@democracyforward.org
*ATTORNEY TO BE NOTICED*

**DANIEL R WALSH**

GELBER SCHACHTER & GREENBERG
PA - MIAMI FL
ONE SE 3RD AVENUE
SUITE 2600
MIAMI, FL 33131
305-728-0950
Fax: 305-728-0951
Email: dwalsh@gsgpa.com
*ATTORNEY TO BE NOTICED*

**GERALD EDWARD GREENBERG**
GELBER SCHACHTER & GREENBERG
PA - MIAMI FL
ONE SE 3RD AVENUE
SUITE 2600
MIAMI, FL 33131
305-728-0950
Fax: 305-728-0951
Email: ggreenberg@gsgpa.com
*ATTORNEY TO BE NOTICED*

**LAUREN CROWELL BINGHAM**
CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON
PO BOX 14596
WASHINGTON, DC 20044
202-408-5565
Email: lbingham@citizensforethics.org
*ATTORNEY TO BE NOTICED*

**Intervenor**

| | | |
|---|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER** | represented by | **DANIEL R WALSH** (See above for address) *ATTORNEY TO BE NOTICED* |
| | | **GERALD EDWARD GREENBERG** (See above for address) *ATTORNEY TO BE NOTICED* |
| | | **LAUREN CROWELL BINGHAM** (See above for address) *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 10/16/2024 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number AFLNDC-9100965.), filed by STATE OF FLORIDA, FLORIDA DEPARTMENT OF STATE. (Attachments: # 1 Exhibit Memorandum of Agreement, # 2 Exhibit McVay Letter to USCIS, # 3 Exhibit USCIS Response Letter, # 4 Exhibit Email re Request for Information, # 5 Civil Cover Sheet, # 6 Summonses) (PERCIVAL, JAMES) (Entered: 10/16/2024) |
| 10/17/2024 | 2 | Summons Issued as to DEPARTMENT OF HOMELAND SECURITY, ALEJANDRO MAYORKAS. (alb) (Entered: 10/17/2024) |

| 10/17/2024 | 3 | NOTICE of Appearance by ASHLEY E DAVIS on behalf of FLORIDA DEPARTMENT OF STATE (DAVIS, ASHLEY) (Entered: 10/17/2024) |
|---|---|---|
| 10/17/2024 | 4 | NOTICE of Appearance by JOSEPH SCOTT VAN DE BOGART on behalf of FLORIDA DEPARTMENT OF STATE (VAN DE BOGART, JOSEPH) (Entered: 10/17/2024) |
| 10/17/2024 | 5 | NOTICE of Appearance by BRADLEY ROBERT MCVAY on behalf of FLORIDA DEPARTMENT OF STATE (MCVAY, BRADLEY) (Entered: 10/17/2024) |
| 11/04/2024 | 6 | NOTICE *of Proof of Service* by STATE OF FLORIDA, FLORIDA DEPARTMENT OF STATE (Attachments: # 1 Exhibit Certified Mail Receipts, # 2 Exhibit USPS Tracking) (CHRISTMAS, NATALIE) (Entered: 11/04/2024) |
| 12/09/2024 | 7 | NOTICE of Appearance by STEPHEN MICHAEL PEZZI on behalf of All Defendants (PEZZI, STEPHEN) (Entered: 12/09/2024) |
| 12/09/2024 | 8 | MOTION for Extension of Time to File Answer re 1 Complaint, *(Unopposed)* by DEPARTMENT OF HOMELAND SECURITY, ALEJANDRO MAYORKAS. (PEZZI, STEPHEN) (Entered: 12/09/2024) |
| 12/10/2024 | 9 | ORDER GRANTING EXTENSION OF TIME, re 8 MOTION for Extension of Time to File Answer. ( Answer due by **2/18/2025**.) Signed by JUDGE T KENT WETHERELL II on 12/10/2024. (alb) (Entered: 12/10/2024) |
| 12/10/2024 |  | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 7 Notice of Appearance. (Proposed ISO prepared.) (alb) (Entered: 12/10/2024) |
| 01/14/2025 | 10 | Consent MOTION to Withdraw as Attorney by STATE OF FLORIDA. (PERCIVAL, JAMES) (Entered: 01/14/2025) |
| 01/15/2025 |  | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 10 Consent MOTION to Withdraw as Attorney. (alb) (Entered: 01/15/2025) |
| 01/15/2025 | 11 | ORDER granting 10 Motion to Withdraw as Attorney. Attorney James Percival shall have no further obligation to represent Plaintiff in this case. The Clerk shall terminate Mr. Percival as counsel of record for Plaintiff in CM/ECF. Attorney JAMES HAMILTON PERCIVAL, II terminated Signed by JUDGE T KENT WETHERELL II on 01/15/2025. (alb) (Entered: 01/15/2025) |
| 02/05/2025 | 12 | NOTICE of Appearance by CALEB ANTHONY STEPHENS on behalf of STATE OF FLORIDA (STEPHENS, CALEB) (Entered: 02/05/2025) |
| 02/05/2025 | 13 | NOTICE of Appearance by DAVID MATTHEW COSTELLO on behalf of STATE OF FLORIDA (COSTELLO, DAVID) (Entered: 02/05/2025) |
| 02/05/2025 | 14 | NOTICE of Appearance by KEVIN A GOLEMBIEWSKI on behalf of STATE OF FLORIDA (GOLEMBIEWSKI, KEVIN) (Entered: 02/05/2025) |
| 02/05/2025 | 15 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by DEPARTMENT OF HOMELAND SECURITY, ALEJANDRO MAYORKAS. (PEZZI, STEPHEN) (Entered: 02/05/2025) |
| 02/06/2025 | 16 | ORDER GRANTING EXTENSION OF TIME AND SUBSTITUTION PARTIES. Re 15 Consent MOTION for Extension of Time to File Answer re 1 Complaint. The motion is GRANTED, and Defendants have until May 19, 2025, to answer or otherwise respond to the complaint. The Clerk shall update CM/ECF to reflect that Kristi Noem has replaced Alexandro Mayorkas as a defendant under Fed. R. Civ. P. 25(d). ( Answer due by |

USCA11 Case: 26-12533    Document: 26    Date Filed: 08/07/2026    Page: 10 of 181

| | | |
|---|---|---|
| | | 5/19/2025.) KRISTI NOEM added. ALEJANDRO MAYORKAS terminated. Signed by JUDGE T KENT WETHERELL II on 02/06/2025. (alb) (Entered: 02/06/2025) |
| 02/19/2025 | 17 | Consent MOTION to Withdraw as Attorney by STATE OF FLORIDA, FLORIDA DEPARTMENT OF STATE. (CHRISTMAS, NATALIE) (Entered: 02/19/2025) |
| 02/19/2025 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of MAGISTRATE JUDGE HOPE T CANNON notified that action is needed Re: 17 Consent MOTION to Withdraw as Attorney. (alb) (Entered: 02/19/2025) |
| 02/20/2025 | 18 | ORDER granting 17 Motion to Withdraw as Attorney. Attorney Natalie Christmas shall have no further obligation to represent Plaintiff in this case. The Clerk shall terminate Ms. Christmas as counsel of record for Plaintiff in CM/ECF. Signed by JUDGE T KENT WETHERELL II on 02/20/2025. Attorney NATALIE CHRISTMAS terminated. (alb) (Entered: 02/20/2025) |
| 05/15/2025 | 19 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM. (PEZZI, STEPHEN) (Entered: 05/15/2025) |
| 05/15/2025 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 19 Consent MOTION for Extension of Time to File Answer re 1 Complaint. (alb) (Entered: 05/15/2025) |
| 05/16/2025 | 20 | ORDER GRANTING EXTENSION OF TIME. Re: 19 Consent MOTION for Extension of Time to File Answer re 1 Complaint. Signed by JUDGE T KENT WETHERELL II on 05/16/2025. ( Answer due by **7/18/2025**.) (alb) (Entered: 05/16/2025) |
| 06/20/2025 | 21 | Consent MOTION to Withdraw as Attorney by STATE OF FLORIDA, FLORIDA DEPARTMENT OF STATE. (GUARD, JOHN) (Entered: 06/20/2025) |
| 06/23/2025 | 22 | ORDER: Upon due consideration of the motion to withdraw as counsel (Doc. 21 ), it is ORDERED that attorney John Guard has no further obligation to represent Plaintiff in this case and the Clerk shall terminate him as counsel of record for Plaintiff in CM/ECF. Signed by JUDGE T KENT WETHERELL II on 6/23/2025. (jcw) (Entered: 06/23/2025) |
| 07/15/2025 | 23 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM. (PEZZI, STEPHEN) (Entered: 07/15/2025) |
| 07/15/2025 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 23 Consent MOTION for Extension of Time to File Answer re 1 Complaint. (alb) (Entered: 07/15/2025) |
| 07/16/2025 | 24 | ORDER GRANTING EXTENSION OF TIME. Re: 23 Consent MOTION for Extension of Time to File Answer re 1 Complaint. Signed by JUDGE T KENT WETHERELL II on 07/16/2025.( Answer due by **9/15/2025**.) (alb) (Entered: 07/16/2025) |
| 09/11/2025 | 25 | MOTION for Extension of Time to File Answer re 1 Complaint, by DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM. (PEZZI, STEPHEN) (Entered: 09/11/2025) |
| 09/11/2025 | | Set Deadlines/Hearings re 25 Motion for Extension of Time. (Internal deadline for referral to judge if response not filed earlier: **9/25/2025**). (alb) (Entered: 09/12/2025) |
| 09/12/2025 | 26 | ORDER GRANTING EXTENSION OF TIME, re 25 MOTION for Extension of Time to File Answer re 1 Complaint. The motion for extension of time is GRANTED in part and Defendants have until October 14, 2025, to answer or otherwise respond to the complaint. Signed by JUDGE T KENT WETHERELL II on 09/12/2025.( Answer due by **10/14/2025**.) (alb) (Entered: 09/12/2025) |

| | | |
|---|---|---|
| 10/01/2025 | 27 | MOTION to Stay *(Unopposed) due to Lapse in Appropriations* by DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM. (PEZZI, STEPHEN) (Entered: 10/01/2025) |
| 10/02/2025 | 28 | ORDER TOLLING RESPONSE DEADLINE re granting 27 MOTION to Stay. Defendants' deadline to answer or otherwise respond to the complaint is tolled based on the "government shutdown" caused by the lapse in appropriations. Defendants have 14 days from the date the shutdown ends and/or funding is restored to the Department of Justice to answer or otherwise respond to the complaint. Signed by JUDGE T KENT WETHERELL II on 10/2/2025. (jcw) (Main Document 28 replaced on 10/2/2025) (jcw). (Entered: 10/02/2025) |
| 11/04/2025 | | Set Deadlines/Hearings re 28 Order. Deadline for clerk to check status of stay by **12/1/2025**. (alb) (Entered: 11/04/2025) |
| 11/28/2025 | 29 | First AMENDED COMPLAINT against STATE OF FLORIDA, FLORIDA DEPARTMENT OF STATE, filed by STATE OF FLORIDA, FLORIDA DEPARTMENT OF STATE. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit) (STEPHENS, CALEB) (Entered: 11/28/2025) |
| 11/28/2025 | 30 | MOTION to Dismiss by FLORIDA DEPARTMENT OF STATE, STATE OF FLORIDA. (Internal deadline for referral to judge if response not filed earlier: **12/12/2025**). (Attachments: # 1 Exhibit, # 2 Exhibit) (STEPHENS, CALEB) (Entered: 11/28/2025) |
| 12/01/2025 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 30 Plaintiffs' Unopposed Motion to Dismiss, 29 Amended Complaint. (alb) (Entered: 12/01/2025) |
| 12/01/2025 | 31 | ORDER. The 30 Motion is GRANTED, it is further ordered that the above-captioned case is DISMISSED WITH PREJUDICE, under Federal Rule of Civil Procedure 41(a)(2); it is further ordered that the Court retains jurisdiction over this case for a period of twenty years from the date of this order for the purposes of enforcement of the parties' settlement agreement, which is approved by and incorporated by reference into this order. (Please see full order.) Signed by JUDGE T KENT WETHERELL II on 12/1/2025. (alb) (Entered: 12/01/2025) |
| 06/30/2026 | 32 | MOTION enforce settlement agreement re 31 Order Dismissing Case,, by FLORIDA DEPARTMENT OF STATE, STATE OF FLORIDA. (Attachments: # 1 Exhibit Declaration of Maria Matthews, # 2 Exhibit Declaration of Brian Katz) (MUEHLHOFF, JASON) (Entered: 06/30/2026) |
| 06/30/2026 | 33 | ORDER REQUIRING EXPEDITED RESPONSE, re 32 MOTION enforce settlement agreement. Defendants have until noon Central Time on Thursday, July 2, 2026, to respond to the emergency motion and explain why they are not in violation of the settlement agreement and why the Court should not require them to comply with the settlement agreement by immediately restoring (1) the bulk upload function in SAVE and (2) the ability to search with Social Security Numbers in SAVE. Signed by JUDGE T KENT WETHERELL II on 06/30/2026. (Internal deadline for referral to judge if response not filed earlier: **7/2/2026**). (alb) (Entered: 06/30/2026) |
| 07/01/2026 | 34 | NOTICE OF ADDITIONAL AUTHORITY by BRENNA BIRD. (Attachments: # 1 Affidavit Declaration of Aaron Baack) (MUEHLHOFF, JASON) Modified on 7/2/2026 to edit title (jcw). (Entered: 07/01/2026) |
| 07/01/2026 | 35 | NOTICE of Appearance by GERALD EDWARD GREENBERG on behalf of LEAGUE OF WOMEN VOTERS, ELECTRONIC PRIVACY INFORMATION CENTER (GREENBERG, GERALD) (Entered: 07/01/2026) |

USCA11 Case: 26-12533    Document: 26    Date Filed: 08/07/2026    Page: 12 of 181

| 07/01/2026 | 36 | NOTICE of Appearance by DANIEL R WALSH on behalf of ELECTRONIC PRIVACY INFORMATION CENTER, LEAGUE OF WOMEN VOTERS (WALSH, DANIEL) (Entered: 07/01/2026) |
| 07/01/2026 | 37 | MOTION for Leave to File *(Unopposed) a Brief as Amici Curiae* by ELECTRONIC PRIVACY INFORMATION CENTER, LEAGUE OF WOMEN VOTERS. (Attachments: # 1 Exhibit 1 - Proposed Brief of Amici Curiae) (GREENBERG, GERALD) (Entered: 07/01/2026) |
| 07/01/2026 | 38 | NOTICE of Appearance by LAUREN CROWELL BINGHAM on behalf of ELECTRONIC PRIVACY INFORMATION CENTER, LEAGUE OF WOMEN VOTERS (BINGHAM, LAUREN) (Entered: 07/01/2026) |
| 07/02/2026 | 39 | ORDER granting 37 MOTION for Leave to File. The amicus brief filed by the League of Women Voters and Electronic Privacy Information Center (Doc. 37 -1) is accepted. Defendants shall address the arguments in the amicus brief in their response to Plaintiffs' motion, and the deadline for the response is extended to 5:00 p.m. Central Time on **7/2/2026**. Plaintiffs may file a reply addressing the arguments in the amicus brief no later than 5:00 p.m. Central Time on **7/3/2026**. Signed by JUDGE T KENT WETHERELL II on 7/2/2026. (jcw) (Entered: 07/02/2026) |
| 07/02/2026 | 40 | MOTION to Appear Pro Hac Vice by Aman George.( Filing fee $ 219 receipt number AFLNDC-9955499.) by LEAGUE OF WOMEN VOTERS. (GEORGE, AMAN) (Entered: 07/02/2026) |
| 07/02/2026 | 41 | NOTICE of Appearance by DANIEL MARTIN RIESS on behalf of All Defendants (RIESS, DANIEL) (Entered: 07/02/2026) |
| 07/02/2026 | 42 | MEMORANDUM in Opposition re 32 MOTION enforce settlement agreement re 31 Order Dismissing Case,, , RESPONSE in Opposition filed by DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM. (Attachments: # 1 Exhibit League of Women Voters v DHS) (RIESS, DANIEL) (Entered: 07/02/2026) |
| 07/03/2026 | 43 | REPLY to Response to Motion re 32 MOTION enforce settlement agreement re 31 Order Dismissing Case,, filed by STATE OF FLORIDA. (MUEHLHOFF, JASON) (Entered: 07/03/2026) |
| 07/06/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 32 MOTION enforce settlement agreement re 31 Order Dismissing Case, 34 Notice of Additional Authority, 42 Response in Opposition to Motion, 43 Reply to Response to Motion. 40 MOTION to Appear Pro Hac Vice by Aman George. (alb) (Entered: 07/06/2026) |
| 07/06/2026 | 44 | ORDER granting 40 Motion to Appear Pro Hac Vice. Attorney Aman George is authorized to appear pro hac vice for Amici League of Women Voters and Electronic Privacy Information Center. Signed by JUDGE T KENT WETHERELL II on 07/06/2026. (alb) (Entered: 07/06/2026) |

| | | |
|---|---|---|
| 07/07/2026 | 45 | ORDER. Plaintiffs' emergency motion to enforce settlement agreement (Doc. 32 ) is GRANTED, and Defendants shall immediately comply with the court-approved settlement agreement in this case by reinstating Plaintiffs' access to the bulk- upload and SSN-search features in the SAVE system. The parties shall file a status report 7 days from the date of this Order regarding Defendants' compliance with this Order and the status of the proceedings in Judge Sooknanan's case and/or the D.C. Circuit. Signed by JUDGE T KENT WETHERELL II on 07/07/2026. ( Status Report due by **7/14/2026**.) MARKWAYNE MULLIN added. KRISTI NOEM (IN HER OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY) terminated. (alb) (Entered: 07/07/2026) |
| 07/07/2026 | 46 | Consent MOTION to Withdraw as Attorney by FLORIDA DEPARTMENT OF STATE, STATE OF FLORIDA. (WHITAKER, HENRY) (Entered: 07/07/2026) |
| 07/07/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 46 Consent MOTION to Withdraw as Attorney. (alb) (Entered: 07/07/2026) |
| 07/08/2026 | 47 | ORDER: Upon due consideration of the motion to withdraw as counsel (Doc. 46 ), it is ORDERED that the motion is GRANTED, and attorney Henry Whitaker has no further obligation to represent Plaintiffs in this case. The Clerk shall terminate Mr. Whitaker as counsel of record in CM/ECF. Signed by JUDGE T KENT WETHERELL II on 7/8/2026. (jcw) (Entered: 07/08/2026) |
| 07/08/2026 | 48 | Emergency MOTION to Intervene by ELECTRONIC PRIVACY INFORMATION CENTER, LEAGUE OF WOMEN VOTERS. (Attachments: # 1 Memorandum of Law, # 2 Text of Proposed Order, # 3 Exhibit 1, # 4 Exhibit 2) (BINGHAM, LAUREN) (Entered: 07/08/2026) |
| 07/09/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 48 LEAGUE OF WOMEN VOTERS' ANDELECTRONIC PRIVACY INFORMATION CENTER'SEMERGENCY MOTION TO INTERVENE (alb) (Entered: 07/09/2026) |
| 07/09/2026 | 49 | ORDER ESTABLISHING EXPEDITED BRIEFING SCHEDULE, re 48 Emergency MOTION to Intervene, filed by LEAGUE OF WOMEN VOTERS, ELECTRONIC PRIVACY INFORMATION CENTER. Plaintiffs and Defendants have until 5:00 p.m. central time on July 10, 2026, to respond to the proposed intervenors' motion to intervene. The proposed intervenors may file a reply no later than noon central time on July 13, 2026. The Court will rule on the motion as expeditiously as possible, although it may defer consideration of the motion until after reviewing the status report required by the order enforcing the settlement agreement because that could moot or mitigate the urgency of the motion. See Doc. 45 at 10. The deadline for the status report is moved up to noon central time on July 14, 2026. Signed by JUDGE T KENT WETHERELL II on 07/09/2026. (Internal deadline for referral to judge if response not filed earlier: **7/10/2026**. Replies due by **7/13/2026**. Status Report due by **7/14/2026**.) (alb) (Entered: 07/09/2026) |
| 07/10/2026 | 50 | RESPONSE in Opposition re 48 Emergency MOTION to Intervene filed by BRENNA BIRD, FLORIDA DEPARTMENT OF STATE, FRANK LAROSE, DIEGO MORALES, PAUL PATE, STATE OF FLORIDA, STATE OF INDIANA, STATE OF OHIO. (MUEHLHOFF, JASON) (Entered: 07/10/2026) |
| 07/10/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 50 PLAINTIFFS' OPPOSITION TO LEAGUE OF WOMEN VOTERS' AND ELECTRONIC PRIVACY INFORMATION CENTER'S EMERGENCY MOTION TO INTERVENE. (alb) (Entered: 07/10/2026) |

| 07/10/2026 | 51 | RESPONSE in Opposition re 48 Emergency MOTION to Intervene filed by DEPARTMENT OF HOMELAND SECURITY, MARKWAYNE MULLIN. (Attachments: # 1 Ex. 1 - Email from S. Pezzi to J. Muehlhoff (July 9, 2026)) (PEZZI, STEPHEN) (Entered: 07/10/2026) |
|---|---|---|
| 07/13/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 51 Defendant's Opposition to Motion to Intervene. (alb) (Entered: 07/13/2026) |
| 07/13/2026 | 52 | REPLY to Response to Motion re 48 Emergency MOTION to Intervene , MEMORANDUM in Support filed by ELECTRONIC PRIVACY INFORMATION CENTER, LEAGUE OF WOMEN VOTERS. (BINGHAM, LAUREN) (Entered: 07/13/2026) |
| 07/13/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 52 Reply in Support of League of Women Voters' and Electronic Privacy Information Center's Emergency Motion to Intervene. (alb) (Entered: 07/13/2026) |
| 07/14/2026 | 53 | STATUS REPORT *Joint Status Report* by BRENNA BIRD, FLORIDA DEPARTMENT OF STATE, FRANK LAROSE, DIEGO MORALES, PAUL PATE, STATE OF FLORIDA, STATE OF INDIANA, STATE OF OHIO. (Attachments: # 1 Exhibit Ex. 1 Email from S. Pezzi to J. Muehlhoff 07.09.26, # 2 Exhibit Ex. 2 July 9, 2026 Notice in LWV, # 3 Exhibit Ex. 3 July 10, 2026 Joint Status Report in LWV, # 4 Exhibit Ex.4 July 13, 2026 Notice in LWV, # 5 Exhibit Ex. 5 Opinion Denying Stay Pending Appeal in LWV, # 6 Exhibit Ex. 6 D.C. Circuit Motion for Stay Pending Appeal in LWV) (MUEHLHOFF, JASON) (Entered: 07/14/2026) |
| 07/14/2026 | | ACTION REQUIRED BY DISTRICT JUDGE: Chambers of JUDGE T KENT WETHERELL II notified that action is needed Re: 53 Status Report. (alb) (Entered: 07/14/2026) |
| 07/19/2026 | 54 | ORDER GRANTING MOTION TO INTERVENE. ORDERED that LWV and EPIC's emergency motion to intervene (Doc. 48 ) is GRANTED, and the Clerk shall update their status in CM/ECF from amici to intervenors. Signed by JUDGE T KENT WETHERELL II on 7/19/2026. (pmc) (Entered: 07/19/2026) |
| 07/20/2026 | 55 | NOTICE OF APPEAL as to 45 Order,,,, Add and Terminate Parties,,,, Set Deadlines/Hearings,,, by ELECTRONIC PRIVACY INFORMATION CENTER, LEAGUE OF WOMEN VOTERS. ( Filing fee $605 Receipt Number AFLNDC-9972929.) (BINGHAM, LAUREN) (Entered: 07/20/2026) |
| 07/21/2026 | 56 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 55 Notice of Appeal ; (jcw) (Entered: 07/21/2026) |
| 07/21/2026 | | Set Deadlines re 55 Notice of Appeal : Clerk to check status of Appeal on **10/19/2026**. Certificate of Readiness (FRAP 11) due by **8/4/2026**. (jcw) (Entered: 07/21/2026) |
| 07/21/2026 | 58 | USCA PROCEDURAL LETTER re: 55 NOTICE OF APPEAL USCA Appeal # 26-12533-C (jcw) (Entered: 07/23/2026) |
| 07/22/2026 | 57 | TRANSCRIPT REQUEST *Certification That No Transcripts Will Be Ordered* by ELECTRONIC PRIVACY INFORMATION CENTER, LEAGUE OF WOMEN VOTERS. (BINGHAM, LAUREN) (Entered: 07/22/2026) |
| 08/06/2026 | | Appeal Deadlines Terminated re 55 Notice of Appeal filed by LEAGUE OF WOMEN VOTERS, ELECTRONIC PRIVACY INFORMATION CENTER. Certificate of Readiness Due 08/04/2026. (alb) (Entered: 08/06/2026) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/07/2026 10:26:14 | | | |
| **PACER Login:** | KFarchadi | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:24-cv-00509-TKW-HTC |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

Doc. 1

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

STATE OF FLORIDA and the
FLORIDA DEPARTMENT OF STATE,

    *Plaintiffs*,

    v.                              Case No. 24-cv-509

The DEPARTMENT OF HOMELAND
SECURITY; and ALEJANDRO
MAYORKAS, in his official capacity
as Secretary of the United States
Department of Homeland Security,

    *Defendants*.

_____/

**COMPLAINT FOR
<u>PERMANENT INJUNCTIVE RELIEF</u>**

1.    Since taking office, the Biden-Harris Administration has "effectively turned the Southwest Border into a meaningless line in the sand and little more than a speedbump for aliens flooding into the country." *Florida v. United States*, 660 F. Supp. 3d 1239, 1249 (N.D. Fla. 2023).

2.    While estimates vary on the impact of the border crisis, there are at a minimum millions of new unauthorized aliens present in our country.

3.    States have limited power to enforce federal law and deport these individuals when the federal government cannot or will not do so. *See Arizona v. United States*, 567 U.S. 387, 401–02 (2012) (observing that "a *single* sovereign" is "responsible

for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders" (emphasis added)). But States can at a minimum ensure state laws are followed, including laws prohibiting non-citizens from voting in Florida elections. *See* Art. VI, § 2, Fla. Const.; *see also* Matthew Tragesser, *Illegal Aliens Are Still Voting in Our Elections*, Heritage Found. (July 10, 2024) (providing examples of non-citizen voting).[1]

4.      As part of preventing voter fraud, including non-citizen voting, the State of Florida has an obligation to maintain accurate and current voter registration records. *See* § 98.075(1), Fla. Stat.

5.      And as part of "the prerogatives and responsibilities of the States and the National Government vis-à-vis one another," *Bond v. United States*, 564 U.S. 211, 221 (2011), the federal government has an obligation to cooperate with the States in ensuring only citizens vote in their elections.

6.      That cooperation mandate is based in two provisions of federal law. First, 8 U.S.C. § 1373(c) requires the federal government to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency. . . ." Second, 8 U.S.C. § 1644 states that "no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from [federal

---

[1]   Available    at    https://www.heritage.org/election-integrity/commentary/illegal-aliens-are-still-voting-our-elections.

immigration authorities] information regarding the immigration status, lawful or unlawful, of an alien in the United States."

7.      Because the federal government is refusing to comply with these obligations and frustrating Florida's ability to maintain the integrity of its elections, Florida files this suit.

## PARTIES

8.      Plaintiff State of Florida is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. As the State's Chief Legal Officer, Attorney General Ashley Moody is authorized to represent the interests of the State in civil suits. *See* § 16.01(4), (5), Fla. Stat.

9.      Plaintiff, the Florida Department of State (FDOS), is an agency of the State of Florida.[2] *See* § 20.10, Fla. Stat. FDOS has responsibility under both state and federal law to ensure that Florida's voter registration rolls are current and accurate. *See* § 98.075(1), Fla. Stat. (providing that FDOS "shall protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records"); § 98.093(1), Fla. Stat. (requiring FDOS to access information from state and federal officials "[i]n order to identify ineligible registered voters and maintain accurate and current voter registration records in the statewide voter registration system"); 52 U.S.C. § 21083(a)(1)(A)(4) (requiring states to "ensure that voter registration records in the State are accurate and updated regularly").

---

[2] Plaintiffs, State of Florida and the Florida Department of State, are collectively referred throughout as "Florida."

10.     Defendant Department of Homeland Security (DHS) is an agency of the United States Government. DHS is responsible for providing immigration status information to States under 8 U.S.C. § 1373(c). *See also* 8 U.S.C. § 1551 note; 6 U.S.C. § 291; 6 U.S.C. § 542 note.

11.     Defendant Alejandro Mayorkas is the Secretary of DHS. DHS is the federal agency principally responsible for immigration enforcement. Florida sues Secretary Mayorkas in his official capacity.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346, 1361, and 2201–02, and 5 U.S.C. §§ 702–06.

13.     The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 705–06, 28 U.S.C. §§ 1361 and 2201–02, the Constitution, and the Court's equitable powers.

14.     Venue lies in this district pursuant to 28 U.S.C. § 1391(e)(1) because Florida sues the federal government and the State is a resident of every judicial district in its sovereign territory, including this judicial district (and division). *Florida v. United States*, No. 3:21-cv-1066, 2022 WL 2431443, at *2 (N.D. Fla. Jan. 18, 2022).

## BACKGROUND

### Legal Background

15.     The Constitution primarily charges the States with safeguarding and administering the electoral process, subject to certain federal limits. *See, e.g., Arizona v.*

*Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 7–9 (2013) (discussing the state and federal balance struck by the Framers in the Elections Clause, U.S. Const. Art. I, § 4, cl. 1).

16.     Under federal and Florida law, the State of Florida has an obligation to ensure the integrity of elections conducted within the State by maintaining accurate voter registration records. *See, e.g.*, 52 U.S.C. § 21083(a) (requiring States to maintain accurate voter registration records and make reasonable efforts to remove ineligible registrants); 52 U.S.C. § 20501(b)(4) (similar); § 98.075(1), Fla. Stat. ("The [Florida Department of State] shall protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records.").

17.     One facet of that duty is ensuring that ineligible voters have not registered to vote in Florida elections. *See* § 98.075, Fla. Stat. (requiring Florida supervisors of elections to remove ineligible voters from voter rolls).

18.     Under Florida law, only U.S. citizens are eligible to vote in Florida elections. Art. VI, § 2, Fla. Const.; § 97.041(1)(a)(2), Fla. Stat. Federal law mirrors this limit. *See* 18 U.S.C. §§ 611, 1015.

19.     As part of its duty to maintain voter registration rolls, FDOS must verify that non-citizens have not been registered to vote in Florida. *See* § 98.075(1), Fla. Stat. (providing that FDOS "shall protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records"); § 98.093(1), Fla. Stat. (requiring FDOS to access information from state and federal officials "[i]n order

to identify ineligible registered voters and maintain accurate and current voter registration records in the statewide voter registration system").

20.    Under Florida law, the Florida Department of Highway Safety and Motor Vehicles notifies FDOS when a person presents evidence of non-citizenship while seeking a new or renewed Florida driver's license, Florida identification card, or other updated record. *See* § 98.093(8)(b), Fla. Stat.

21.    Other state agencies also routinely report evidence of non-citizenship, such as when a person indicates non-citizen status in response to a jury notice or when a law enforcement investigation discovers that a non-citizen is registered to vote.

22.    FDOS is then responsible for investigating citizenship status and reporting that information to the relevant supervisor of elections who makes a final determination about voter roll removal in accordance with procedures set by Florida law. *See* § 98.075(7), Fla. Stat.

23.    While the information FDOS receives from state agencies is reasonably reliable, frequently such data is not sufficiently conclusive for FDOS to report it to a supervisor of elections.

24.    Further, Florida cannot track and maintain immigration and citizenship information on its own. *See Arizona*, 567 U.S. at 401–02 (observing that "a *single* sovereign" is "responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders" (emphasis added)). That responsibility lies with the federal government, namely DHS. *See id.* (describing the federal regime of alien registration).

25.     Recognizing this asymmetry in information, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208 (IIRIRA). Through IIRIRA, Congress mandated that the Immigration and Naturalization Service (INS) "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c); *see also* 8 U.S.C. § 1644 (prohibiting any restrictions on communication between state and local governments and the INS regarding immigration status of aliens).

26.     In 2003, with the creation of DHS, the INS was transferred from the Department of Justice to DHS. *See* 8 U.S.C. § 1551 note; 6 U.S.C. § 291; 6 U.S.C. § 542 note. Three DHS components, U.S. Citizenship and Immigration Services (USCIS), Immigration and Customs Enforcement, and Customs and Border Protection now perform the functions of the INS, including implementation of 8 U.S.C. § 1373(c).

### Factual Background

27.     The primary way DHS seeks to comply with § 1373(c) is through a program created by USCIS called the Systematic Alien Verification for Entitlements (SAVE) program. *See* 76 Fed. Reg. 58,525, 58,526 (Sept. 21, 2011) (noting that the SAVE program "include[s] the implementation of [8 U.S.C. § 1373(c)]"); *see also* Immigration Reform and Control Act, Pub. L. 99-603 (1986) (requiring the INS to establish a system to make immigration status information available to state agencies).

28.     SAVE is an "online service for [government agencies] to verify immigration status."[3]

29.     The SAVE program is available to federal, state, and local benefit-issuing agencies, including state or local governments, who upon request "use SAVE for any legal purpose, such as credentials, background investigations, and voter registration." 76 Fed. Reg. at 58,527.

30.     Initially, the federal government refused to make the SAVE program available to the State of Florida to protect the integrity of its elections. In 2012, however, FDOS sued DHS to compel it to grant FDOS access to the SAVE program to verify voter immigration status. *See* Compl., Doc. 1, *Fla. Dep't of State v. DHS*, No. 1:12-cv-960 (D.D.C. June 11, 2012).

31.     As a result of that lawsuit, FDOS and DHS entered into a memorandum of agreement (the MOA) that allowed FDOS to access the SAVE program to verify citizenship and immigration status information for persons on Florida's voter registration rolls. Ex. 1.

32.     SAVE is a useful but inadequate tool that the State of Florida now uses to protect the integrity of its elections, with notable limitations.

33.     To conduct a SAVE inquiry, a state agency must submit both biographic information and a unique immigration identifier from the person in question.[4] A

---

[3] https://www.uscis.gov/save.

[4] Verification Process, SAVE, U.S. Citizenship & Immigration Servs. (July 29, 2024), https://www.uscis.gov/save/about-save/save-verification-process.

unique immigration identifier may include a USCIS/Alien remigration number (A-number), an arrival/departure record number (Form I-94), a student exchange ID number, a naturalization or citizenship certificate number, or another identifier assigned to an alien by the federal government.[5] But, "SAVE cannot verify a benefit applicant's status using a Social Security Number, driver's license number, U.S. Passport number, foreign passport number, Consular Report of Birth Abroad or other non-DHS documentation."[6]

34.   Thus, in situations where a state agency does not have a unique immigration identifier for an individual, it cannot conduct a SAVE inquiry.

35.   In the months preceding the filing of this complaint, FDOS identified a number of individuals[7] for whom FDOS had evidence of non-citizenship but could not run a search on the SAVE database because FDOS does not have unique immigration identifiers for these individuals. All of the individuals identified by FDOS are currently registered to vote in Florida.

36.   On September 10, 2024, FDOS sent a letter to Tammy Meckley, Associate Director, Immigration Records and Identity Services Directorate, U.S.

---

[5] *Id.*

[6] *Id.*

[7] Florida law restricts the personal information FDOS may publicly disclose regarding these individuals. *See* § 97.0585(1), Fla. Stat. Should it be necessary to the resolution of this case, Florida is willing to file redacted information in an amended complaint or to provide the information to Defendants and the Court under a protective order.

Citizenship and Immigration Services, requesting verification of citizenship status for several identified individuals. Ex. 2.[8]

37.     On October 10, 2024, FDOS received a response from Ur Jaddou, Director of USCIS. Ex. 3. In that letter, USCIS denied FDOS's request for further information about the specific individuals in question and refused to offer any means of identifying immigration status beyond the SAVE program. Ex. 3 at 2–3.

38.     Separately, FDOS officials attempted to submit inquiries regarding these individuals to the Immigration Records & Identity Services division of USCIS. Ex. 4 at 2. A USCIS official confirmed that there is no other method of verifying the immigration or citizenship status of an individual available to state agencies apart from SAVE. Ex. 4 at 2. The USCIS official also verified that SAVE cannot verify status without at least one enumerator from a U.S. issued immigration document. Ex. 4 at 2.

39.     Since then, FDOS has identified several more individuals for whom it cannot conduct a SAVE inquiry due to a lack of unique immigration identifier.

40.     Thus, Florida has identified a subset of individuals for whom it cannot verify citizenship or immigration status through SAVE and for whom DHS refuses to verify citizenship or immigration status through other means. And even assuming Florida were able to verify citizenship or immigration status without DHS cooperation, such efforts would certainly expend significant state resources.

---

[8] A September 9, 2024 version of this letter contained a minor error. Florida attaches the corrected version as its exhibit.

10

41.    On information and belief, Defendants have readily accessible information apart from the SAVE program that is responsive to Florida's inquiries. Defendants are obligated under 8 U.S.C. § 1373(c) to provide that information to Florida.

42.    Without further information from DHS, Florida is unable to fulfill its statutory duties to ensure the integrity of its elections and maintain accurate voter registration records. Florida's inability to carry out its statutory obligations inflicts sovereign injury upon the state. *See Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State."); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quotation omitted)), *quoted with approval*, *Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994, at *7 (11th Cir. Aug. 22, 2024).

## CLAIMS

## COUNT 1

### Agency action unlawfully withheld or unreasonably delayed

43.    Florida repeats and incorporates by reference ¶¶ 1–42.

44.    Under the Administrative Procedure Act (APA), a court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  The

APA further requires that an agency "proceed to conclude a matter presented to it" within "a reasonable time." 5 U.S.C. § 555(b).

45.    Under 8 U.S.C. § 1373(c), Defendants are required to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual . . . by providing the requested verification or status information."

46.    Defendants' failure to timely provide information in response to FDOS's inquiry to verify or ascertain the citizenship or immigration status of the individuals within its jurisdiction for verification of voter eligibility amounts to agency action unreasonably delayed or unlawfully withheld within the meaning of 5 U.S.C. § 706.

## COUNT 2

### Mandamus

47.    Florida repeats and incorporates by reference ¶¶ 1–42.

48.    Under the Mandamus Act, the court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

49.    Defendants owe Florida a clear nondiscretionary duty to respond to the State's inquiry to verify or ascertain the citizenship or immigration status of individuals within its jurisdiction for a purpose authorized by law. *See* 8 U.S.C. § 1373(c).

50.     As a direct and proximate cause of Defendants' failure to provide access, Florida has been irreparably harmed and continues to suffer ongoing irreparable harm.

51.     Because Florida has "a clear right to the relief sought," Defendants have "a clear duty to act," and "no other adequate remedy is available,"[9] mandamus relief is warranted. *See Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (holding that the "common-law writ of mandamus, as codified in 28 U.S.C. § 1361," is appropriate where plaintiff "has exhausted all other avenues of relief" and "the defendant owes him a clear nondiscretionary duty").

52.     A writ of mandamus should issue compelling Defendants to provide verification of the citizenship or immigration status of individuals identified in FDOS's September 10, 2024 letter, Ex. 2, pursuant to 8 U.S.C. § 1373(c).

## COUNT 3

**Agency action not in accordance with law
and in excess of authority in violation of the APA**

53.     Florida repeats and incorporates by reference ¶¶ 1–42.

54.     Under the APA, a court shall hold unlawful and set aside agency action—including the "failure to act"—when it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 551(13), 701(b)(2), 706(2)(A), (C).

---

[9] Florida agrees that complete relief under Count 1 would obviate the need for mandamus relief.

13

55. Defendants' decision to use only the SAVE program to respond to inquiries under § 1373(c)—even though they possess additional information not available through that program—is contrary to their statutory obligations.

56. Section 1373(c) requires Defendants to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual . . . *by providing the requested verification or status information.*" 8 U.S.C. § 1373(c) (emphasis added); *see also* 8 U.S.C. § 1644 (prohibiting any restrictions on communication between state and local governments and DHS regarding immigration status of aliens).

57. These requirements apply to Florida's request to verify immigration or citizenship status of a person who cannot be verified through the SAVE program. Defendants' decision to limit their responses to inquiries that can be made via the SAVE program violates § 1373(c).

## COUNT 4

### Declaratory Judgment

58. Florida repeats and incorporates by reference ¶¶ 1–42.

59. Under the Declaratory Judgment Act, the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

60. Section 1373(c) states that Defendants "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the

agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c).

61.    When a state agency requests verification of an individual's citizenship or immigration status because the State cannot conduct a SAVE inquiry or a SAVE inquiry is inconclusive, Defendants owe a nondiscretionary duty to respond to that inquiry with any and all reasonably available information in Defendants' custody under § 1373(c).

62.    Because Defendants have received an inquiry from Florida to verify or ascertain the citizenship or immigration status of individuals within its jurisdiction for a purpose authorized by law, Florida is entitled to a declaration that Defendants must "respond" to the inquiry "by providing the requested verification or status information." 8 U.S.C. § 1373(c).

## PRAYER FOR RELIEF

For these reasons, Florida asks the Court to enter judgment in favor of the Florida and award the following relief:

    a)  An order holding unlawful Defendants' failure to provide Florida with a response to its inquiry to verify or ascertain the citizenship or immigration status of individuals within its jurisdiction for a purpose authorized by law, 8 U.S.C. § 1373(c), and compelling Defendants to provide a response;

    b)  A declaration that Florida is entitled to a response to its inquiries under 8 U.S.C. § 1373(c);

c) Permanent injunctive relief, or the issuance of a writ of mandamus, ordering Defendants and their officers, employees, and agents to respond to inquiries made by Florida under 8 U.S.C. § 1373(c);

d) An award of Florida's costs and reasonable attorneys' fees, as appropriate; and

e) An award of any further relief to Florida that this Court deems, just, proper, and equitable.

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

John Guard (FBN 374600)
CHIEF DEPUTY ATTORNEY GENERAL

*/s/ James Percival*
James H. Percival (FBN 1016188)
CHIEF OF STAFF

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL

Natalie P. Christmas (FBN 1019180)
SENIOR COUNSELOR

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
james.percival@myfloridalegal.com

*Counsel for the Plaintiffs*

Doc. 29

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

STATE OF FLORIDA; FLORIDA
DEPARTMENT OF STATE; STATE
OF OHIO; FRANK LAROSE, in his
official capacity as OHIO
SECRETARY OF STATE; BRENNA
BIRD, in her official capacity as the
Attorney General of Iowa; PAUL
PATE, in his official capacity as the
Secretary of State of Iowa; STATE OF
INDIANA; and DIEGO MORALES, in
his official capacity as INDIANA
SECRETARY OF STATE,

     *Plaintiffs,*

     v.                        No. 3:24-cv-509-TKW-HTC

The DEPARTMENT OF HOMELAND
SECURITY; and KRISTI NOEM in
her official capacity as Secretary of the
United States Department of
Homeland Security,

     *Defendants.*

                              /

### <u>AMENDED COMPLAINT FOR PERMANENT INJUNCTIVE RELIEF[1]</u>

1.    The Biden-Harris Administration "effectively turned the Southwest Border into a meaningless line in the sand and little more than a speedbump for aliens flooding into the country." *Florida v. United States,* 660 F. Supp. 3d 1239, 1249 (N.D. Fla. 2023).

---

[1] All parties consent to the filing of this amended complaint. *See* Fed. R. Civ. P. 15(a)(2).

1

2.    While estimates vary on the impact of the border crisis, there are at a minimum millions of new unauthorized aliens present in our country.

3.    States have limited power to enforce federal law and deport these individuals when the federal government cannot or will not do so. *See Arizona v. United States*, 567 U.S. 387, 401–02 (2012) (observing that "a *single* sovereign" is "responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders" (emphasis added)). But States can at a minimum ensure state laws are followed, including laws prohibiting non-citizens from voting in State and local elections. *See* Art. VI, § 2, Fla. Const.; Ohio Rev. Code § 3501.05; Iowa Code §§ 48A.5(2)(*a*), 39A.2(1)(*a*)(1); Ind. Code § 3-7-13-1; *see also* Matthew Tragesser, *Illegal Aliens Are Still Voting in Our Elections*, Heritage Found. (July 10, 2024) (providing examples of non-citizen voting).[2]

4.    As part of preventing voter fraud, including non-citizen voting, the Plaintiffs—the States of Florida, Ohio, Iowa, and Indiana, as well as certain of their officials responsible for election integrity—have an obligation to maintain accurate and current voter registration records. *See* § 98.075(1), Fla. Stat.; Ohio Rev. Code § 3501.04; Iowa Code §§ 47.1, 47.7, 39A.7; Ind. Code §§ 3-7-26.3-10 & 16; Ind. Code § 3-7-38.2-7.3.

5.    And as part of "the prerogatives and responsibilities of the States and

---

[2]   Available at https://www.heritage.org/election-integrity/commentary/illegal-aliens-are-still-voting-our-elections.

the National Government vis-à-vis one another," *Bond v. United States*, 564 U.S. 211, 221 (2011), the federal government has an obligation to cooperate with the States in ensuring only citizens vote in their elections.

6.     That cooperation mandate is based in two provisions of federal law. First, 8 U.S.C. § 1373(c) requires the federal government to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency.  .  .  . " Second, 8 U.S.C. § 1644 states that "no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from [federal immigration authorities] information regarding the immigration status, lawful or unlawful, of an alien in the United States."

7.     The Plaintiffs file this suit because the federal government has refused to comply with these obligations and has frustrated the Plaintiffs' ability to maintain the integrity of their elections.

## PARTIES

8.     Plaintiff State of Florida is a sovereign State and has the authority and responsibility to protect its public fisc and the health, safety, and welfare of its citizens. As the State's Chief Legal Officer, Attorney General James Uthmeier is authorized to represent the interests of the State in civil suits. *See* § 16.01(4), (5), Fla. Stat.

9.     Plaintiff, the Florida Department of State (FDOS), is an agency of the

State of Florida.[3] *See* § 20.10, Fla. Stat. FDOS has responsibility under both state and federal law to ensure that Florida's voter registration rolls are current and accurate. *See* § 98.075(1), Fla. Stat. (providing that FDOS "shall protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records"); § 98.093(1), Fla. Stat. (requiring FDOS to access information from state and federal officials "[i]n order to identify ineligible registered voters and maintain accurate and current voter registration records in the statewide voter registration system"); 52 U.S.C. § 21083(a)(1)(A)(4) (requiring states to "ensure that voter registration records in the State are accurate and updated regularly").

10.    Plaintiff State of Ohio indisputably has a compelling interest in preserving the integrity of its election process. Ohio has both a sovereign duty and a federal statutory obligation to protect the franchise. *See* 52 U.S.C. § 21083(a)(1)–(5).

11.    Plaintiff Frank LaRose is suing in his official capacity as the Ohio Secretary of State. He is "the chief election officer of the state, with such powers and duties relating to the registration of voters and the conduct of elections as are prescribed" in Ohio law. Ohio Rev. Code § 3501.04. Ohio law makes the Secretary of State responsible for "[c]ompel[ling] observance by election officers … of the

---

[3] Plaintiffs, State of Florida and the Florida Department of State, are collectively referred throughout as "Florida."

requirements of the election laws." Ohio Rev. Code § 3501.05(M).

12.    Plaintiff Paul Pate is the Secretary of State of Iowa. The Secretary of State is the State commissioner of elections and supervises the activities of the county commissioners of elections. Iowa Code § 47.1. The Secretary is also the State's chief election officer. Iowa Code § 47.1. The Secretary is the State Registrar of Voters, responsible for voter registration and ensuring accuracy of the rolls. Iowa Code § 47.7; *see generally* Iowa Code ch. 48A.

13.    Plaintiff Brenna Bird is the Attorney General of Iowa. She is authorized by Iowa law to sue on the State's behalf under Iowa Code § 13.2. The Attorney General also has exclusive authority to investigate and prosecute certain election-related crimes. *See* Iowa Code §§ 13.11, 39A.5, 39A.6.

14.    Plaintiff the State of Indiana has a compelling "interest in protecting the integrity and reliability of the electoral process." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008). Indiana has both a sovereign duty and a federal statutory obligation to safeguard its elections. *See* 52 U.S.C. § 21083(a)(1)–(5).

15.    Plaintiff Diego Morales is the Secretary of State of Indiana. The Secretary of State serves as the "state's chief election official." Ind. Code § 3-6-3.7-1. By state law, both the Indiana Attorney General and the Indiana Secretary of State are tasked with safeguarding the lawful and orderly administration of Indiana elections. *See, e.g.,* Ind. Code § 3-6-4.1-22; Ind. Code § 3-6-3.7-1; Ind.

Code § 3-7-26.3-10.

16. Defendant Department of Homeland Security (DHS) is an agency of the United States Government. DHS is responsible for providing immigration status information to States under 8 U.S.C. § 1373(c). *See also* 8 U.S.C. § 1551 note; 6 U.S.C. § 291; 6 U.S.C. § 542 note.

17. Defendant Kristi Noem is the Secretary of DHS. DHS is the federal agency principally responsible for immigration enforcement. Plaintiffs sue Secretary Noem in her official capacity.

## JURISDICTION AND VENUE

18. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346, 1361, and 2201–02, and 5 U.S.C. §§ 702–06.

19. The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. §§ 705–06, 28 U.S.C. §§ 1361 and 2201–02, the Constitution, and the Court's equitable powers.

20. Venue lies in this district pursuant to 28 U.S.C. § 1391(e)(1) because Plaintiff Florida sues the federal government and the State is a resident of every judicial district in its sovereign territory, including this judicial district (and division). *Florida v. United States*, No. 3:21-cv-1066, 2022 WL 2431443, at *2 (N.D. Fla. Jan. 18, 2022).

## BACKGROUND

### Legal Background

21.     The Constitution primarily charges the States with safeguarding and administering the electoral process, subject to certain federal limits. *See, e.g.*, *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 7–9 (2013) (discussing the state and federal balance struck by the Framers in the Elections Clause, U.S. Const. Art. I, § 4, cl. 1).

22.     Under federal and state laws, the Plaintiffs have an obligation to ensure the integrity of elections conducted within their States by maintaining accurate voter registration records. *See, e.g.*, 52 U.S.C. § 21083(a) (requiring States to maintain accurate voter registration records and make reasonable efforts to remove ineligible registrants); 52 U.S.C. § 20501(b)(4) (similar); § 98.075(1), Fla. Stat. ("The [Florida Department of State] shall protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records."); Ohio Rev. Code §§ 3501.04, 3501.05; Iowa Code §§ 47.7, 39A.2; Ind. Code §§ 3-7-26.3-10 & 16.

23.     One facet of that duty is ensuring that ineligible voters have not registered to vote in state or local elections. *See* § 98.075, Fla. Stat. (requiring Florida supervisors of elections to remove ineligible voters from voter rolls); Ohio Rev. Code § 3501.05(M), (N); Iowa Code ch.39A; Ind. Code §§ 3-7-26.3-10 & 16; Ind. Code § 3-7-38.2-7.3.

*Florida*

24.    Under Florida law, only U.S. citizens are eligible to vote in Florida elections. Art. VI, § 2, Fla. Const.; § 97.041(1)(a)(2), Fla. Stat. Federal law mirrors this limit. *See* 18 U.S.C. §§ 611, 1015.

25.    As part of its duty to maintain voter registration rolls, FDOS must verify that non-citizens have not been registered to vote in Florida. *See* § 98.075(1), Fla. Stat. (providing that FDOS "shall protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records"); § 98.093(1), Fla. Stat. (requiring FDOS to access information from state and federal officials "[i]n order to identify ineligible registered voters and maintain accurate and current voter registration records in the statewide voter registration system").

26.    Under Florida law, the Florida Department of Highway Safety and Motor Vehicles notifies FDOS when a person presents evidence of non-citizenship while seeking a new or renewed Florida driver's license, Florida identification card, or other updated record. *See* § 98.093(8)(b), Fla. Stat.

27.    Other Florida state agencies also routinely report evidence of non-citizenship, such as when a person indicates non-citizen status in response to a jury notice or when a law enforcement investigation discovers that a non-citizen is registered to vote.

28.    FDOS is then responsible for investigating citizenship status and

8

reporting that information to the relevant supervisor of elections who makes a final determination about voter roll removal in accordance with procedures set by Florida law. *See* § 98.075(7), Fla. Stat.

29.　While the information FDOS receives from state agencies is reasonably reliable, frequently such data is not sufficiently conclusive for FDOS to report it to a supervisor of elections.

30.　Further, Florida cannot track and maintain immigration and citizenship information on its own. *See Arizona*, 567 U.S. at 401–02 (observing that "a *single* sovereign" is "responsible for maintaining a comprehensive and unified system to keep track of aliens within the Nation's borders" (emphasis added)). That responsibility lies with the federal government, namely DHS. *See id.* (describing the federal regime of alien registration).

### *Ohio*

31.　Under the Ohio Constitution, "[o]nly a citizen of the United States" may be permitted to vote at any State or local election held in the State. Ohio Const. art. 5, § 1. Secretary LaRose's duties include maintaining an accurate legal voter registration database. *See, e.g.*, 52 U.S.C. § 21083(a)(1)–(5); Ohio Rev. Code § 3501.04. His office also responds to county boards of elections' requests for verification of individual registered voters' citizenship.

32.　Ohio law requires that the Ohio Secretary of State "[c]ompel the observance by election officers in the several counties of the requirements of the

9

election laws" and to "investigate the administration of election laws, frauds, and irregularities in elections in any county." Ohio Rev. Code § 3501.05(M), (N)(1). He must also "establish and maintain a statewide voter registration database that shall be administered by the office of data analytics," Ohio Rev. Code § 3503.15(A), and "conduct an annual review … to identify persons who appear not to be United States citizens" by comparing the registration database with Ohio Bureau of Motor Vehicles records, Ohio Rev. Code § 3503.152.

33.    When the Ohio Secretary of State identifies a registered voter who does not appear to be a United States citizen, he must provide that person notice and an opportunity to respond, and if necessary, "refer the matter to the attorney general for further investigation and possible prosecution." *Id.*

34.    Like Florida, Ohio cannot track and confirm citizenship information on its own.

### *Iowa*

35.    Iowa law also explains that to be "qualified to register to vote as an eligible elector" the first condition is that the elector "[b]e a citizen of the United States." Iowa Code § 48A.5(2)(*a*); *see also* Iowa Const. art. II, § 1.

36.    Iowa law makes it a felony to lie about citizenship status when registering to vote, Iowa Code § 39A.2(1)(a)(1), and for a noncitizen to cast a vote, *Iowa Code .* § 39A.2(1)(b)(3).

37.    The Attorney General of Iowa has the authority to investigate to

determine whether criminal activity occurred in connection with an election. Iowa Code § 39A.7. That authority includes the authority to investigate if noncitizens have registered to vote in Iowa and the authority to investigate whether noncitizens have voted in Iowa.

38.     The Secretary is required by federal law to maintain the State's voter-registration list "in a manner that ensures that . . . voters . . . who are not eligible are removed" from the list. 52 U.S.C. §§ 21083(a)(2)(A), (a)(2)(B); *see also* 52 U.S.C. § 20507 (recognizing a state's obligation to conduct programs to remove ineligible voters from the rolls).

39.     Like other States, Iowa's statewide voter registration system does not contain any immigration identifiers and the State of Iowa cannot, alone, track immigration status of would-be voters.

### *Indiana*

40.     The Indiana Constitution permits "citizen[s] of the United States . . . [to] vote . . . [in] election[s]." Ind. Const. art. 2, § 2; *see also* Ind. Code § 3-7-13-1 ("A person must[] . . . be a United States citizen . . . to register to vote[.]").

41.     Indiana law penalizes voter registration application fraud and unauthorized voting in elections. Ind. Code § 3-14-2-2; Ind. Code § 3-14-2-9.

42.     The Indiana Secretary of State is the "state's chief election official" and is required to "provide [] support" to county voter registration offices by maintaining a "computerized list" of registered voters. Ind. Code § 3-6-3.7-1; Ind.

Code § 3-7-26.3-10.

43. Indiana law requires that the statewide voter registration system be reviewed for the existence of non-citizen ineligible voters. Ind. Code § 3-7-38.2-7.3.

44. Like other States, Indiana cannot track and confirm citizenship information entirely on its own.

* * *

45. Recognizing this asymmetry in information, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208 (IIRIRA). Through IIRIRA, Congress mandated that the Immigration and Naturalization Service (INS) "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c); *see also* 8 U.S.C. § 1644 (prohibiting any restrictions on communication between state and local governments and the INS regarding immigration status of aliens).

46. In 2003, with the creation of DHS, the INS was transferred from the Department of Justice to DHS. *See* 8 U.S.C. § 1551 note; 6 U.S.C. § 291; 6 U.S.C. § 542 note. Three DHS components, U.S. Citizenship and Immigration Services (USCIS), Immigration and Customs Enforcement, and Customs and Border

Protection now perform the functions of the INS, including implementation of 8 U.S.C. § 1373(c).

## Factual Background

47.    The primary way DHS seeks to comply with § 1373(c) is through a program created by USCIS called the Systematic Alien Verification for Entitlements (SAVE) program. *See* 76 Fed. Reg. 58,525, 58,526 (Sept. 21, 2011) (noting that the SAVE program "include[s] the implementation of [8 U.S.C. § 1373(c)]"); *see also* Immigration Reform and Control Act, Pub. L. 99-603 (1986) (requiring the INS to establish a system to make immigration status information available to state agencies).

48.    SAVE is an "online service for [government agencies] to verify immigration status."[4]

49.    The SAVE program is available to federal, state, and local benefit-issuing agencies, including state or local governments, who upon request "use SAVE for any legal purpose, such as credentials, background investigations, and voter registration." 76 Fed. Reg. at 58,527.

50.    Initially, the federal government refused to make the SAVE program available to the State of Florida to protect the integrity of its elections. In 2012, however, FDOS sued DHS to compel it to grant FDOS access to the SAVE program to verify voter immigration status. *See* Compl., Doc. 1, *Fla. Dep't of State*

---

[4] https://www.uscis.gov/save.

*v. DHS*, No. 1:12-cv-960 (D.D.C. June 11, 2012).

51. As a result of that lawsuit, FDOS and DHS entered into a memorandum of agreement (the MOA) that allowed FDOS to access the SAVE program to verify citizenship and immigration status information for persons on Florida's voter registration rolls. Ex. 1.

52. SAVE has been a useful but inadequate tool that the Plaintiffs used to protect the integrity of its elections, with notable limitations.

53. To conduct a SAVE inquiry, a state agency had to submit both biographic information and a unique immigration identifier from the person in question.[5] A unique immigration identifier may include a USCIS/Alien remigration number (A-number), an arrival/departure record number (Form I-94), a student exchange ID number, a naturalization or citizenship certificate number, or another identifier assigned to an alien by the federal government.[6] But, SAVE could not "verify a benefit applicant's status using a Social Security Number, driver's license number, U.S. Passport number, foreign passport number, Consular Report of Birth Abroad or other non-DHS documentation."[7]

54. Thus, in situations where a state agency did not have a unique immigration identifier for an individual, it could not conduct a SAVE inquiry.

---

[5] Verification Process, SAVE, U.S. Citizenship & Immigration Servs. (July 29, 2024), https://www.uscis.gov/save/about-save/save-verification-process.

[6] *Id.*

[7] *Id.*

14

55.    In 2024, FDOS identified a number of individuals[8] for whom FDOS had evidence of non-citizenship but could not run a search on the SAVE database because FDOS does not have unique immigration identifiers for these individuals. All of the individuals identified by FDOS were, at least at that time, registered to vote in Florida.

56.    On September 10, 2024, FDOS sent a letter to Tammy Meckley, Associate Director, Immigration Records and Identity Services Directorate, U.S. Citizenship and Immigration Services, requesting verification of citizenship status for several identified individuals. Ex. 2.[9]

57.    On October 10, 2024, FDOS received a response from Ur Jaddou, Director of USCIS. Ex. 3. In that letter, USCIS denied FDOS's request for further information about the specific individuals in question and refused to offer any means of identifying immigration status beyond the SAVE program. Ex. 3 at 2–3.

58.    Separately, FDOS officials attempted to submit inquiries regarding these individuals to the Immigration Records & Identity Services division of USCIS. Ex. 4 at 2. A USCIS official confirmed that there is no other method of verifying the immigration or citizenship status of an individual available to state agencies apart from SAVE. Ex. 4 at 2. The USCIS official also verified that SAVE

---

[8] Florida law restricts the personal information FDOS may publicly disclose regarding these individuals. *See* § 97.0585(1), Fla. Stat. Should it be necessary to the resolution of this case, Florida is willing to file redacted information in an amended complaint or to provide the information to Defendants and the Court under a protective order.

[9] A September 9, 2024 version of this letter contained a minor error. Florida attaches the corrected version as its exhibit.

cannot verify status without at least one enumerator from a U.S. issued immigration document. Ex. 4 at 2.

59.    Later, FDOS identified several more individuals for whom it could not conduct a SAVE inquiry due to a lack of unique immigration identifier.

60.    Thus, Florida had identified a subset of individuals for whom it could not verify citizenship or immigration status through SAVE and for whom DHS refused to verify citizenship or immigration status through other means. And even assuming Florida was able to verify citizenship or immigration status without DHS cooperation, such efforts would certainly have expended significant state resources.

61.    Without further information from DHS, Florida was unable to fulfill its statutory duties to ensure the integrity of its elections and maintain accurate voter registration records. Florida's inability to carry out its statutory obligations inflicts sovereign injury upon the state. *See Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State."); *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (quotation omitted)), *quoted with approval, Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994, at *7 (11th Cir. Aug. 22, 2024).

62.    Other Plaintiffs experienced similar problems.

16

63.    For example, Ohio faced an imminent threat of illegal non-citizens voting in state and federal elections in Ohio because the Ohio Secretary of State's office knows that there are currently individuals who have registered to vote in the State  whose citizenship status could not be confirmed via the SAVE program. Beginning in July 2024, Ohio has repeatedly requested that DHS provide access to federal databases and search tools to ensure the state could confirm the citizenship status of individuals whose status may be the subject of a dispute. DHS's refusal to provide the requested access leaves Ohio unable to discharge its own obligations under federal and state law to safeguard election integrity. *See* 52 U.S.C. § 21083(a)(1)–(5); Ohio Rev. Code § 3501.05(M), (N).

64.    Iowa sought to confirm the citizenship-status of voters that had self-identified as noncitizens to the Iowa Department of Transportation. Approximately 65,000 Iowa voters had not had their citizenship identified. On October 24, 2024, an agent from USCIS left a message with the Iowa Secretary of State's office explaining that he could aid Iowa in checking those voters' citizenship status.

65.    On October 25, 2024, the USCIS agent and the Secretary of State's Chief of Staff went over the work the Iowa Secretary of State had done and the agent offered to check remaining 2,176 names that the Secretary had not been able to verify citizenship. That evening, the agent confirmed that he had checked 146 names and 18% were noncitizens.

17

66.   On October 29, the Secretary of State received an email from the Washington, D.C. USCIS office instructing the Iowa USCIS agent not to release any information to the Secretary of State. At that time, the Secretary of State had been made aware that there were hundreds of noncitizens on the list of 2,176 suspected noncitizen voters. But USCIS refused to tell the Secretary or his office which registered voters did not have confirmed citizenship status in the SAVE file.

67.   As a result of USCIS refusing to cooperate with the Secretary, state and county officials were required to be on alert to challenge the potentially 2,176 ballots that included hundreds of known but not identified noncitizens. Several of those voters that were able to prove their citizenship status sued the Secretary.

68.   After the election and with the new administration, it has been confirmed that hundreds of noncitizens were on Iowa's voter rolls. Some who voted have been referred to investigation and potentially prosecution. Access to the SAVE file will help ensure voter integrity in Iowa and will prevent a need to challenge valid voters' ballots in the same manner as in the run up to the 2024 election going forward.

69.   On both October 11 and 18, 2024, Indiana Attorney General Todd Rokita and Indiana Secretary of State Diego Morales requested that USCIS provide the Secretary of State's office with access to citizenship information to ensure the eligibility of 585,774 individuals registered to vote in Indiana. But

18

USCIS failed to respond to or even acknowledge Secretary Morales' requests. Accordingly, Secretary Morales concluded that USCIS had chosen to deny his requests and disregard its statutory obligations to verify the citizenship status of registered voters.

70.   Because of USCIS's inaction, Secretary Morales was unable to confirm whether the 585,774 individuals who were the subject of his requests are authorized to vote in federal elections as required by federal law and in Indiana elections as required by Indiana law.

71.   Beginning in 2025, DHS/USCIS began making several changes to the SAVE system. *See Privacy Act of 1974; System of Records*, 90 Fed. Reg. 48,948 (Oct. 31, 2025) (describing changes). DHS/USCIS is in the process of adding individuals who are U.S. citizens by birth to the categories of individuals SAVE covers, and is updating the categories of records in the SAVE system to include collecting both full and truncated (last four digits) Social Security number, U.S. passport number, and driver's license number to enable State government users to use any of these numbers as an identifier to run SAVE searches. *See Id.* at 48,949. Despite these changes, Plaintiffs remain unable to confirm citizenship status for all individuals necessary.

## CLAIMS

## COUNT 1

### Agency action unlawfully withheld or unreasonably delayed

72.    Plaintiffs repeat and incorporate by reference ¶¶ 1–71.

73.    Under the Administrative Procedure Act (APA), a court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA further requires that an agency "proceed to conclude a matter presented to it" within "a reasonable time." 5 U.S.C. § 555(b).

74.    Under 8 U.S.C. § 1373(c), Defendants are required to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual . . . by providing the requested verification or status information."

75.    Defendants' failure to timely provide the required information in response to Plaintiffs' inquiries to verify or ascertain the citizenship or immigration status of the individuals within their jurisdiction for verification of voter eligibility amounts to agency action unreasonably delayed or unlawfully withheld within the meaning of 5 U.S.C. § 706.

## COUNT 2

### Mandamus

76.    Plaintiffs repeat and incorporate by reference ¶¶ 1–71.

77.    Under the Mandamus Act, the court may "compel an officer or

employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

78. Defendants owe Plaintiffs a clear nondiscretionary duty to respond to the Plaintiffs' inquiries to verify or ascertain the citizenship or immigration status of individuals within their jurisdiction for a purpose authorized by law. *See* 8 U.S.C. § 1373(c).

79. As a direct and proximate cause of Defendants' failure to provide access, Plaintiffs have been irreparably harmed and continue to suffer ongoing irreparable harm.

80. Because Plaintiffs have "a clear right to the relief sought," Defendants have "a clear duty to act," and "no other adequate remedy is available,"[10] mandamus relief is warranted. *See Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (holding that the "common-law writ of mandamus, as codified in 28 U.S.C. § 1361," is appropriate where plaintiff "has exhausted all other avenues of relief" and "the defendant owes him a clear nondiscretionary duty").

81. A writ of mandamus should issue compelling Defendants to provide verification of the citizenship or immigration status of individuals identified in Plaintiffs' requests, including FDOS's September 10, 2024 letter, Ex. 2, pursuant to 8 U.S.C. § 373(c).

---

[10] Florida agrees that complete relief under Count 1 would obviate the need for mandamus relief.

## COUNT 3

### Agency action not in accordance with law and in excess of authority in violation of the APA

82.    Plaintiffs repeat and incorporate by reference ¶¶ 1–71.

83.    Under the APA, a court shall hold unlawful and set aside agency action—including the "failure to act"—when it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 551(13), 701(b)(2), 706(2)(A), (C).

84.    Defendants' decision to use only the SAVE program to respond to inquiries under § 1373(c) is contrary to their statutory obligations.

85.    Section 1373(c) requires Defendants to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual . . . *by providing the requested verification or status information.*" 8 U.S.C. § 1373(c) (emphasis added); *see also* 8 U.S.C. § 1644 (prohibiting any restrictions on communication between state and local governments and DHS regarding immigration status of aliens).

86.    These requirements apply to Plaintiffs' requests to verify immigration or citizenship status of persons who cannot currently be verified through the SAVE program. Defendants' decision to limit their responses to inquiries that can currently be made via the SAVE program violates § 1373(c).

## COUNT 4

### Declaratory Judgment

87.     Plaintiffs repeat and incorporate by reference ¶¶ 1–71.

88.     Under the Declaratory Judgment Act, the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

89.     Section 1373(c) states that Defendants "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373(c).

90.     When a state agency requests verification of an individual's citizenship or immigration status because the State cannot conduct a SAVE inquiry or a SAVE inquiry is inconclusive, Defendants owe a nondiscretionary duty to respond to that inquiry with any and all reasonably available information in Defendants' custody under § 1373(c).

91.     Because Defendants have received inquiries from Plaintiffs to verify or ascertain the citizenship or immigration status of individuals within their jurisdiction for a purpose authorized by law, Plaintiffs are entitled to a declaration that Defendants must "respond" to these inquiries "by providing the requested verification or status information." 8 U.S.C. § 1373(c).

## PRAYER FOR RELIEF

For these reasons, Plaintiffs ask the Court to enter judgment in favor of the Plaintiffs and award the following relief:

a) An order holding unlawful Defendants' failure to provide Plaintiffs with the required response to their inquiries to verify or ascertain the citizenship or immigration status of individuals within their jurisdiction for a purpose authorized by law, 8 U.S.C. § 1373(c), and compelling Defendants to provide that response;

b) A declaration that Plaintiffs are entitled to the required response to their inquiries under 8 U.S.C. § 1373(c);

c) Permanent injunctive relief, or the issuance of a writ of mandamus, ordering Defendants and their officers, employees, and agents to adequately respond to inquiries made by Plaintiffs under 8 U.S.C. § 1373(c);

d) An award of Plaintiffs' costs and reasonable attorneys' fees, as appropriate; and

e) An award of any further relief to Plaintiffs that this Court deems just, proper, and equitable.

Respectfully submitted,

JAMES UTHMEIER
ATTORNEY GENERAL

/s/ Caleb Stephens
JEFFREY PAUL DESOUSA (FBN 110951)
*Acting Solicitor General*
JASON J. MUEHLHOFF
*Chief Deputy Solicitor General*
CALEB STEPHENS (FBN 1050554)
*Assistant Solicitor General*

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
caleb.stephens@myfloridalegal.com
jason.muehlhoff@myfloridalegal.com
jenna.hodges@myfloridalegal.com

*Counsel for Plaintiffs State of Florida and the
Florida Department of State*

/s/ Ashley E. Davis
Ashley E. Davis (FBN 48032)
*General Counsel*
FLORIDA DEPARTMENT OF STATE
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399-0250
(p): (850) 245-6531
(f): (850) 245-6125
ashley.davis@dos.fl.gov

*Counsel for Plaintiff the Florida Department
of State*

/s/ R. Trent McCotter
R. TRENT MCCOTTER
BOYDEN GRAY PLLC
800 Connecticut Ave. NW, #900

25

Washington, DC 20006
(202) 955-0620
tmccotter@boydengray.com

*Counsel for Plaintiffs State of Ohio and
Frank LaRose*

BRENNA BIRD
Attorney General of Iowa

*/s/ Patrick Valencia*
ERIC H. WESSAN
Solicitor General
PATRICK C. VALENCIA
Deputy Solicitor General

1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov

*Counsel for Plaintiffs Brenna Bird and Paul
Pate*

THEODORE E. ROKITA
*Attorney General of Indiana*

*/s/Blake E. Lanning*
Blake E. Lanning
*Assistant Chief Deputy*

*/s/William D. Young*
William D. Young
*Director of Policy and Strategic Initiatives*

Office of the Indiana Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6201

26

Blake.Lanning@atg.in.gov
William.Young@atg.in.gov

*Counsel for Plaintiffs State of Indiana and
Diego Morales*

27

Doc. 30

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

|  |  |
|---|---|
| STATE OF FLORIDA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Civil Case Number: <br> 3:24-cv-509-TKW-HTC |

**PLAINTIFFS' UNOPPOSED MOTION TO DISMISS WITH PREJUDICE**

The parties have executed a settlement agreement that resolves the above-captioned case, a copy of which is attached to this motion as Exhibit 1. In accordance with that agreement, Plaintiffs move to dismiss this case with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, subject to the Court's approval of and retention of jurisdiction to enforce the Parties' settlement agreement. Each party shall bear its own costs and attorneys' fees. Defendants do not oppose this motion. A proposed order agreed upon by all parties is attached.

Respectfully submitted,

JAMES UTHMEIER
ATTORNEY GENERAL

/s/Caleb Stephens
JEFFREY PAUL DESOUSA (FBN 110951)
*Acting Solicitor General*
JASON J. MUEHLHOFF
*Chief Deputy Solicitor General*
CALEB STEPHENS (FBN 1050554)
*Assistant Solicitor General*

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
caleb.stephens@myfloridalegal.com
jason.muehlhoff@myfloridalegal.com
jenna.hodges@myfloridalegal.com

*Counsel for Plaintiffs State of Florida and
the Florida Department of State*

/s/ Ashley E. Davis
Ashley E. Davis (FBN 48032)
*General Counsel*
FLORIDA DEPARTMENT OF STATE
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399-0250
(p): (850) 245-6531
(f):  (850) 245-6125
ashley.davis@dos.fl.gov

*Counsel for Plaintiff the Florida
Department of State*

/s/ R. Trent McCotter
R. TRENT MCCOTTER
BOYDEN GRAY PLLC
800 Connecticut Ave. NW, #900

Washington, DC 20006
(202) 955-0620
tmccotter@boydengray.com

*Counsel for Plaintiffs State of Ohio and
Frank LaRose*

BRENNA BIRD
Attorney General of Iowa

*/s/ Patrick Valencia*
ERIC H. WESSAN
Solicitor General
PATRICK C. VALENCIA
Deputy Solicitor General
ANGELA STUEDEMANN
Assistant Attorney General

1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov
angela.stuedemann@ag.iowa.gov

*Counsel for Plaintiffs Brenna Bird and
Paul Pate*

THEODORE E. ROKITA
*Attorney General of Indiana*

*/s/Blake E. Lanning*
Blake E. Lanning
*Assistant Chief Deputy*

*/s/William D. Young*
William D. Young
*Director of Policy and Strategic Initiatives*

Office of the Indiana Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6201
Blake.Lanning@atg.in.gov
William.Young@atg.in.gov

*Counsel for Plaintiffs State of Indiana and
Diego Morales*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

|  |  |
|---|---|
| STATE OF FLORIDA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Civil Case Number:<br>3:24-cv-509-TKW-HTC |

<u>**SETTLEMENT AGREEMENT**</u>

The State of Florida, the Florida Department of State, the State of Ohio, Frank LaRose (in his official capacity as Ohio Secretary of State), the State of Indiana, Diego Morales (in his official capacity as Indiana Secretary of State), Brenna Bird (in her official capacity as the Attorney General of Iowa), and Paul Pate (in his official capacity as the Secretary of State of Iowa) ("Plaintiffs") and the United States Department of Homeland Security ("DHS") and Kristi Noem (in her official capacity as Secretary of Homeland Security) ("Defendants") (collectively, "the Parties") hereby enter into this Settlement Agreement:

**Plaintiffs' Release and Dismissal of Claims**

1.    Upon the execution and subject to the faithful implementation of this Settlement Agreement, Plaintiffs hereby release and discharge for a period of twenty

1

years Defendants, and their successors, the United States of America, and any department, agency, or establishment of the United States, and any officers, employees, agents, successors, or assigns of such department, agency, or establishment, from any and all claims and causes of action that Plaintiffs assert or could have asserted in this litigation, or which hereinafter could be asserted by reason of, or with respect to, or in connection with, or which arise out of, the causes of action alleged in the Complaint or the Amended Complaint.

2.    The release in Paragraph 1 shall not apply to any dispute related to the obligations set forth in this Settlement Agreement.  The Parties agree that any disputes relating to compliance with the terms of this Settlement Agreement shall be governed by Paragraph 23 of this Settlement Agreement ("Dispute Resolution").

3.    Within 5 calendar days of the execution of this Settlement Agreement, Plaintiffs will seek the dismissal with prejudice of this lawsuit by having counsel file a Motion to Dismiss with Prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.  Defendants will not oppose the filing of that motion.

**Plaintiffs' Duties and Obligations**

4.    Within 90 days of the execution of this Settlement Agreement, unless it proves to be unnecessary in the judgment of the Parties, Plaintiffs will negotiate in good faith with Defendants to execute a new Information Sharing Agreement ("ISA") to assist in improving and modernizing the Systematic Alien Verification for Entitlements ("SAVE") system.

5.      Within 90 days of the execution of this Settlement Agreement, unless it proves to be unnecessary in the judgment of the Parties, Plaintiffs will negotiate in good faith with Defendants to execute a new or updated Memorandum of Agreement ("MOA") concerning the SAVE verification system.

6.      Within 90 days of the execution of this Settlement Agreement, and consistent with any new ISA, representatives from each State Plaintiff (*i.e.*, Florida, Ohio, Iowa, and Indiana) may provide Defendants with 1,000 randomly selected driver's license records from their state (including First Name, Last Name, Date of Birth, Driver's License Number or State Identification Number, and State of issuance), for which verification is requested, and for assistance in developing and improving functionality for SAVE by making state-level data available to SAVE.

7.      Any State Plaintiff that provides these records will, consistent with applicable law, make best efforts to support and encourage DHS's efforts to receive and have full use of state driver's license records from the National Law Enforcement Telecommunications System ("NLETS") and the relevant State driver's license agency or agencies.

## Defendants' Duties and Obligations

8.      Within 90 days of the execution of this Settlement Agreement, unless it proves to be unnecessary in the judgment of the Parties, Defendants agree to enter into an ISA with Plaintiffs for the purpose of improving and modernizing the SAVE system.

3

9.    Within 90 days of the execution of this Settlement Agreement, unless it proves to be unnecessary in the judgment of the Parties, Defendants agree to enter into a new or updated MOA with Plaintiffs concerning the SAVE verification system.

10.    No later than 60 days after the execution of this Settlement Agreement, Defendants will ensure that the SAVE system has, at a minimum, the following capabilities:

   a.    Free service for state, territorial, tribal, and local government agencies.

   b.    Integration with the Social Security Administration to allow searches with full Social Security Numbers (SSNs) to be used as a non-DHS enumerator.

   c.    Integration with the Social Security Administration to allow searches with last-four-digits SSNs to be used as a non-DHS enumerator.

   d.    The capacity to process bulk upload verification requests so that users of the system will not need to input verification requests one-by-one.

   e.    The capacity to provide data supporting each verification, and a paper verifiable output that can be relied on by the user, including but not limited to identifying the supporting document type and

4

number queried, and issue date of citizenship where available. This information may be provided by a downloadable .csv file.

f.    The capacity to obtain U.S. citizenship or immigration-status information, either within 48 hours (for initial verification) or within SAVE's estimated "Additional Verification Response Time," as reported on the SAVE website, (for additional or manual verification), when provided the following data points:

    i.    First name and last name; and

    ii.    Date of birth; and

    iii.    At least one of the following:

        1.    A government-issued immigration enumerator (*e.g.*, A-Number/USCIS Number, SEVIS ID, I-94 Number, Naturalization/Citizenship Certificate Number, Card Number / I-797 Receipt Number, or Visa Number); or

        2.    Other government-issued enumerator permitted by SAVE (*e.g.*, a full SSN, or the last-four-digits of an SSN).

11.    Defendants will ensure that all of the capabilities described in Paragraph 10 remain operational, absent (a) a modification or amendment to this Settlement Agreement as described in Paragraph 20, or (b) unforeseen technical limitations that arise after the execution of this Settlement Agreement. In the event

unforeseen technical limitations arise that impair the operationality of the capabilities described in Paragraph 10, Defendants will make best efforts to restore the capabilities' operationality as soon as practicable and will keep Plaintiffs apprised of their efforts to do so.

12.     Within 30 business days of the execution of this Settlement Agreement, Defendants will provide SAVE verification for all outstanding cases Plaintiffs have pending in which they do not possess an alien number, but where the State can timely provide a full or partial (last 4-digits) Social Security Number.

13.     Defendants may, in their discretion, undertake a feasibility study to determine whether the SAVE system could be enhanced or another system developed that would allow Plaintiffs to obtain U.S. citizenship or immigration-status information when providing only first name and last name and date of birth. Defendants may, in their discretion, work with Plaintiffs to construct any such study and report the results of any such study to Plaintiffs.

**Miscellaneous Provisions**

14.     Each undersigned representative certifies that he or she is fully authorized to enter into the terms and conditions of this Settlement Agreement and to execute and legally bind the Parties he or she represents to this document.

15.     The parties acknowledge that this Settlement Agreement is entered into solely for the purpose of settling and compromising the claims in this action without further litigation, and it shall not be construed as evidence or as an admission regarding any issues of law or fact, or regarding the truth or validity of any allegation

or claim raised in this action, or as evidence or as an admission by Defendants regarding Plaintiffs' entitlement to any relief (including attorneys' fees or other litigation costs), or regarding the propriety of venue in this district.

16.    This Settlement Agreement is not intended to create, and does not create, any third-party beneficiary rights or any other kind of right or privilege for any person, group, or entity.

17.    Nothing contained in this Settlement Agreement shall impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, or with any federal statute in effect at the time of such performance.

18.    This Settlement Agreement (including Exhibits) constitutes the entire agreement among the Parties and supersedes all prior representations, agreements and understandings, whether oral or written, concerning the subject matter of the Settlement Agreement.

19.    This Settlement Agreement may be executed in counterparts, and is effective on the date by which all Parties have executed this Agreement. Facsimiles and PDF versions of signatures (including electronic signatures or "/s/" signatures) shall constitute acceptable, binding signatures for purposes of this Agreement.

20.    The provisions of this Settlement Agreement are severable. Should any provision of this Settlement Agreement, for any reason, be deemed or held invalid or unenforceable, in whole or in part, by a court of law, said determination shall not affect any other provision of this Settlement Agreement.

21.     This Settlement Agreement cannot be modified or amended except through a written instrument that specifically refers to this Settlement Agreement and that is signed by the Parties or their counsel.  No provision of this Settlement Agreement may be waived or altered except through a written waiver or amendment signed by the Parties or their counsel acting on their behalf.

22.     This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, successors, assigns and personal representatives, including any persons, entities, departments or agencies succeeding to the interests or obligations of the Parties.

### Dispute Resolution

23.     Plaintiffs, either jointly or individually, may allege a breach of the terms and conditions of this Settlement Agreement only in the manner described as follows:

    a.     Plaintiffs may elect to file: (1) a motion pursuant to Fed. R. Civ. P. 60(b)(6) seeking relief from the dismissal of this lawsuit; or (2) a motion or new action to enforce this settlement agreement.

    b.     Prior to filing any such motion or action, the Parties shall meet and confer in an attempt to resolve the dispute without the need for judicial intervention.  As part of the meet-and-confer process, counsel for Plaintiffs shall submit written notice alleging a breach of this Settlement Agreement to counsel for Defendants. Such notice shall specify the basis for the alleged breach, the

provision(s) of this Settlement Agreement that allegedly has been breached, the facts and circumstances supporting such claim, and whether relief will be sought under Fed. R. Civ. P. 60(b)(6). Plaintiffs shall not inform the Court of its allegation(s) at that time. However, if Plaintiffs believe irreparable injury may occur absent immediate action (in "Emergency Circumstances") and if Defendants decline to preserve the status quo ante (*i.e.*, the status quo before the act(s) alleged to constitute a breach) upon notice, Plaintiffs may immediately initiate proceedings before the Court to preserve the status quo, provided the Parties meet and confer before initiating any such proceedings.

c.   The notice of any alleged breach of this Settlement Agreement by Defendants must be submitted within ninety (90) days after Plaintiffs have, or should have had, knowledge of any alleged breach. Any and all assertions of breach shall be forever waived if not asserted within the applicable limitations period.

d.   Defendants shall have a period of forty-five (45) days after the receipt of such notice to take appropriate action to resolve the alleged claim. However, as noted above in Paragraph 22(b), Plaintiffs may initiate court proceedings prior to expiration of Defendants' 45-day period for response in Emergency Circumstances. In the event of any notice of breach, if requested

to do so, Plaintiffs shall provide to Defendants any information and materials available to Plaintiffs that support the violation alleged in the notice.

e.  If any assertion of breach by Plaintiffs is not resolved after consultation between the Parties' counsel within the forty-five (45) day period, or if, prior to the expiration of such forty-five (45) day period, counsel for Defendants advise counsel for Plaintiffs that no further action will be taken by Defendants, Plaintiffs may seek relief described in subparagraph (a). The 45-day period will not apply in Emergency Circumstances as set forth in Paragraph 22(b).

f.  Defendants' consent to the filing of a motion pursuant to Fed. R. Civ. P. 60(b)(6) or the filing of a motion or a new action to enforce this Settlement Agreement shall not be deemed to waive any available defenses to the substance of such motion or new action, including without limitation any and all jurisdictional defenses and any right or authority to contend that no breach of this Settlement Agreement has occurred, and Defendants otherwise reserve all available defenses to such motion, including without limitation any and all jurisdictional defenses and any right or authority to contend that no breach of this Settlement Agreement has occurred. Defendants' consent is not

10

required for Plaintiffs to initiate court proceedings, provided that the Parties have met and conferred as set forth in Paragraph 22(b).

g.   Notwithstanding any motion or action filed by Plaintiffs, the Parties may continue to meet and confer in a good-faith attempt to resolve their dispute.

h.   This Settlement Agreement does not foreclose Plaintiffs from bringing any other measure to allege a breach by Defendants, but Defendants reserve the right to oppose such relief on any available ground, including without limitation any and all jurisdictional defenses and any right or authority to contend that no breach of this Settlement Agreement has occurred.

i.   Plaintiffs agree, however, that they will seek relief through the mechanisms defined in this section prior to seeking relief through any other measure and shall only seek relief through other measures should the Court deny a motion or dismiss an action brought by Plaintiffs under subparagraph (a) concerning the alleged breach for which Plaintiffs seek enforcement through other measures.   This Settlement Agreement shall not be construed as Defendants conceding that any particular pleading or action by Plaintiffs is available.

11

j.    The parties agree to request that the Court retain jurisdiction over this case for a period of twenty years from the date of the Court's order of dismissal for the purpose of enforcement of the parties' Settlement Agreement. The parties further agree that a party may request that the Court extend its jurisdiction if: (1) settlement obligations are not completed within those twenty years; or (2) the party believes it necessary for the Court to continue to retain jurisdiction to enforce the parties' Settlement Agreement.

k.    The parties agree that they will be subject to the jurisdiction of the Court in the event of a violation of this Settlement Agreement.

*    *    *

SO STIPULATED AND AGREED this 28th day of November, 2025.

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI
Florida Bar No. 1041279
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*

/s/ Jason J. Muehlhoff
*Chief Deputy Solicitor General*
Office of the Attorney General The
Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
jason.muehlhoff@myfloridalegal.com

*Counsel for Plaintiffs State of Florida
and the Florida Department of State*

/s/ Ashley E. Davis
Ashley E. Davis (FBN 48032)
*General Counsel*
FLORIDA DEPARTMENT OF STATE
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399-0250

13

(p): (850) 245-6531
(f):  (850) 245-6125
ashley.davis@dos.fl.gov

*Counsel for Plaintiff the Florida*
*Department of State*

*/s/ R. Trent McCotter*
R. TRENT MCCOTTER
BOYDEN GRAY PLLC
800 Connecticut Ave. NW, #900
Washington, DC 20006
(202) 955-0620
tmccotter@boydengray.com

*Counsel for Plaintiffs State of Ohio and*
*Frank LaRose*

*/s/ Eric H. Wessan*
ERIC H. WESSAN
Solicitor General

1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for Plaintiffs Brenna Bird and*
*Paul Pate*

*/s/ Blake E. Lanning*
Blake E. Lanning
*Assistant Chief Deputy*

*/s/ William D. Young*
William D. Young
*Director of Policy and Strategic*
*Initiatives*

14

Office of the Indiana Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6201
Blake.Lanning@atg.in.gov
William.Young@atg.in.gov

*Counsel for Plaintiffs State of Indiana
and Diego Morales*

# EXHIBIT TO SETTLEMENT AGREEMENT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| STATE OF FLORIDA, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br><br>UNITED STATES DEPARTMENT<br>OF HOMELAND SECURITY, *et al.*,<br><br>　　　　　　Defendants. | Civil Case Number:<br>3:24-cv-509-TKW-HTC |

**PLAINTIFFS' UNOPPOSED MOTION TO DISMISS WITH PREJUDICE**

The parties have executed a settlement agreement that resolves the above-captioned case, a copy of which is attached to this motion as Exhibit 1. In accordance with that agreement, Plaintiffs move to dismiss this case with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure, subject to the Court's approval of and retention of jurisdiction to enforce the Parties' settlement agreement. Each party shall bear its own costs and attorneys' fees. Defendants do not oppose this motion. A proposed order agreed upon by all parties is attached.

Respectfully submitted,

17

JAMES UTHMEIER
ATTORNEY GENERAL

/s/Caleb Stephens
JEFFREY PAUL DESOUSA (FBN 110951)
*Acting Solicitor General*
JASON J. MUEHLHOFF
*Chief Deputy Solicitor General*
CALEB STEPHENS (FBN 1050554)
*Assistant Solicitor General*

Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
caleb.stephens@myfloridalegal.com
jason.muehlhoff@myfloridalegal.com
jenna.hodges@myfloridalegal.com

*Counsel for Plaintiffs State of Florida and
the Florida Department of State*

/s/ Ashley E. Davis
Ashley E. Davis (FBN 48032)
*General Counsel*
FLORIDA DEPARTMENT OF STATE
500 South Bronough Street, Suite 100
Tallahassee, Florida 32399-0250
(p): (850) 245-6531
(f): (850) 245-6125
ashley.davis@dos.fl.gov

*Counsel for Plaintiff the Florida
Department of State*

/s/ R. Trent McCotter
R. TRENT MCCOTTER
BOYDEN GRAY PLLC
800 Connecticut Ave. NW, #900

18

Washington, DC 20006
(202) 955-0620
tmccotter@boydengray.com

*Counsel for Plaintiffs State of Ohio and Frank LaRose*

BRENNA BIRD
Attorney General of Iowa

*/s/ Patrick Valencia*
ERIC H. WESSAN
Solicitor General
PATRICK C. VALENCIA
Deputy Solicitor General
ANGELA STUEDEMANN
Assistant Attorney General

1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov
angela.stuedemann@ag.iowa.gov

*Counsel for Plaintiffs Brenna Bird and Paul Pate*

THEODORE E. ROKITA
*Attorney General of Indiana*

*/s/Blake E. Lanning*
Blake E. Lanning
*Assistant Chief Deputy*

*/s/William D. Young*
William D. Young
*Director of Policy and Strategic Initiatives*

19

Office of the Indiana Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6201
Blake.Lanning@atg.in.gov
William.Young@atg.in.gov

*Counsel for Plaintiffs State of Indiana and
Diego Morales*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| STATE OF FLORIDA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Civil Case Number:<br>3:24-cv-509-TKW-HTC |

### [Proposed] ORDER

Upon consideration of Plaintiffs' unopposed motion to dismiss with prejudice, it is hereby

**ORDERED** that the motion is **GRANTED**, it is further

**ORDERED** that the above-captioned case is **DISMISSED WITH PREJUDICE**, under Federal Rule of Civil Procedure 41(a)(2); it is further

**ORDERED** that each party shall bear its own costs and attorneys' fees; it is further

**ORDERED** that the Court retains jurisdiction over this case for a period of twenty years from the date of this order for the purpose of enforcement of the parties' settlement agreement, which is approved by and incorporated by reference into this

21

order.   A party may request that the Court extend its jurisdiction if: (1) settlement

obligations are not completed within those twenty years; or (2) the party believes it

necessary for the Court to continue to retain jurisdiction to enforce the parties'

Settlement Agreement.   Any such request shall be submitted by motion.   Any party

may, upon notice, seek to enforce the settlement agreement either by motion or a

new action brought in this Court, under the terms set forth in the parties' Settlement

Agreement.

     **DONE and ORDERED** this _____ day of _____, 2025.


_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

|  |  |
|---|---|
| STATE OF FLORIDA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Civil Case Number:<br>3:24-cv-509-TKW-HTC |

## [Proposed] ORDER

Upon consideration of Plaintiffs' unopposed motion to dismiss with prejudice, it is hereby

**ORDERED** that the motion is **GRANTED**, it is further

**ORDERED** that the above-captioned case is **DISMISSED WITH PREJUDICE**, under Federal Rule of Civil Procedure 41(a)(2); it is further

**ORDERED** that each party shall bear its own costs and attorneys' fees; it is further

**ORDERED** that the Court retains jurisdiction over this case for a period of twenty years from the date of this order for the purpose of enforcement of the parties' settlement agreement, which is approved by and incorporated by reference into this

order.  A party may request that the Court extend its jurisdiction if: (1) settlement obligations are not completed within those twenty years; or (2) the party believes it necessary for the Court to continue to retain jurisdiction to enforce the parties' Settlement Agreement.  Any such request shall be submitted by motion.  Any party may, upon notice, seek to enforce the settlement agreement either by motion or a new action brought in this Court, under the terms set forth in the parties' Settlement Agreement.

**DONE and ORDERED** this \_\_\_\_\_ day of _____, 2025.

_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

Doc. 31

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

STATE OF FLORIDA, *et al.*,

        Plaintiffs,

    v.

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY, *et al.*,

        Defendants.

Civil Case Number:
3:24-cv-509-TKW-HTC

## ORDER

Upon consideration of Plaintiffs' unopposed motion to dismiss with prejudice, it is hereby

**ORDERED** that the motion is **GRANTED**, it is further

**ORDERED** that the above-captioned case is **DISMISSED WITH PREJUDICE**, under Federal Rule of Civil Procedure 41(a)(2); it is further

**ORDERED** that each party shall bear its own costs and attorneys' fees; it is further

**ORDERED** that the Court retains jurisdiction over this case for a period of twenty years from the date of this order for the purpose of enforcement of the parties' settlement agreement, which is approved by and incorporated by reference into this

order.  A party may request that the Court extend its jurisdiction if: (1) settlement obligations are not completed within those twenty years; or (2) the party believes it necessary for the Court to continue to retain jurisdiction to enforce the parties' Settlement Agreement.  Any such request shall be submitted by motion.  Any party may, upon notice, seek to enforce the settlement agreement either by motion or a new action brought in this Court, under the terms set forth in the parties' Settlement Agreement.

ORDERED that the Clerk shall close the case file.

DONE and ORDERED this __1st__ day of __December__, 2025.

_____
T. KENT WETHERELL, II
UNITED STATES DISTRICT JUDGE

Doc. 32

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

STATE OF FLORIDA and the
FLORIDA DEPARTMENT OF STATE, et al.

    *Plaintiffs,*

    v.                        Case No. 3:24-cv-509-TKW-HTC

The DEPARTMENT OF HOMELAND SECURITY;
and ALEJANDRO MAYORKAS, in his
Official capacity as Secretary
of the United States
Department of Homeland Security,

    *Defendants.*
_____/

**EMERGENCY MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Plaintiffs released and dismissed their claims against Defendants in exchange for Defendants' binding agreement to ensure that the Systematic Alien Verification for Entitlements (SAVE) program would operate in a way that brought the federal government into compliance with its statutory obligations to cooperate with States.

Defendants have now breached that agreement in several material respects by disabling several critical functionalities of the SAVE system. Plaintiffs face immediate and irreparable harm unless this Court exercises the jurisdiction it reserved to enforce the settlement agreement. Pursuant to the settlement agreement's dispute resolution provisions, Plaintiffs jointly and respectfully request that the Court order Defendants to immediately remedy their breach and restore the SAVE system's disabled functions.

## BACKGROUND

### A.    Plaintiffs' lawsuit.

This case involves Plaintiffs' obligations to maintain accurate and current voter registration records to prevent voter fraud, including non-citizen voting. *See* § 98.075(1), Fla. Stat.; Ohio Rev. Code § 3501.04; Iowa Code §§ 47.1, 47.7, 39A.7; Ind. Code §§ 3-7-26.3-10 & 16; Ind. Code § 3-7-38.2-7.3. The federal government likewise has a duty to cooperate with States in ensuring that only citizens vote in their elections. *See* 8 U.S.C. § 1373(c); 8 U.S.C. § 1644.

Because the federal government had been refusing to comply with this obligation and had frustrated Plaintiffs' ability to maintain the integrity of their elections, Plaintiffs sued in November 2024. ECF 6. In the amended complaint, Plaintiffs sought an order holding unlawful Defendants' failure to provide Plaintiffs with the required responses to their inquiries to verify or ascertain the citizenship or immigration status of individuals within their jurisdiction for a purpose authorized by law; a declaration that Plaintiffs are entitled to the required response to their inquiries; and permanent injunctive relief, or the issuance of a writ of mandamus, ordering Defendants to adequately respond to the inquiries made by Plaintiffs. ECF 29, at 24.

### B.    The parties execute a settlement agreement and the Court approves it.

In November 2025, the parties executed a settlement agreement resolving all of Plaintiffs' claims. ECF 30-1. In exchange for Plaintiffs' release and dismissal of their claims, Defendants agreed—among other things—to "ensure that the SAVE

system has, at a minimum, the following capabilities" no later than 60 days after the

agreement's execution:

    a.    Free service for state, territorial, tribal, and local government agencies.

    b.    Integration with the Social Security Administration to allow searches with full Social Security Numbers (SSNs) to be used as a non-DHS enumerator.

    c.    Integration with the Social Security Administration to allow searches with last-four-digits SSNs to be used as a non-DHS enumerator.

    d.    The capacity to process bulk upload verification requests so that users of the system will not need to input verification requests one-by-one.

    e.    The capacity to provide data supporting each verification, and a paper verifiable output that can be relied on by the user, including but not limited to identifying the supporting document type and number queried, and issue date of citizenship where available. This information may be provided by a downloadable .csv file.

    f.    The capacity to obtain U.S. citizenship or immigration-status information, either within 48 hours (for initial verification) or within SAVE's estimated "Additional Verification Response Time," as reported on the SAVE website, (for additional or manual verification), when provided the following data points:

        i.    First name and last name; and

        ii.    Date of birth; and

        iii.    At least one of the following:

            1.    A government-issued immigration enumerator (e.g., A-Number/USCIS Number, SEVIS ID, I-94 Number, Naturalization/Citizenship Certificate Number, Card Number / I-797 Receipt Number, or Visa Number); or

            2.    Other government-issued enumerator permitted by SAVE (e.g., a full SSN, or the last-four-digits of an SSN).

ECF 30-1, at 4–5.

3

Relying on Defendants' guarantees in the settlement agreement, Plaintiffs moved to dismiss with prejudice under Federal Rule of Civil Procedure 41(a)(2). The Court granted that motion. ECF 31. In so doing, the Court expressly "retain[ed] jurisdiction over this case for a period of twenty years from the date of th[e] order [December 1, 2025] for the purpose of enforcement of the parties' settlement agreement, which is approved by and incorporated by reference into this order." ECF 31, at 1–2. The Court also ordered that "[a]ny party may, upon notice, seek to enforce the settlement agreement . . . by motion . . . brought in this Court, under the terms set forth in the parties' Settlement Agreement. *Id.* at 2.

From December 2025 to June 2026, Plaintiffs and Defendants performed their duties and obligations under the settlement agreement. As relevant here, Defendants ensured that the SAVE system had a bulk upload function and was searchable via Social Security Numbers and last-four-digits Social Security Numbers. *See* Ex. 1 ¶ 5, Declaration of Maria Matthews.

## C.    A district court issues an order vacating the modified SAVE system.

In late 2025, DHS and the Social Security Administration published System of Records Notices (SORNs) for the modifications made to their systems that allowed for the changed functionality of the SAVE system. Notice of a Modified System of Records, 90 Fed. Reg. at 48,948; Notice of a Modified System of Records, 90 Fed. Reg. 50,879.

A group of plaintiffs challenged the modifications made to the SAVE system outlined in those SORNs in the U.S. District Court for the District of Columbia. The

4

federal government defended the modifications to the SAVE program in its briefing, noting those changes were "as required by the judicially enforceable settlement agreement in *Florida.*" *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss, ECF 77-1 at 63, *League of Women Voters v. U.S. Dep't of Homeland Sec'y*, No. 25-cv-3501.  Given the prior-in-time binding order, DHS in that case argued that "principles of equity and comity also require the Court not to enter relief that would subject the United States to conflicting court orders."  *Id.* at 62.

U.S. District Judge Sparkle L. Sooknanan ignored those concerns.  On June 22, 2026, Judge Sooknanan granted plaintiffs' motion for summary judgment and held that the modified SAVE system violated the Social Security Act and the Privacy Act of 1974 and that its establishment was arbitrary and capricious under the Administrative Procedure Act. *League of Women Voters*, 2026 WL 1784297, at *20, *21, *28 (D.D.C. June 22, 2026).  As a result, Judge Sooknanan issued an order "set[ting] asid[e] and vacat[ing] the SAVE 'modified system" and the related SORNs.  *Id.* at *35.

**D.    Defendants disable functions of the SAVE system that are guaranteed by the settlement agreement.**

Remember, DHS admitted in its *League* papers that it was bound by this Court's order mandating compliance with the terms of its settlement agreement with the States in this case.  *See supra,* at 5.  But sometime around June 24, 2026, Defendants disabled the bulk upload function in SAVE.  Matthews Decl. ¶ 5. Defendants also disabled the ability for States to search the database with Social Security Numbers or last-four-digit Social Security Numbers.  Matthews Decl. ¶ 5.

**E.    The parties meet and confer.**

On June 25, 2026, the parties met and conferred regarding Defendants' breach. Defendants did not dispute that the bulk uploading and Social Security Number search functions were disabled, nor did they agree to Plaintiffs' request to preserve the status quo ante for the remainder of the dispute. Instead, they simply conveyed the government's position that Judge Sooknanan's order binds DHS notwithstanding this Court's order incorporating and enforcing the settlement agreement at issue here.

Plaintiffs therefore filed this motion to enforce the settlement agreement.

## ARGUMENT

1.    Defendants admit that they are out of compliance with the settlement agreement in several respects.

2.    *First*, Defendants have disabled the bulk upload function in SAVE. Matthews Decl. ¶ 5. This violates Defendants' duty and obligation to ensure that the SAVE system has "[t]he capacity to process bulk upload verification requests so that users of the system will not need to input verification requests one-by-one." ECF 30-1, ¶ 10(d).

3.    *Second*, Defendants have disabled the ability to search with Social Security Numbers. Matthews Decl. ¶ 5.  This breaches Defendants' duties and obligations to ensure that the SAVE system has: (1) "[i]ntegration with the Social Security Administration to allow searches with full Social Security Numbers (SSNs) to be used as a non-DHS enumerator"; (2) "[i]ntegration with the Social Security Administration to allow searches with last-four-digits SSNs to be used as a non-DHS

6

enumerator"; and (3) "[t]he capacity to obtain U.S. citizenship or immigration-status information, either within 48 hours (for initial verification) or within SAVE's estimated 'Additional Verification Response Time,' as reported on the SAVE website, (for additional or manual verification), when provided the following data points: i. First name and last name; and ii. Date of birth; and iii. At least one of the following: . . . Other government-issued enumerator permitted by SAVE (e.g., a full SSN, or the last-four-digits of an SSN)." ECF 30-1, ¶¶ 10(b), 10(c), 10(f).

4.      Under the settlement agreement, Defendants must "ensure that all of the capabilities described" above "remain operational" absent *only* (1) "a modification or amendment to this Settlement Agreement"; or (2) "unforeseen technical limitations that arise after" the agreement's execution.   ECF 30-1, ¶ 11.   The settlement agreement has been neither modified nor amended, and Defendants do not contend that any technical limitations have arisen.   Nor have Defendants suggested that compliance with the settlement agreement would be "inconsistent with the Constitution or with any federal statute in effect at the time of performance."   ECF 30-1, ¶ 17.

5.      The Court has jurisdiction to enforce the settlement agreement.   The Court retained jurisdiction over this case for a period of twenty years, a period that expires in 2045, for the express "purpose of enforcement of the parties' settlement agreement."   ECF 31, at 1; *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381–82 (1994) (a federal "court is authorized to embody [a] settlement contract in its dismissal order" and later "enforc[e]" that "settlement agreement.");

7

ECF 30-1, ¶ 23(k) (Plaintiffs and Defendants "agree[d] that they will be subject to the jurisdiction of the Court in the event of a violation" of the settlement agreement). The Court further expressly contemplated the filing of a "motion" by "[a]ny party" to "enforce the settlement agreement" under the terms set forth therein. *Id.* at 2.

7.      Under the settlement agreement, Plaintiffs may move to enforce the agreement immediately.  The settlement agreement provides that "Plaintiffs may elect to file . . . a motion . . . to enforce this settlement agreement." ECF 30-1, ¶ 23(a). "[I]f Plaintiffs believe irreparable injury may occur absent immediate action (in "Emergency Circumstances") and if Defendants decline to preserve the status quo ante (*i.e.*, the status quo before the act(s) alleged to constitute a breach) upon notice, Plaintiffs may immediately initiate proceedings before the Court to preserve the status quo, provided the Parties meet and confer before initiating any such proceedings.  *Id.* ¶ 23(b). "Defendants' consent is not required for Plaintiffs to initiate court proceedings, provided that the Parties have met and conferred as set forth in Paragraph 2[3](b)." *Id.* ¶ 23(f).

8.      All conditions for proceeding immediately to enforce the agreement have been met: (1) irreparable injury not only "may" but will occur absent immediate action; (2) Defendants have "decline[d] to preserve the status quo ante; and (3) the parties met and conferred on June 25, 2026, before filing this motion.

9.      Plaintiffs face irreparable injury. Many Plaintiffs have incorporated SAVE's now-disabled features into state law, meaning state officials can no longer abide by state statutory requirements.  *See, e.g.*, Fla. Stat. § 98.093(1); Iowa Code

Senate File 2218 (2026) (amending Iowa Code §§ 256.146 (hiring for educators), 91F.1 (hiring for law enforcement), 2.11 (hiring for the Legislature), 7E.3 (hiring for State agencies), 10A.101 (mandating SAVE usage for professional licenses), 10A.113 (same process), 10A.114 (same process), 262.9E (same for Iowa Regents institutions), 272C.15A (mandating licensing boards established after January 1, 1978, terminate professional licenses for anyone that cannot be verified as lawfully present in the United States "as determined by using the SAVE program clearinghouse"); Ohio R.C. 3503.152; Ohio R.C. 3503.18; *see also* Ex. 2, Declaration of Brian Katz.  Florida faces further imminent harm because it is required by law to mail vote-by-mail ballots no later than July 4, 2026.  Matthews Decl. ¶ 6.  Without the agreed-upon SAVE features, Florida "cannot identify potential noncitizens as accurately, efficiently, and timely to perform the daily duty of eligibility list maintenance that Florida law requires even through an election cycle and to ensure that only eligible registered voters who are U.S. citizens are casting votes in our elections."  Matthews Decl. ¶ 5.

10.     Defendants have declined to preserve the status quo ante.  As discussed above, Defendants admit that they have shut off access to the bulk upload verification requests and terminating integration with the Social Security Administration that allows searches with full and last-four-digits Social Security Numbers.

11.     The parties met and conferred before Plaintiffs filed this motion, and Defendants confirmed that they will not preserve the status quo ante.

12.     Because Defendants have failed to preserve the status quo ante, and because Plaintiffs will suffer irreparable injury absent immediate action, the Court

should exercise the jurisdiction it retained and enforce the settlement agreement per its order.  ECF 31.

13.    While the D.C. District Court found that Defendants' duties and obligations were inconsistent with federal statutes, that district court's determination is not binding on this Court.  *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)).  So even if Defendants contend that the settlement agreement "impose[s] on [them] [a] duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, or with any federal statute in effect at the time of such performance," they must overcome their explicit consent to the agreement.  ECF 30-1, ¶ 17.  The D.C. District Court did not address the plaintiffs' constitutional claims.  *League of Women Voters*, 2026 WL 1784297, at *35.  As a result, because this Court has not held that Defendants' duties and obligations are inconsistent with the Constitution or any federal statute, Defendants are bound to comply with the settlement agreement.[1]

14.    The need for this order is even more pressing given Judge Sooknanan's blatant disregard for this Court's order.  Again, in *League of Women Voters*,

---

[1] To the extent Defendants argue that Plaintiffs' only remedy is to seek relief in the D.C. District Court, that is incorrect. This Court ordered that a motion or new action to enforce the settlement agreement must be "brought in this Court." ECF 31, at 2.

Defendants argued that those principles should preclude the court from granting relief—in part because of the settlement agreement in this very case—and the district court rejected that argument, concluding that "Defendants' comity arguments are unavailing." *League of Women Voters*, 2026 WL 1784297, at *35. Judge Sooknanan owed this Court's earlier judgment more than that. This Court has "ample . . . discretion" in assessing the interests of equity and comity, *Stone & Webster, Inc. v. Ga. Power Co.*, 779 F.3d 614, 617 (D.C. Cir. 2015) (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952)), and "[i]t seems particularly inappropriate that [this Court] should defer to another court when the other court has explicitly noted that deference is not necessary." *Emrick v. Bethlehem Steel Corp.*, 624 F.2d 450, 454 (3d Cir. 1980).[2]

*    *    *

16.    Defendants clearly breached their obligations, and nothing more is needed for this Court to step in and enforce the binding settlement agreement that was entered months before the D.C. District Court's decision. But it's worth stepping back and noting the implications of Defendants' position. If later third-party actors can get an adverse Court order that undermines the substance of a binding and judicially enforceable settlement agreement, how are States—or any other plaintiff— expected to rely on past or future settlement negotiations with the federal

---

[2] Plaintiffs, moreover, were not parties to the D.C. proceedings and are thus not bound by the D.C. District Court's judgment. *See Martin v. Wilks*, 490 U.S. 755, 761–62 (1989) (explaining that "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings").

government?  Why should States release *any* claim when it is possible that their bargained-for benefits can be blithely cashiered by another court at any time?  "It is as much the duty of the government as of individuals to fulfil its obligations." *United States v. Klein*, 80 U.S. 128, 144 (1871).  Plaintiffs ask for nothing more here.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order requiring Defendants to immediately remedy their breach of the settlement agreement and restore (1) the bulk upload function in SAVE and (2) the ability to search with Social Security Numbers, including last-four-digits Social Security Numbers.

Respectfully submitted,

JAMES UTHMEIER
  *Attorney General*

DAVID M.S. DEWHIRST (FBN 1076928)
  *Solicitor General*

*/s/ Jason J. Muehlhoff*
JASON J. MUEHLHOFF (FBN 1076410)
  *Chief Deputy Solicitor General*

Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
(850) 414-3300
jason.muehlhoff@myfloridalegal.com

*Counsel for Plaintiffs State of Florida and the Florida Department of State*

12

BRENNA BIRD
Attorney General of Iowa

*/s/ Patrick Valencia*
ERIC H. WESSAN
*Solicitor General*
PATRICK C. VALENCIA
Deputy Solicitor General
ANGELA STUEDEMANN
Assistant Attorney General

1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
Eric.wessan@ag.iowa.gov
Patrick.valencia@ag.iowa.gov
Angela.stuedemann@ag.iowa.gov

*Counsel for Plaintiffs Brenna Bird and Paul Pate*

MICHAEL BUSCHBACHER
NICHOLAS CORDOVA
Boyden Gray PLLC
800 Connecticut Avenue NW, Suite 900
Washington, D.C. 20006
(202) 955-0620
mbuschbacher@boydengray.com
ncordova@boydengray.com

*Counsel for State of Ohio and Ohio Secretary of State Frank LaRose*

*/s/ Blake E. Lanning*
Blake E. Lanning
Assistant Chief Deputy
Attorney No. 35282-24

Office of the Indiana Attorney General
302 W. Washington St., IGCS – 5th Floor
Indianapolis, IN 46204-2770
Telephone: (317) 232-1146
Fax: (317) 232-7979
Email: Blake.Lanning@atg.in.gov

13

## CERTIFICATE OF SERVICE

I certify that on June 30, 2026, a true and correct copy of the foregoing was

filed with the Court's CM/ECF system, which provides service to all parties.


*/s/ Jason J. Muehlhoff*
CHIEF DEPUTY SOLICITOR GENERAL

14

Doc. 37-1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**State of Florida** and the **Florida Department of State**, et al.,

    Plaintiffs,

    v.

**Department of Homeland Security** and **Alejandro Mayorkas**

    Defendants.

Case No. 3:24-cv-509-TKW-HTC

**[Proposed] Brief of *Amici Curiae* League of Women Voters and Electronic Privacy Information Center**

# TABLE OF CONTENTS

Interests of *Amici Curiae* ...................................................................................1

Background ..........................................................................................................2

Argument..............................................................................................................6

I.      DHS has not breached the settlement agreement by complying with the order in LWV ...........................................................................................8

II.     The settlement agreement cannot justify the relief Plaintiffs seek................11

Conclusion .........................................................................................................15

i

## INTERESTS OF *AMICI CURIAE*

Proposed *Amici Curiae* League of Women Voters and Electronic Privacy Information Center are plaintiffs in the case *League of Women Voters v. DHS*, 25-cv-3501 (D.D.C.), challenging the U.S. Department of Homeland Security's (DHS's) and Social Security Administration's (SSA's) overhaul of the Systematic Alien Verification for Entitlements (SAVE) system. *See League of Women Voters v. DHS*, -- F. Supp. 3d --, 2026 WL 1784297, at *1 (D.D.C. June 22, 2026). Proposed *amici* argued in that case that the government's overhaul of the SAVE system violated the privacy rights of millions of American citizens whose personal data was unlawfully repurposed, misused, and disclosed without their consent, and imperiled many Americans' fundamental right to vote. *See* First Amended Complaint, *LWV*, No. 25-cv-3501, ECF 61 at 2 (D.D.C. Jan. 21, 2026).

Following the government's production of a voluminous administrative record and extensive briefing by the parties, the court in that case recently granted summary judgment in favor of proposed *amici*, *LWV*, 2026 WL 1784297, at *2, finding that the SAVE overhaul violated the Social Security Act, Privacy Act, and Administrative Procedure Act, *id.* at *20-30, and in doing so had inflicted privacy or reputational injuries, voter injuries, and procedural injuries upon proposed *amici. Id.* at *11. To remedy the harms from this unlawful conduct, the court vacated the

1

challenged changes to the SAVE system. *See id.* at \*35 (setting aside and vacating applicable System of Record Notices).

Proposed *amici* have an interest in ensuring that the remedy issued by the court in *LWV* remains in place to ameliorate the widespread harms the *LWV* court identified. Because the Plaintiffs in this case have requested that this Court order DHS to ignore the *LWV* court's decision, ECF 32, proposed *amici* respectfully submit this brief to argue that the *LWV* court's order does not conflict with the plain terms of the settlement agreement this Court previously approved, and to argue that, especially given the divergent scopes of the two cases, the Plaintiffs' motion is not a proper vehicle to obtain relief from the *LWV* court's order.

## BACKGROUND

Plaintiffs the State of Florida and Florida Department of State filed this case against DHS and the DHS Secretary on October 16, 2024, arguing that Defendants were failing to respond to inquiries regarding voter verification in a timely manner, and that they should be required to respond using "any and all reasonably available information in Defendants' custody." *See* ECF 1 at ¶¶ 46, 52, 61.[1] Defendants never

---

[1] Notably, while Plaintiffs' motion to enforce the settlement agreement in this case asks that this Court direct DHS to restore the "bulk upload function in SAVE" and "the ability to search [SAVE] with Social Security Numbers," ECF 32 at 12, neither of these functions were specifically mentioned or requested as prayers for relief in Plaintiffs' complaints. *See* ECF 1 at 15-16, ECF 29 at 24.

2

answered the complaint, filing unopposed or consent extensions to respond on December 9, 2024, ECF 8, February 5, 2025, ECF 15, May 15, 2025, ECF 19, July 15, 2025, ECF 23, and September 11, 2025, ECF 25.

In May 2025, DHS and SSA entered into an "agreement to overhaul the SAVE system," purporting to authorize SSA to share its records with DHS for use in the SAVE system for the first time since the system was launched in 1986, and to enable bulk searches of SAVE using Social Security numbers (SSNs). *LWV*, 2026 WL 1784297, at *6. DHS launched an overhauled version of SAVE that same month. *Id.*

In September 2025, a group of plaintiffs including proposed *amici* filed their initial complaint,[2] challenging the SAVE overhaul as unlawful. *Id.* at *6; see also* Complaint, *LWV*, No. 25-cv-3501, ECF 1 (D.D.C. Sep. 30, 2025), https://perma.cc/S7DB-MHBJ (challenging the SAVE overhaul as substantively and procedurally unlawful under the Administrative Procedure Act, Privacy Act, Social Security Act, and U.S. Constitution, and as *ultra vires*). After the *LWV* plaintiffs

---

[2] The plaintiffs in the *LWV* case filed an amended and supplemental complaint on January 21, 2026. *LWV*, 25-cv-3501, ECF 61 (Jan. 21, 2026), https://perma.cc/L5NR-6YK6. The amended and supplemental complaint asserted similar claims against the SAVE overhaul, but omitted some claims about broader DHS data sharing practices not relevant to this case, and involved a slightly different group of plaintiffs. *See id.* The amended complaint added the League of Women Voters of Texas as an additional plaintiff that was not a party to the suit as originally filed; it also omitted class action claims and class representatives that had previously been party to the suit as originally filed. *See id.* The proposed *amici* are a subset of the plaintiffs in both the original and amended complaint.

sought preliminary relief, the court issued an opinion on November 17, 2025, stating it was "troubled by the recent changes to SAVE" and that it "doubt[ed] the lawfulness of the Government's actions," but declined to issue preliminary relief because in the court's view proposed *amici* had "not demonstrated irreparable injury" on the record before it. Preliminary Injunction Op., *LWV*, ECF 55, at 1 (Nov. 17, 2025). The court later granted the State of Texas's motion to intervene as a defendant in the case under Federal Rule of Civil Procedure 24(a), based on its interest in using the modified "SAVE system for citizenship verification." Order, *LWV*, ECF 86, at 1 (Apr. 6, 2026). The state Plaintiffs in this case never moved to intervene in *LWV*.

On November 28, 2025, Plaintiffs in this case filed an amended complaint adding Iowa, Indiana, and Ohio as Plaintiffs, ECF 29, and, later the same day, a motion to dismiss based on a settlement agreement between the parties. ECF 30. Despite being on notice DHS's SAVE changes were being challenged as unlawful, and, indeed, that another federal district court judge signaled were likely unlawful, Defendants sought to enter into a settlement agreement in this case purporting to bind them to operate the overhauled SAVE system. *See* ECF 30-1, ¶ 10 (describing overhauled SAVE capabilities).[3] To the best of proposed *amici*'s knowledge based

---

[3] The proposed settlement agreement was the first time that the bulk upload function and Social Security Number integration were specifically placed at issue in this case.

on the public docket in this case, neither Plaintiffs nor Defendants alerted this court to the pending litigation in *LWV*, or to the *LWV* court's November 17 decision calling the SAVE overhaul's legality into question, prior to this Court's December 1, 2025 order dismissing the case and approving the settlement agreement. ECF 31. Notably, the settlement agreement states, "Nothing contained in this Settlement Agreement shall impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, *or with any federal statute* in effect at the time of such performance." ECF 30-1, ¶ 17 (emphasis added).

On December 1, 2025, this Court entered a two-page order granting Plaintiffs' unopposed motion to dismiss, dismissing the case with prejudice, and retaining "jurisdiction over this case for a period of twenty years from the date of [this] order for the purpose of enforcement of the parties' settlement agreement," which the Court "approved" and "incorporated by reference" in its order. ECF 31. Prior to entry of this order, there was no adversarial litigation in this Court, DHS did not produce any administrative record, and the parties did not engage any dispositive motion briefing addressing the lawfulness of the overhauled SAVE system. Nor did the Court's December 1, 2025 order purport to resolve that unbriefed and unpresented legal issue. *See* ECF 31.

5

On June 22, 2026, after DHS and SSA produced voluminous administrative records and the parties engaged in extensive dispositive motion briefing, the court in *LWV* granted summary judgment to proposed *amici* on their statutory and APA claims, finding that "there can be no question that the modified SAVE system violates" the Social Security Act, *LWV*, 2026 WL 1784297, at *20, that DHS and SSA "clearly violated the Privacy Act's non-disclosure bar by disclosing SSA records to DHS and SAVE users (including states) without the consent of the Plaintiffs' members," *id.* at *26, that their belated publication of applicable System of Record Notices and preordained response to public comments violated the APA's procedural requirements, *see id.* at *28, and that the changes to the SAVE system were arbitrary and capricious, *see id.* at *28-29. On all those bases, the *LWV* court vacated the changes to the SAVE system. *See id.* at *35. The court further denied the federal defendants' and Texas's motions to dismiss. *See id.*

On June 30, 2026, Plaintiffs filed the motion at issue here, asking this Court to order DHS (but not SSA, which is not a party to this case) to restore the overhauled SAVE system despite the June 22 order in *LWV*. ECF 32.

## ARGUMENT

This Court should deny Plaintiffs' motion to enforce the settlement agreement, for a number of reasons. First, the settlement agreement was explicit that it did not obligate the government to undertake actions that violate federal law, ECF 30-1 ¶

6

17, and a decision from another court clarifying Defendants' legal obligations does not result in Defendants breaching their settlement obligations in this case. Second, the order in the *LWV* case involves parties and legal issues that were never at issue in the settlement agreement in this case, and the Plaintiffs here cannot claim that that settlement agreement imposes obligations on entities not a party to it, or resolves legal issues that were never raised or litigated in this Court.

Ultimately, while Plaintiffs in this case may disagree with the opinion in *LWV*, this Court should decline to entertain their emergency collateral attack on that decision. Notably, Plaintiffs in this case have never sought to intervene in the *LWV* case to defend their view of the law. *Compare* ECF 32 with *LWV*, 25-cv-3501, ECF 43 (Oct. 27, 2025), https://perma.cc/U87Y-UDEZ (emergency motion to intervene by state of Texas); ECF 86 (Apr. 6, 2026) (granting Texas leave to intervene); ECF 97 (Apr. 23, 2026), https://perma.cc/84NX-MG5D (Texas's motion to dismiss *LWV* plaintiffs' claims). Fortunately for Plaintiffs, the government apparently is seeking to vindicate its ability to operate the SAVE system as Plaintiffs contemplate, having noticed an appeal of the *LWV* decision to the D.C. Circuit even before Plaintiffs' motion here. *See LWV*, ECF 113 (June 25, 2026), https://perma.cc/AHV8-DGJH. And the government has also informed counsel for *amici* that they plan to seek a stay of the *LWV* decision from the district court. Ex. 1, Att. A. Those pending proceedings in the District of Columbia District Court and D.C. Circuit, with due consideration

7

to the lengthy opinion, extensive merits briefing, and voluminous administrative record, are the proper vehicle for challenging the *LWV* court's conclusions.[4]

I.    **DHS has not breached the settlement agreement by complying with the order in LWV**

Plaintiffs claim that Defendants have "breached" the settlement agreement in "several material respects by disabling several critical functionalities of the SAVE system." ECF 32, at 1. But "[a] consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law," including due to intervening "decisional law." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 388 (1992). That is because the "United States" cannot be "bound" by an "agreement to do or cause to be done what the law does not sanction or permit." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 420 (1990) (quoting *Utah Power & Light Co. v. United States*, 243 U.S. 389, 408-409 (1917)); *see also Keith v. Volpe*, 118 F.3d 1386, 1393 (9th Cir. 1997) (parties to a consent decree "c[annot] agree to terms which would exceed their authority") (collecting cases).

No court would (or could) approve a settlement agreement that *required* a party to behave in a manner which was already unlawful at the time the parties

---

[4] Alternatively, this Court could release the parties from the settlement agreement and allow Plaintiffs to resume pursuing their underlying claims.

entered it.[5] And the settlement agreement is itself explicit on its face that it does not require DHS to take actions "inconsistent with . . . any federal statute." ECF 30-1, ¶ 17.

Indeed, as Defendants' counsel *in this case* has insisted in a third case about SAVE, "the United States cannot contract around legal obligations imposed by federal statutes or the Constitution"; nor can it use a settlement to agree to engage in illegal conduct. Defs.' Reply in Supp. of MTD, *Texas v. Noem*, No. 4:24-cv-49-DC-DF, ECF 16 at 3 (W.D. Tex. Feb. 12, 2026), https://perma.cc/VR4C-593B. As the Department of Justice has previously stated when analogous conflicts between settlements and judicial orders have arisen, where a settlement agreement explicitly limits the government's obligation to perform "to the extent authorized by law," the government is "not responsible for" ostensibly breaching the settlement agreement if "third parties su[e]" the agencies and successfully argue that terms in the settlement agreement violate other laws. Defs.' Opp. to Pls.' Mot. For Prelim. Injunction, *Defense Distributed v. Dep't of State*, 1:18-cv-637, ECF 155 at 18 (W.D. Tex. May 12, 2021); *see also Washington v. Dep't of State*, 420 F. Supp. 3d 1130 (W.D. Wash. 2019) (vacating agency action contemplated by settlement in W.D. Tex. action).

---

[5] Nor, or course, could a party be expected to comply with a settlement agreement after legal changes that rendered previously lawful conduct contemplated by the settlement unlawful.

Here, the particular steps that DHS and SSA took to overhaul SAVE violated a number of federal statutes, *LWV*, 2026 WL 1784297, at *20-30, and the settlement agreement with DHS in this case, by its own terms, cannot bind DHS to violate those laws. That conclusion is reinforced by the fact that the *LWV* decision found the SAVE overhaul to be unlawful on the basis of a variety of legal deficiencies never presented to or litigated in this Court. This Court should not construe the settlement agreement to impose unlawful obligations on DHS.

Reaching a contrary result would incentivize collusion in which aligned federal and state entities could lock in agreements to perform unlawful conduct while evading meaningful judicial review of that conduct. For example, in 2024, the state of Texas sued the Department of Labor, challenging (ultimately successfully) a rule which substantially increased the number of people entitled to overtime compensation. *See Texas v. Dep't of Labor*, 756 F. Supp. 3d 361 (E.D. Tex. 2024). If, hypothetically, the state of California had read the writing on the wall and anticipated the result, California could have sued DOL for non-enforcement of its overtime policy and, with the cooperation of the federal government, raced Texas to a settlement requiring the federal government to enforce the standards challenged by Texas. Under the view espoused by Plaintiffs, such a settlement would displace any decision by the court considering Texas's challenge, despite the fact that the settlement would not reflect any court judgment concerning the legality of the

10

challenged regulation. Such gamesmanship is improper and should not be incentivized by this Court. *Cf. LWV*, 2026 WL 1784297, at \*34 (noting it is "[not] apparent that the Federal Defendants having entered a consent decree purportedly barring the very relief sought in this litigation while it was ongoing is consistent with the equitable considerations of clean hands, 'good faith,' and the prevention of 'forum shopping'") (quoting *EEOC v. Univ. of Pa.*, 850 F.2d 969, 972, 979 (3d Cir. 1988), *aff'd* 493 U.S. 182 (1990)).[6]

## II.    The settlement agreement cannot justify the relief Plaintiffs seek

Even if this Court believed that it could order DHS to take actions that the *LWV* court already found violated multiple laws, the relief Plaintiffs seek is improper.

Plaintiffs ask this Court to order "Defendants to immediately . . . restore . . . the ability to search [SAVE] with Social Security Numbers, including last-four-digits

---

[6] Nor is it clear what limiting principle would attach to Plaintiffs' approach, under which federal and state entities could freely evade the U.S. Constitution and federal law by consent decree. The hypothetical above involves competing orders from federal courts; however, if a settlement agreement could trump a party's legal obligations, it is also not difficult to imagine a situation in which the legislative power is implicated as well, if a party were to enter a rapid settlement with the federal government in advance of anticipated federal legislation, purporting to bind the government to a course of action that would be rendered unlawful by statute. Such a result would run headlong into the rule that "when Congress changes the law underlying a judgment awarding prospective relief, that relief is no longer enforceable to the extent it is inconsistent with the new law." *Miller v. French*, 530 U.S. 327, 347 (2000).

Social Security Numbers." ECF 32, at 12. But this capability was enabled by data-sharing from the *Social Security Administration*, which is not a party to this case, *see*, *e.g*, *LWV*, 2026 WL 1784297, at *6 (describing a data sharing agreement between SSA and DHS and a modification to an SSA system of records to enable the SAVE system to accept queries based on Social Security Numbers). The *LWV* court set aside those changes made by SSA as unlawful, s*ee id.* at *35, and SSA is no longer permitted to share the Social Security records that the Plaintiffs are demanding access to. Counsel for SSA has confirmed to counsel for proposed *amici* that after the *LWV* court's decision, "from the SSA side, the connection used for the data-sharing from SSA systems to SAVE has been suspended, and that the vacated [System of Record Notice]'s Federal Register notice has been removed from SSA's webpage for SORNs." Declaration of Aman George, attached as Exhibit 1, at Attachment A.

Indeed, to share such records, DHS and SSA must comply with the Privacy Act, *see* 5 U.S.C. § 552a, including its requirements regarding System of Records Notices ("SORNs"), *see id.* § 552a(e)(4). And in *LWV*, the court explicitly "set[] aside and vacate[d] the 2025 DHS and SSA SORNs as unlawful." 2026 WL

1784297, at *35.[7] Thus, the relief Plaintiffs seek here would require this Court to issue an order directing a *non-party*—SSA—to violate the Privacy Act.

But SSA is not a defendant in this case nor a party to the settlement agreement, and the Court "may not enjoin a non-party that has not appeared before it to have its rights legally adjudicated." *U.S. v. Robinson*, 83 F.4th 868, 879 (11th Cir. 2023) (citing *Chase Nat'l Bank v. City of Norwalk*, 291 U.S. 431, 436-37 (1934)). Plaintiffs' motion runs directly contrary to this foundational principle, as this Court may not order non-party SSA to resume the data-sharing that was set aside in *LWV*, which would be necessary for DHS to restore the Social Security Number functionality Plaintiffs demand.

Moreover, the *LWV* court found that the SAVE overhaul was not only substantively unlawful, but procedurally deficient, because the SAVE changes were made without meaningful notice and comment as required by the APA and Privacy Act. *LWV*, 2026 WL 1784297, at *26-28. Agencies are required to address "vital relevant or significant" comments on their proposals. *Hewitt v. Comm'r of Internal Revenue Serv.*, 21 F.4th 1336, 1343 (11th Cir. 2021) (quotation and citation omitted).

---

[7] By vacating DHS's and SAVE's modifications to SAVE and the accompanying SORNs, the court in *LWV* rendered the "challenged agency action[s] 'void.'" *Texas v. United States*, 126 F.4th 392, 418 (5th Cir. 2025); *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021) ("Vacatur [of an agency action] retroactively undoes or expunges a past [agency] action."). That relief is not limited to the plaintiffs in *LWV*, but rather applies to the agency actions themselves.

The purpose of the APA's procedural protections "is to 'give[ ] affected parties fair warning of potential changes in the law and an opportunity to be heard on those changes' while 'afford[ing] the agency a chance to avoid errors and make a more informed decision.'" *Id.* (quoting *Azar v. Allina Health Servs.*, 587 U.S. 566, 582 (2019). These procedural requirements attach to agency action even when such action has been required by law. *Cf., e.g.*, *U.S. Steel Cop. v. U.S. Envt'l Prot. Agency*, 595 F.2d 207, 213 (5th Cir. 1979) ("[T]he mere existence of deadlines for agency action, whether set by statute or court order, does not in itself constitute good cause" for exception from the APA's notice and comment requirements).

Even if this Court believes that the settlement agreement here ultimately required DHS to make some of the changes Plaintiffs seek, it surely did not require that DHS do so in a way that circumvented DHS's procedural obligations under the APA and Privacy Act. The *LWV* court ordered the Defendants to "'comply with the procedural requirements for new agency action,'" and making further revisions to SAVE "only *after* engaging in notice and comment." 2026 WL 1784297, at *29 (quoting *Dep't of Homeland Security v. Regents of the Univ. of California*, 591 U.S. 1, 21 (2020)). Nothing in the settlement agreement purported to relieve Defendants of these obligations, which would be violated if this Court granted Plaintiffs' request that "Defendants … immediately" restore the SAVE functionality that was procedurally deficient in its creation. ECF 32, at 12.

14

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion to enforce the settlement agreement.

Dated: July 1, 2026

/s/ Gerald E. Greenberg
GERALD E. GREENBERG
Florida Bar No. 440094
ggreenberg@gsgpa.com
DANIEL R. WALSH
Florida Bar No. 0124282
dwalsh@gsgpa.com
GELBER SCHACHTER &
GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone: (305) 728-0950
E-service: efilings@gsgpa.com

Lauren C. Bingham
Florida Bar No. 105745
LBingham@citizensforethics.org
CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON
P.O. Box 14596
Washington, D.C. 20044
(202) 408-5565

Respectfully submitted,

Aman T. George*
D.C. Bar No. 1028445
ageorge@democracyforward.org
DEMOCRACY FORWARD FOUNDATION
P.O. BOX 34553
WASHINGTON, D.C. 20043
(202) 448-9090

Counsel for Proposed Amici

*pro hac vice application forthcoming

15

**Exhibit 1**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

---

**State of Florida** and the **Florida Department of State**, et al.,

  Plaintiffs,

  v.

**Department of Homeland Security** and **Alejandro Mayorkas**

  *Defendants*.

Case No. 3:24-cv-509-TKW-HTC

---

**Declaration of Aman T. George**

I, Aman T. George, declare as follows:

1.    I am an attorney at the Democracy Forward Foundation. I am an attorney of record for proposed *amici* League of Women Voters and Electronic Privacy Information Center in the case *League of Women Voters v. U.S. Department of Homeland Security,* 25-cv-3501 (D.D.C.).

2.    I am also a counsel for LWV and EPIC in their motion for leave to file a brief as *amici curiae* in the above-captioned case. I submit this declaration in support of that motion.

3.      Attached as Attachment A to this declaration is a true and correct copy of recent email correspondence between the counsel for both parties in the *LWV v. DHS* case.

4.      I am over eighteen years of age, of sound mind, and competent to make this declaration. I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 1, 2026

_____

Aman Tewari George

**Attachment A**

DEMOCRACY
FORWARD➚

**Aman George <ageorge@democracyforward.org>**

---

## LWV v. DHS, 25-cv-3501-SLS (DDC)

---

**Azrak, Cesar E (CIV)** <Cesar.E.Azrak@usdoj.gov>                                Wed, Jul 1, 2026 at 9:50 AM
To: Nikhel Sus <nsus@citizensforethics.org>, "Pezzi, Stephen (CIV)" <Stephen.Pezzi@usdoj.gov>
Cc: John Hill <jhill@citizensforethics.org>, Aman George <ageorge@democracyforward.org>, Lauren Bingham
<lbingham@citizensforethics.org>, Hanna Hickman <hhickman@democracyforward.org>, Mark Samburg
<msamburg@democracyforward.org>, Jon Sherman <jsherman@fairelectionscenter.org>, Michelle Kanter Cohen
<mkantercohen@fairelectionscenter.org>, Emily Davis <edavis@fairelectionscenter.org>, "rfein@democracyforward.org"
<rfein@democracyforward.org>, Will Wassdorf <will.wassdorf@oag.texas.gov>

Nik and team,

Thanks for your patience.  I have been informed that, from the SSA side, the connection used for the data-sharing from
SSA systems to SAVE has been suspended, and that the vacated SORN's Federal Register notice has been removed
from SSA's webpage for SORNs.  And from the DHS side, I have been informed that the ability to search by U.S. passport
number or driver's license number was never implemented in SAVE in the first place; that the ability to search by full or
partial SSN (including in bulk) has been disabled; and that users cannot initiate a SAVE search for a natural-born citizen
now that the ability to search by SSN has been disabled.

Further—and with apologies for the short notice—I want to flag for you, pursuant to Local Civil Rule 7(m), that later today,
we intend to seek a stay of the Court's vacatur order pending the resolution of Defendants' ongoing appeal of that order.
Will you oppose our motion?  If you would kindly let me know as soon as you can, we'll report your position in our papers.

Thanks,

Cesar

—

**Cesar E. Azrak**

Trial Attorney

United States Department of Justice

Civil Division, Federal Programs Branch

cesar.e.azrak@usdoj.gov

Office: (202) 305-0693

Cell: (202) 538-3491

---

**From:** Azrak, Cesar E (CIV)
**Sent:** Monday, June 29, 2026 5:35 PM
**To:** 'Nikhel Sus' <nsus@citizensforethics.org>; Pezzi, Stephen (CIV) <Stephen.Pezzi@usdoj.gov>
**Cc:** John Hill <jhill@citizensforethics.org>; Aman George <ageorge@democracyforward.org>; Lauren
Bingham <lbingham@citizensforethics.org>; Hanna Hickman <hhickman@democracyforward.org>; Mark
Samburg <msamburg@democracyforward.org>; Jon Sherman <jsherman@fairelectionscenter.org>;

Michelle Kanter Cohen <mkantercohen@fairelectionscenter.org>; Emily Davis <edavis@fairelectionscenter.org>; rfein@democracyforward.org; Will Wassdorf <will.wassdorf@oag.texas.gov>
**Subject:** RE: [EXTERNAL] LWV v. DHS, 25-cv-3501-SLS (DDC)

Hi Nik,

Nice to meet you.  I'm Cesar Azrak, a colleague of Steve's covering this case for the week in his absence.  I'm still getting up to speed on the various issues here, and I've reached out to our clients on their compliance efforts, but I'm not in a position to provide answers regarding compliance by today.  I'll endeavor to share responses as soon as I can, and Steve will no doubt be in further touch upon his return.

Best,

Cesar

—

**Cesar E. Azrak**

Trial Attorney

United States Department of Justice

Civil Division, Federal Programs Branch

cesar.e.azrak@usdoj.gov

Office: (202) 305-0693

Cell: (202) 538-3491

---

**From:** Nikhel Sus <nsus@citizensforethics.org>
**Sent:** Friday, June 26, 2026 4:23 PM
**To:** Pezzi, Stephen (CIV) <Stephen.Pezzi@usdoj.gov>
**Cc:** John Hill <jhill@citizensforethics.org>; Aman George <ageorge@democracyforward.org>; Lauren Bingham <lbingham@citizensforethics.org>; Hanna Hickman <hhickman@democracyforward.org>; Mark Samburg <msamburg@democracyforward.org>; Jon Sherman <jsherman@fairelectionscenter.org>; Michelle Kanter Cohen <mkantercohen@fairelectionscenter.org>; Emily Davis <edavis@fairelectionscenter.org>; rfein@democracyforward.org; Will Wassdorf <will.wassdorf@oag.texas.gov>; Azrak, Cesar E (CIV) <Cesar.E.Azrak@usdoj.gov>
**Subject:** Re: [EXTERNAL] LWV v. DHS, 25-cv-3501-SLS (DDC)

Steve,

A few responses to your email below:

1. Thank you for clarifying that "SAVE's bulk-upload functionality, full SSN searches, and last-four SSN searches have all been disabled" in response to the Court's June 22 order. Of course, none of that information was previously available to us or the public, and, as far as we are aware, the federal Defendants have not publicly described any steps they have taken to comply with the Court's order. To the contrary, as noted in my email below, USCIS posted an update on its website on June 23 -- the day after the Court's ruling -- about new "enhancements to the SAVE program," including to SAVE's "bulk case closure capabilities." This was not "outdated language," as you incorrectly state below, but rather *new*

7/1/26, 3:01 PM
Case 3:24-cv-00509-TKW-HTC Document 37-1 Filed 07/01/26 Page 25 of 27
USCA11 Case: 26-12583 Document: 26 Date Filed: 08/07/2026 Page 132 of 181
Democracy Forward Mail - ZW1 v. DHS, 25-cv-3601/2 (DDC)

language posted after the Court's decision that gave us reasonable grounds to inquire about the steps Defendants had taken to comply with the Court's order.

2. Regarding the third bullet in my email below, you stated you "do not understand what (if anything) that has to do with the Court's order, which does not prohibit use of the SAVE system in general." While I think this point should be obvious, I will explain further: as the federal Defendants acknowledge, the Court's June 22 order requires DHS to, among other things, undo "SAVE's bulk-upload functionality, full SSN searches, and last-four SSN searches." Yet the June 24 FEMA Notice of Funding Opportunity (NOFO) document I linked below -- which was issued two days after the Court's order -- imposes the following grant condition: "each state and high-risk urban area election jurisdiction must … [u]tilize the U.S. Citizenship and Immigration Services' Systematic Alien Verification for Entitlements (SAVE) system to verify the citizenship *of all individuals in the state voter registration database within 120 days* of accepting the grant award." It is our understanding that it would be impossible to perform these functions using the un-modified version of SAVE, which, as you know, did not allow SAVE users to run bulk searches of statewide voter registration lists using voters' SSNs. However, we appreciate your subsequent clarification that Defendants have in fact disabled SAVE's bulk upload and search-by-SSN features in response to the Court's June 22 order. In light of that representation, our understanding is that the June 24 NOFO's SAVE-related grant condition would be impossible to fulfill and cannot be enforced consistent with the Court's June 22 order. Please let us know if our understanding is incorrect.

3. My initial email asked Defendants to explain what steps they have taken and will be taking to comply with the Court's June 22 order. You responded that the federal Defendants have disabled "SAVE's bulk-upload functionality, full SSN searches, and last-four SSN searches." But the Court's order required Defendants to take more than just those actions. Specifically, the Court held unlawful, vacated, and set aside three things: (1) DHS's October 2025 modified SORN for SAVE, (2) SSA's November 2025 modified SORN for the SSA Master File, and (3) the SAVE "modified system" described in DHS's October 2025 modified SORN for SAVE. *See* ECF No. 112. Your email did not describe any steps the federal Defendants have taken to effectuate, memorialize, or communicate within the government the vacatur of the two SORNs, nor have we seen any public rescission of those SORNs published in the Federal Register or on the agencies' websites. This omission is significant because both SORNs established new routine uses that purport to broadly authorize inter-agency disclosures between DHS, SSA, and other agencies. *See* ECF No. 113 at 13. If those modified SORNs and routine uses remain in place, Defendants are not in compliance with the Court's June 22 order.

4. Similarly, the June 22 order requires the federal Defendants to undo the SAVE "modified system" described in DHS's October 2025 modified SORN for SAVE. *See* ECF No. 112. Undoing that modified system requires more than merely disabling "SAVE's bulk-upload functionality, full SSN searches, and last-four SSN searches." It also requires Defendants to undo various other changes outlined in DHS's October 2025 SORN, such as permitting SAVE searches using passport numbers and driver's license numbers, including U.S. citizens among the categories of individuals covered by SAVE, and SAVE's integration of social security data, state driver's license data, and U.S. passport data. Again, your email does not describe any efforts to comply with this aspect of the Court's order.

In light of the additional information I provided in points 3 and 4 above, please explain in writing by no later than 5pm ET on Monday, June 29, all steps Defendants have taken to comply with the Court's June 22 order, apart from merely disabling "SAVE's bulk-upload functionality, full SSN searches, and last-four SSN searches."

Thank you.

Nik

On Thu, Jun 25, 2026 at 7:34 PM Pezzi, Stephen (CIV) <Stephen.Pezzi@usdoj.gov> wrote:

> Nik,
>
> Your concerns are unfounded. I have been informed that SAVE's bulk-upload functionality, full SSN searches, and last-four SSN searches have all been disabled. In addition, I have personally heard from attorneys representing multiple States that those States have been unable to use those features this week.
>
> None of your three bullet points "indicate the agency continues to operate the modified SAVE system." As for your first two points, the Court's order does not require that every statement on every government website be immediately updated. I have forwarded your examples of possibly outdated language to USCIS. If it is appropriate to update the

language on the website, I am sure they will do so at some point. As for your third point, I don't understand what (if anything) that has to do with the Court's order, which does not prohibit use of the SAVE system in general.

FYI, I will be out of the office on leave, starting tomorrow, through Monday, July 6. If you have any further questions, please send to me but also make sure to include Cesar Azrak (copied here).

Thanks,

**Stephen M. Pezzi** | Chief Litigation Counsel

United States Department of Justice

Civil Division - Federal Programs Branch

(202) 598-3240 | stephen.pezzi@usdoj.gov

---

**From:** Nikhel Sus <nsus@citizensforethics.org>
**Sent:** Thursday, June 25, 2026 1:53 PM
**To:** Pezzi, Stephen (CIV) <Stephen.Pezzi@usdoj.gov>; Will Wassdorf <will.wassdorf@oag.texas.gov>
**Cc:** John Hill <jhill@citizensforethics.org>; Aman George <ageorge@democracyforward.org>; Lauren Bingham <lbingham@citizensforethics.org>; Hanna Hickman <hhickman@democracyforward.org>; Mark Samburg <msamburg@democracyforward.org>; Jon Sherman <jsherman@fairelectionscenter.org>; Michelle Kanter Cohen <mkantercohen@fairelectionscenter.org>; Emily Davis <edavis@fairelectionscenter.org>; rfein@democracyforward.org
**Subject:** [EXTERNAL] LWV v. DHS, 25-cv-3501-SLS (DDC)

Counsel,

We're writing to ascertain the steps Defendants have taken and will be taking to comply with the Court's June 22 memorandum opinion and order in the above-referenced case. *See* ECF Nos. 111, 112. As you know, the Court held unlawful, vacated, and set aside the SAVE "modified system" and corresponding system of records notices. And the Court explained that "[s]etting aside an agency action means 're-establish[ing] the status quo absent the unlawful agency action.'" ECF No. 111 at 74 (quoting *Las Ams. Immigrant Advoc. Ctr. v. DHS*, 783 F. Supp. 3d 200, 233 (D.D.C. 2025)). It is not clear to Plaintiffs what actions, if any, Defendants have taken to comply with the Court's order. Moreover, DHS has taken several actions *after* the Court's June 22 ruling which indicate the agency continues to operate the modified SAVE system, including the following:

- On June 23, USCIS posted an update on its website titled "SAVE Enhances Case Processing," which described, among other things, updates to SAVE's "bulk case closure capabilities."
- The SAVE user reference guide now indicates that it was "last reviewed/updated: 06/23/2026," yet continues to include sections 8-10 which deal with SSN queries and bulk uploads.
- On June 24, FEMA published the Fiscal Year 2026 Homeland Security Grant Program Notice of Funding Opportunity, which states that "each state and high-risk urban area election jurisdiction must … [u]tilize the U.S. Citizenship and Immigration Services' Systematic Alien Verification for Entitlements (SAVE) system to verify the citizenship of all individuals in the state voter registration database within 120 days of accepting the grant award," and must also "[u]tilize the SAVE system, or another authorized government system, to verify U.S. citizenship for any person working at a polling place in any capacity, or operating any election system in the jurisdiction, including temporary agency workers and vendors who work on or with election systems."

Case 3:24-cv-00509-TKW-HTC    Document 37-1    Filed 07/01/26    Page 27 of 27
USCA11 Case: 26-12533    Document: 26    Date Filed: 08/27/2026    Page: 134 of 181

Can the Federal Defendants and Texas please provide an explanation by 3pm ET tomorrow (Friday, June 26) of what steps, if any, they have taken and will be taking to comply with the Court's order? We are happy to schedule a call to discuss if needed.

Thanks,

Nik

--

**Nikhel Sus**
Chief Counsel | Citizens for Responsibility and Ethics in Washington (CREW)
Office: (202) 408-5565

nsus@citizensforethics.org | www.citizensforethics.org

--

**Nikhel Sus**
Chief Counsel | Citizens for Responsibility and Ethics in Washington (CREW)
Office: (202) 408-5565

nsus@citizensforethics.org | www.citizensforethics.org

Doc. 42

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

|  |  |
|---|---|
| STATE OF FLORIDA *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY *et al.*, <br><br> Defendants. | No. 3:24-cv-00509-TKW-HTC |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
<u>MOTION TO ENFORCE SETTLEMENT AGREEMENT</u>**

**INTRODUCTION**

Unfortunate events for which neither party is responsible have resulted in the present situation, which may be resolved or otherwise rendered moot in short order. Plaintiffs seek an order requiring Defendants to comply with their obligations under a settlement agreement over which this Court has retained jurisdiction. But as Plaintiffs concede, the sole reason that Defendants cannot fully comply with those obligations is that another federal district court in the District of Columbia has entered an order preventing such performance. Defendants have appealed that order, and they have already moved for a stay of the order pending appeal. Unless Defendants obtain relief from the district court, Defendants will expeditiously request a stay pending appeal from the D.C. Circuit. Plaintiffs' motion could thus be rendered moot very shortly. Defendants thus respectfully request that the Court defer ruling on Plaintiffs' motion until stay proceedings in the District of Columbia have been completed.

Moreover, Defendants are not in violation of the settlement agreement. The agreement expressly provides that it does not impose duties or obligations that are inconsistent with federal statutes, and a binding interpretation of relevant federal statutes by a federal district court satisfies that requirement. A party also does not breach its obligations under a settlement agreement by refusing to violate a court order. In any event, however, the Court should not grant Plaintiffs' motion because settled principles of equity strongly weigh against such relief. Defendants thus respectfully request that the Court defer ruling on Plaintiffs' motion until stay proceedings in the District of Columbia have concluded, or in the alternative, deny Plaintiffs' motion.

**BACKGROUND**

The plaintiff states filed this suit seeking to compel the U.S. Department of Homeland Security ("DHS") to improve and modernize its Systematic Alien Verification for Entitlements ("SAVE") system. In October and November 2025, DHS and the Social Security Administration ("SSA")

published System of Records Notices ("SORNs") to modify their systems to implement the improvements and modernizations sought by Plaintiffs. *See* DHS, Notice of Modified System of Records, 90 Fed. Reg. 48,948 (Oct. 31, 2025); SSA, Notice of Modified System of Records, 90 Fed. Reg. 50,879 (Nov. 12, 2025).

The parties executed a Settlement Agreement in November 2025 resolving this case. *See* Settlement Agreement, ECF No. 30-1. The Court retained jurisdiction to enforce the agreement for twenty years, *see* Order, ECF No. 31. The Settlement Agreement requires Defendants, *inter alia*, to ensure that SAVE has the capability to (1) process bulk upload verification requests by States to verify the citizenship of particular State residents so that SAVE users do not need to input verification requests one-by-one, (2) integrate with the Social Security Administration to allow such verification requests to use last-four-digits Social Security Numbers ("SSNs") and full SSNs as a non-DHS enumerator for the identification of these residents. *See* Settlement Agreement ¶¶ 10.b-d. It is undisputed that as of this month, no plaintiff had alleged that Defendants were in breach of any of their obligations under the Settlement Agreement. *See* Pls.' Mot. at 4 ("From December 2025 to June 2026, Plaintiffs and Defendants performed their duties and obligations under the settlement agreement. As relevant here, Defendants ensured that the SAVE system had a bulk upload function and was searchable via Social Security Numbers and last-four-digit Social Security Numbers.").

Last week, the U.S. District Court for the District of Columbia issued a memorandum opinion that "sets aside and vacates" (1) the October 2025 Department of Homeland Security Notice of a Modified System of Records for the SAVE system of records, Notice of a Modified System of Records, 90 Fed. Reg. 48,948 (October 31, 2025); (2) the November 2025 Social Security Administration Notice of a Modified System of Records for the Master Files of Social Security Number Holders and Social Security Number Applications, Notice of a Modified System of Records, 90 Fed. Reg. 50,879 (November 12, 2025); and (3) the SAVE "modified system" described in the

October 2025 Department of Homeland Security Notice of a Modified System of Records for the SAVE system of records. Notice of a Modified System of Records, 90 Fed. Reg. at 48,948 (October 31, 2025). *See* Mem. Op. at 75, *League of Women Voters v. DHS*, No. 1:25-cv-03501-SLS (June 22, 2026) (attached as Ex. 1). As Plaintiffs' motion notes, "[t]he federal government defended the modifications to the SAVE program in its [merits] briefing, noting those changes were 'as required by the judicially enforceable settlement agreement in *Florida*.'" Pls.' Mot. at 5; *see* Mem. Supp. Defs.' Mot. for Summ. J. at 44-61, ECF No. 77-1 ("Defs.' MSJ"), No. 1:25-cv-003501-SLS (Apr. 2, 2026). Defendants also specifically asked the Court not to issue any form of relief that would interfere with the Settlement Agreement in this case. *See id.* at 63-64.

Despite Defendants' vehement objections, however, the U.S. District Court for the District of Columbia set aside and vacated DHS's improvements and modernizations. Defendants have promptly appealed the district court's decision to the U.S. Court of Appeals for the District of Columbia Circuit, *see* Notice of Appeal, ECF No. 113, No. 1:25-cv-003501-SLS (June 25, 2026). Yesterday, Defendants moved the district court for a stay of its vacatur order pending appeal. *See* Mot. to Stay, ECF No. 116, No. 1:25-cv-003501-SLS (July 1, 2026). The district court promptly entered an expedited briefing schedule that concludes on July 7. *See id.*, Minute Order (July 2, 2026).

Unless Defendants obtain relief from the district court, Defendants will expeditiously request a stay pending appeal from the D.C. Circuit. Thus, although Defendants must comply with the vacatur order while it remains in effect, they are working promptly to stay the effect of the order and fully return the SAVE system to the same modernized functionality it had before this recent adverse decision.

On June 30, Plaintiffs filed an emergency motion to enforce the settlement agreement. Emergency Mot. to Enforce Settlement Agreement, ECF No. 32 ("Pls.' Mot."). The same day, this Court entered an order directing Defendants, by noon Central Time today, "to respond to the

emergency motion and explain why they are not in violation of the settlement agreement and why the Court should not require them to comply with the settlement agreement by immediately restoring (1) the bulk upload function in SAVE and (2) the ability to search with Social Security Numbers in SAVE." Order Requiring Expedited Response, ECF No. 33.

On July 1, the League of Women Voters and Electronic Privacy Information Center filed an amicus brief. *See* Brief of Amici Curiae League of Women Voters and Electronic Privacy Information Center, ECF No. 37-1 ("amicus brief"). On July 2, the Court extended Defendants' time to respond to Plaintiffs' motion until 5:00pm Central Time today and directed Defendants to "address the arguments in the amicus brief." Order, ECF No. 39.

## ARGUMENT

### I.    Considerations of Party and Judicial Economy Strongly Favor Deferring a Ruling on Plaintiffs' Motion Until Stay Proceedings in the D.C. Circuit Have Been Completed.

In light of the ongoing litigation in the District of Columbia to restore the status quo ante, Defendants respectfully request that the Court defer ruling on Plaintiffs' motion to enforce the Settlement Agreement until stay proceedings in *League of Women Voters* are fully resolved. Defendants have acted in good faith under the Settlement Agreement by vigorously defending the legality of DHS's improvements and modifications of SAVE, by expeditiously appealing the district court's decision, and by seeking a stay of that decision.

Defendants expect to prevail on their arguments seeking a stay of the *League of Women Voters* order. First, *League of Women Voters* erred in holding that the modified SAVE system is inconsistent with the Social Security Act's prohibition of disclosures of sensitive information. The relevant portion of that Act provides that "no authorized person shall disclose any such social security account number or related record." 42 U.S.C. § 405(c)(2)(C)(viii)(I). But the SAVE system does not disclose any person's SSN to the SAVE user. Nor does the SAVE system disclose any protected record related to an SSN to a SAVE user, because mere citizenship status does not meaningfully disclose the identity

4

of the person associated with any SAVE query.  Accordingly, nothing about the SAVE system runs afoul of the Social Security Act protections on which the Court relied.  Second, *League of Women Voters* erred in concluding that the disclosure of SSA data to DHS and SAVE users is inconsistent with the Privacy Act's protections against non-consensual disclosures.  Those protections are subject to "routine use" exceptions," 5 U.S.C. § 552a(a)(7); *see also id.* § 552a(b)(3) (permitting disclosure under "routine use" exceptions).  And here, *Congress itself* presumably thought the use of SSNs for citizenship-verification purposes compatible with the purposes for which SSNs are collected, because Congress has mandated that "[n]otwithstanding any other provision of Federal[] … law[] … a Federal[] … entity or official may not … in any way restrict[] any government entity or official from … receiving … information regarding the citizenship or immigration status … of any individual."  8 U.S.C. § 1373(a).

Third, *League of Women Voters* was mistaken in holding that the DHS and SSA SORNs violated the notice-and-comment requirements of the Privacy Act.  The SORNs comply with the Privacy Act's notice-and-comment requirements because "at least 30 days prior to publication of information under" 5 U.S.C. § 552a(e)(4)(D), DHS and SSA "publish[ed] in the Federal Register notice of any new use or intended use of the information in the system, and provide an opportunity for interested persons to submit written data, views, or arguments to the agency."  (Section 552a(e)(4)(D) refers to "each routine use of the records contained in the system, including the categories of users and the purpose of such use.").  The SORNs therefore plainly comply with the requirements of the Privacy Act.  For all these reasons, Defendants are likely to prevail on the merits of their appeal.

A stay of the *League of Women Voters* vacatur decision would fully remedy all of Plaintiffs' present concerns and render moot their motion for enforcement of the settlement agreement.  Considerations of party and judicial economy thus strongly favor allowing the stay proceedings in the D.C. Circuit to play out before this Court and the parties devote significant time and resources to a matter that could shortly be rendered entirely moot.  That is especially true where, as here, the Court's

resolution of Plaintiffs' motion could well place the United States in the impossible position of being subject to two conflicting, largely irreconcilable court orders. "The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs." *State of Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1285 (11th Cir. 2021). "Comity dictates that courts should avoid rulings which may trench upon the authority of sister courts." *Id.* Such basic considerations of judicial comity are compelling here, where an order by this Court on Plaintiffs' motion would be extremely likely to create an irreconcilable conflict with an order of another federal district court.

Defendants thus respectfully request that the Court hold in abeyance its ruling on Plaintiffs' motion to enforce the Settlement Agreement until after the resolution of the stay proceedings in *League of Women Voters*.

**II.    The Amicus Brief Correctly States That Defendants Are Not in Breach of the Settlement Agreement, and That SSA Is Not a Party to This Case, But Incorrectly Argues That the *League of Women Voters* Vacatur Order Was Correct.**

**A.    Defendants Are Not in Breach of the Settlement Agreement Because the *League of Women Voters* Vacatur Order Requires Defendants to Disable the Relevant Improvements and Modifications of the SAVE System.**

Plaintiffs allege that Defendants breached the Settlement Agreement by disabling the bulk upload function in SAVE and its ability for States to search the database with full SSNs or last-four-digit SSNs. Pls.' Mot. at 5. But as Plaintiffs concede, the *League of Women Voters* vacatur order "[holds] that the modified SAVE system violate[s] the Social Security Act and the Privacy Act of 1974 and that its establishment was arbitrary and capricious under the Administrative Procedure Act." *Id.* (citation omitted). And as the amicus brief correctly notes, *see* Amicus Brief at 8-9, the Settlement Agreement provides that "[n]othing contained" in it "shall impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, or

6

with any federal statute in effect at the time of such performance." Settlement Agreement ¶ 17. Because it is "emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803), including federal statutes, the Settlement Agreement cannot impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the *League of Women Voters* vacatur order's interpretation of the Social Security Act and Privacy Act. As explained above, Defendants vehemently disagree with that interpretation, and accordingly have moved to stay the court's decision. But absent a stay of that decision, Defendants are bound by it. Thus, granting Plaintiffs' motion would effectively impose on Defendants a duty, obligation, and requirement to perform under the Settlement Agreement in a way that is inconsistent with another court's order interpreting a federal statute. "Nothing contained" in the Settlement Agreement imposes such a duty, obligation, or requirement.[1]

Plaintiffs' motion incorrectly contends that this provision of the Settlement Agreement does not apply because "*this Court* has not held that Defendants' duties are inconsistent with the Constitution or any federal statute." Pls.' Mot. at 10 (emphasis added). But the provision is not so limited. It states instead that the Settlement Agreement may not impose a duty on Defendants that is inconsistent with federal statute in effect at the time. As explained above, the interpretation of federal statutes in the *League of Women Voters* vacatur order prevails over conflicting obligations in the Settlement Agreement.

Furthermore, the amicus brief correctly observes that a party does not breach its obligations under a settlement agreement by refusing to violate a court order. *See* Amicus Brief at 8; *see also Borup*

---

[1] The amicus brief errs, however, in contending that "the particular steps that DHS and SSA took to overhaul SAVE violated a number of federal statutes." Amicus Brief at 10. As explained, *see supra* at I, the *League of Women Voters* vacatur order was mistaken in concluding that Defendants' improvements and modifications of the SAVE system were inconsistent with the Social Security Act and the Privacy Act.

*v. W. Operating Corp.*, 130 F.2d 381, 384 (2d Cir. 1942) ("[A] promisor is excused, except in unusual circumstances, if performance becomes unlawful by a change in the law made after the contract was executed."). As Plaintiffs concede, the *League of Women Voters* vacatur order "set[s] asid[e] and vacat[es] the SAVE 'modified system' and the related SORNs." Pls.' Mot. at 5. The Fifth Circuit has explained elsewhere that "a court order may excuse a party's performance under a contractual obligation," and further explained that this excuse will not apply if a party can fulfill its contractual obligations notwithstanding a court order. *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 328 (5th Cir. 2001). But here, there is no question that the only reason Defendants cannot fulfill their terms of the settlement agreement is because of the current vacatur order in the *League of Women Voters* case. And Defendants are actively taking emergency steps to oppose that order and stay its effectiveness. There is no breach of the settlement agreement in these unique circumstances.

The amicus brief also correctly states that the SAVE system's ability to search SAVE with SSNs and last-four-digit SSNs was enabled by data shared to DHS by SSA, and that SSA is not a party to this case. Amicus Brief at 11-13. Further, the amicus brief correctly represents that under the *League of Women Voters* vacatur order and memorandum opinion, SSA may no longer share such data. However, complying with the Settlement Agreement does not require Defendants "to violate the Privacy Act." Amicus Brief at 13. Although *League of Women Voters* concluded otherwise, that conclusion is mistaken, as more fully explained below. *See infra* II.B.

Finally, although not addressed by the amicus brief, this Court lacks jurisdiction to enforce the Settlement Agreement. The Tucker Act grants the Court of Federal Claims exclusive jurisdiction to "render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States[,]" 28 U.S.C. § 1491(a)(1), and waives sovereign immunity for cases falling within its grant of jurisdiction. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The Tucker Act therefore displaces district court jurisdiction over contract claims against the United States, as the

Supreme Court has recently recognized. *See Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) (per curiam); *Dep't of Ed. v. California*, 604 U. S. 650 (2025) (per curiam). As the D.C. Circuit has stated, this preclusion of review applies even if, as here, the parties' agreement contemplates enforcement by a federal court and the district court retains jurisdiction. To conclude otherwise, the D.C. Circuit explained, "would be to violate the time-honored rule that neither a court nor the parties has the power to alter a federal court's statutory grant of subject matter jurisdiction." *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1055 (D.C. Cir. 2014).

In any event, even if this Court had jurisdiction to enforce the agreement, it could not award the relief sought by Plaintiffs. Plaintiffs seek, in effect, specific performance of the contract they entered into against the federal government, but specific performance is not an available remedy against the United States under federal contract law. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) ("[O]bligations to and rights of the United States under its contracts are governed exclusively by federal law."); *McLarnon v. United States*, 154 Fed. Cl. 459, 462 (2021) (explaining that "specific performance is not an available remedy" in "breach of contract claim against the United States").

**B.** **The Amicus Brief Is Incorrect in Its Contentions Regarding the Procedural Obligations of the Privacy Act and Administrative Procedure Act.**

As noted above, Defendants vehemently disagree with the *League of Women Voters* vacatur order, and have appealed and sought a stay of that order. The amicus brief errs in contending that the *League of Women Voters* vacatur order was correct in concluding that that the DHS and SSA SORNs violated the notice-and-comment requirements of the Privacy Act (and by extension, the Administrative Procedure Act ("APA")). Amicus Brief at 13-14. The Privacy Act merely requires that "at least 30 days prior to publication of information under" 5 U.S.C. § 552a(e)(4)(D), the agency "publish in the Federal Register notice of any new use or intended use of the information in the system, and provide an opportunity for interested persons to submit written data, views, or arguments to the agency." 5 U.S.C. § 552a(e)(11). (Section 552a(e)(4)(D), in turn, refers to "each routine use of

9

the records contained in the system, including the categories of users and the purpose of such use.")

That is what SSA and DHS did in the challenged SORNs. The DHS SORN was published on October

31, 2025, specifying that "[n]ew or modified routine uses will be effective December 1, 2025" and

specifically invited the immediate submission of comments for the agency's consideration. 90 Fed.

Reg. at 48,949. Likewise, the SSA SORN was published on November 12, 2025, specifying that "new

routine uses … are effective December 12, 2025" and specifically "invit[ing] public comment on the

routine uses or other aspects of this SORN." 90 Fed. Reg. at 50,880. The SORNs thus plainly comply

with the Privacy Act's requirements. Requiring anything further in the name of the Privacy Act

improperly "impose[s] judge-made procedures in addition to the [statute]'s mandates." *Little Sisters of*

*the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 685 (2020) (cleaned up). And to the

extent that the *League of Women Voters* vacatur order suggests that the APA imposes an independent

notice-and-comment obligation—including an obligation to provide a written explanation or response

to comments received—beyond that required by the Privacy Act, that imposition would call into

question virtually every SORN publication dating back decades.

III.   **In Any Event, the Court Should Not Enter an Order Enforcing the Settlement Agreement Under These Circumstances Because the Balance of Hardships and the Public Interest Weigh Against It.**

As explained above, Defendants are not in breach of the Settlement Agreement. But even if

the Court were to disagree, it should not grant Plaintiffs' motion. An order enforcing the Settlement

Agreement would be tantamount to a permanent injunction, and Plaintiffs have not satisfied the

requirements for obtaining such relief. "To obtain a permanent injunction, a plaintiff must show,"

*inter alia*, "that the balance of hardships weighs in his favor; and . . . that a permanent injunction would

not disserve the public interest." *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017).

Granting Plaintiffs' motion would impose a formidable hardship on Defendants by placing them in

an impossible dilemma. Defendants would be faced with multiple court orders, and it would be

logically impossible to comply with both of them—virtually guaranteeing that the government would risk a violation in one or more federal courts.

Defendants remain confident that they will obtain a stay of the *League of Women Voters* vacatur order and will ultimately prevail in their appeal of that order. But again, as of today, Defendants remain bound by that order. Plaintiffs' request for this Court to issue an order directly conflicting with that order would unquestionably place Defendants in a situation in which full compliance with both orders would be logically impossible. And Defendants, the states, the federal judiciary, and the general voting public would face immediate chaos and uncertainty because of the conflicting orders. Entry of an order granting Plaintiffs' motion would thus disserve the public interest.

In addition to equitable principles, "[p]rudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders." *Feller v. Brock*, 802 F.2d 722, 727-28 (4th Cir. 1986).[2] And basic "considerations of comity require more than the usual measure of restraint" in this scenario, when an order "sought in one federal proceeding would interfere with another federal proceeding." *Common Cause v. Jud. Ethics Comm'n*, 473 F. Supp. 1251, 1253-54 (D.D.C. 1979). That is another reason not to grant Plaintiffs' motion. *See, e.g., W. Gulf Maritime Ass'n v. ILA Deep Sea Loc. 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) (holding that federal district courts have an obligation to "avoid rulings which may trench upon the authority of sister courts"); *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987) ("Where different outcomes would place the defendant under inconsistent legal duties, the case for the second court's not going into conflict with the first is particularly strong."); *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976) ("When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases."); *Carver*

---

[2] Defendants raised this same argument before the D.C. District Court. *See* Defs.' MSJ at 63–64.

11

*v. Knox Cnty.*, 887 F.2d 1287, 1293 (6th Cir. 1989) (noting the "intolerable situation" of a state subject to conflicting orders and explaining that "the only common sense approach" is for the courts to speak "with a single voice"); *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981) ("Generally, principles of comity and judicial economy make courts reluctant to exercise jurisdiction over claims involving the orders of coordinate courts.").

Plaintiffs' motion provides little response to these concerns. Plaintiffs note that the *League of Women Voters* vacatur order "is not binding on this Court" and that Plaintiffs "were not parties to the D.C. proceedings and are thus not bound by the D.C. District Court's judgment." Pls.' Mot. at 10, 11 n.2. While both statements are correct, they are beside the point. The vacatur order is binding on *Defendants* as parties to the case.

No case law cited by Plaintiffs supports their request for an order enforcing the Settlement Agreement. *Stone & Webster, Inc. v. Georgia Power Co.*, 779 F.3d 614 (D.C. Cir. 2015), states only that in "determin[ing] which of two pending suits should proceed, the Supreme Court [has held] that the lower courts must be given 'an ample degree of discretion.'" *Id.* at 617 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)). *Stone & Webster* and *Kerotest* are about deciding which case goes first where two overlapping declaratory judgment actions have been filed, with a plaintiff in one action being a defendant in the other and vice versa. They have little relevance here, where Plaintiffs are not seeking a determination as to which of two overlapping declaratory judgment actions should proceed. *Emrick v. Bethlehem Steel Corp.*, 624 F.2d 450 (3d Cir. 1980), is similarly inapposite. That case involved whether employees alleging sex discrimination in violation of a consent decree entered in one court could file their claims in a different court. *Id.* at 451-52. It has minimal relevance to the present circumstances, in which Plaintiffs ask this Court to impose on the federal government an obligation to violate an order issued by another federal district court.

## CONCLUSION

Defendants respectfully request that the Court hold in abeyance its ruling on Plaintiffs' motion to enforce the Settlement Agreement until after the resolution of stay proceedings in *League of Women Voters*. In the alternative, Defendants respectfully ask the Court to deny Plaintiffs' motion.

Dated: July 2, 2026                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Daniel Riess*
STEPHEN M. PEZZI (Florida Bar No. 1041279)
Senior Trial Counsel
DANIEL RIESS
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 353-3098
Email: daniel.riess@usdoj.gov

*Attorneys for Defendants*

Doc. 43

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

STATE OF FLORIDA and the
FLORIDA DEPARTMENT OF STATE, et al.

  *Plaintiffs,*

  v.           Case No. 3:24-cv-509-TKW-HTC

The DEPARTMENT OF HOMELAND SECURITY;
and ALEJANDRO MAYORKAS, in his
Official capacity as Secretary
of the United States
Department of Homeland Security,

  *Defendants.*

_____/

## REPLY IN SUPPORT OF EMERGENCY MOTION TO ENFORCE SETTLEMENT AGREEMENT

Plaintiffs offer three points in reply in support of their motion to enforce the settlement agreement.

***First***, it is hard to overstate the harm Plaintiffs are facing from the relevant SAVE features being disactivated.  After securing a lasting and binding settlement agreement, Plaintiffs incorporated these SAVE features into State law.  *See* Mot. to Enforce at 2 (citing statutes).  D.C. District Court Judge Sparkle L. Sooknanan's order vacating those features leaves Plaintiffs in limbo.[1]

---

[1] Moreover, Defendants admitted in their stay application to Judge Sooknanan that "compliance with" her vacatur order "definitionally brings Defendants out of compliance with [their] settlement agreement entered in the Northern District of Florida," and that "DHS is . . . maintaining dual-track capabilities—*i.e.*, both the 'old' SAVE and the modified SAVE systems," enabling this court to grant limited

As just one example, Iowa has integrated SAVE into its professional licensing statutory scheme, meaning SAVE verification is statutorily required before Iowa can grant professional licenses in numerous industries. *See* ECF 34 at ¶ 7 (Declaration of Aaron Baack). Without these SAVE features, licenses cannot be issued, and there is already a backlog of over 350 professionals who cannot be cleared to get their license. *See id.* at ¶ 10. This means there are fewer medical and educational professionals available to serve Iowans. *Id.* at ¶ 13. Neither Judge Sooknanan nor amici League of Woman Voters gave meaningful attention to these real-world harms. *See League of Women Voters*, 2026 WL 1784297, at *35 (D.D.C. June 22, 2026).

Defendants, for their part, ask this Court to delay issuing any order "until stay proceedings in *League of Women Voters* are fully resolved." Opp. Mot. at 4. But that too is insufficient for the States. Even under the emergency briefing schedule in the *League of Women Voters* litigation, the district court stay briefing does not conclude until July 7. *Id.* at 3. The district court is unlikely to stay its own ruling, so relief is unlikely until the D.C. Circuit steps in—if it steps in at all. Plaintiffs should not be forced to wait indefinitely and hope that another court will afford them the relief they already secured in this Court through the settlement agreement.

"[A] State's inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018); *see*

---

emergency relief by ordering Defendants to provide only the States that are parties to the settlement agreement with access to the modified SAVE system while giving all other users access only to "old" SAVE. *League of Women Voters v. DHS*, No. 1:25-cv-03501-(D.D.C. July 1, 2026), ECF No. 116-1 at 13, 4 (ECF pagination).

*also Friends of the Everglades, Inc. v. Sec'y of United States Dep't of Homeland Sec.*, No. 25-12873, 2025 WL 2598567, at *10 (11th Cir. Sept. 4, 2025).  It is possible that a D.C. Court may stop further harms for Plaintiffs at some point in the future, but this Court is best positioned to give that relief *now*.

***Second***, the settlement agreement does not "impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, or with any federal statute in effect at the time of such performance."  ECF 30-1, ¶ 17.  To be sure, Judge Sooknanan held otherwise.  *See League of Women Voters*, 2026 WL 1784297 at *35.  But that order is clearly wrong, as Defendants have vigorously argued.  *See* ECF No. 116, No. 1:25-cv-003501-SLS (July 1, 2026) (motion for stay pending appeal).  And "[a] district court is not bound by another district court's decision," *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991), much less one as clearly erroneous as Judge Sooknanan's decision here.  This Court is therefore under no obligation to defer to another court and hold that performance of the settlement agreement is inconsistent with any federal statute.  *See* ECF 30-1, ¶ 17.

Given this reality, Defendants fall back to principles of comity and respect for other court decisions as reason to not enforce the agreement.  *See* Opp. Mot. at 6.  If those principles sound familiar, it's because Defendants made the same argument in front of Judge Sooknanan.  Yet that court dismissed arguments about this suit and settlement agreement as "unavailing."  *League of Women Voters*, 2026 WL 1784297, at *35.  It therefore "seems particularly inappropriate that [this Court] should defer

3

to another court when the other court has explicitly noted that deference is not necessary." *Emrick v. Bethlehem Steel Corp.*, 624 F.2d 450, 454 (3d Cir. 1980).

**Third**, this Court has jurisdiction to enforce the settlement agreement. Defendants remarkably contend otherwise, *see* Opp. Mot. at 8–9, even though they specifically "agree[d] that they will be *subject to the jurisdiction of [this] Court* in the event of a violation of this Settlement Agreement." ECF 30-1 ¶ 23k (emphasis added). Defendants' about-face is inconsistent with their obligations under the agreement. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 217 (1985) ("Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party."). Defendants agreed to be subject to this Court's jurisdiction and never raised any jurisdictional concern during settlement negotiations or when signing the settlement agreement before this Court. They should not be rewarded for attempting this gimmick now.

Fortunately, Defendants' jurisdictional argument is also wrong on the merits. The Tucker Act requires only "that claims against the United States for amounts *in excess of $10,000* founded on contracts with the United States must be brought in the Court of Claims." *Friedman v. United States*, 391 F.3d 1313, 1315 (11th Cir. 2004) (emphasis added). For claims under $10,000, the "companion" statute—the Little Tucker Act—applies. *See United States v. Bormes*, 568 U.S. 6, 10 (2012). And the Little Tucker Act ensures that "district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims," for claims under

$10,000. *See* 28 U.S.C. § 1346(a)(2).[2] Plaintiffs do not seek to enforce any claim over $10,000, so the Tucker Act is inapplicable.

Moreover, "[s]ince this action was not originally brought to enforce a contract with the United States, the Tucker Act does not apply. The motion to enforce the settlement agreement, although ancillary to the original action, is not within the exclusive jurisdiction of the Claims Court." *Reed By & Through Reed v. United States*, 717 F. Supp. 1511, 1514 (S.D. Fla. 1988), *aff'd,* 891 F.2d 878 (11th Cir. 1990). So too here.[3]

Defendants signed a settlement agreement, and in doing so promised to submit to the jurisdiction of this Court to enforce this settlement agreement. They now try

---

[2] Defendants point to two recent U.S. Supreme Court cases to bolster this claim. *See* Opp. Mot. at 9. Yet both those cases addressed whether the district court had jurisdiction under the Administrative Procedure Act to award monetary damages. *See Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025); *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025). Defendants also heavily rely on a D.C. Circuit opinion concluding that the Tucker Act stripped it of jurisdiction to enforce a contract, but that dispute was also about money. *See Franklin-Mason v. Mabus*, 742 F.3d 1051, 1052 (D.C. Cir. 2014) (party sought "a million dollars in damages and attorney's fees" against federal government). Plaintiffs don't seek any monetary damages here, so the cases are inapt.

[3] Finally, it is not clear that a settlement agreement between sovereigns to enforce the federal government's statutory obligations qualifies as a "contract" within the meaning of the Tucker Act. A settlement agreement "designed to enforce statutory directives is not merely a private contract. . . . The primary function of a settlement agreement or consent decree, like that of a litigated judgment, is to enforce the congressional will as reflected in the statute." *Biodiversity Assocs. v. Cables*, 357 F.3d 1152, 1169 (10th Cir. 2004). The suit here centered on two provisions of federal law, *see* ECF 29 at ¶ 6 (Amended Complaint) (citing 8 U.S.C. § 1373(c) and 8 U.S.C. § 1644), so it is not a "contract" in the typical sense as used in the Tucker Act.

to wiggle out of their obligations—at great cost to the States who relied on their word. This Court should not allow them to succeed.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order requiring Defendants to immediately remedy their breach of the settlement agreement and restore (1) the bulk upload function in SAVE and (2) the ability to search with Social Security Numbers, including last-four-digits Social Security Numbers.

Respectfully submitted,

JAMES UTHMEIER
  *Attorney General*

DAVID M.S. DEWHIRST (FBN 1076928)
  *Solicitor General*

*/s/ Jason J. Muehlhoff*
JASON J. MUEHLHOFF (FBN 1076410)
  *Chief Deputy Solicitor General*

Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
(850) 414-3300
jason.muehlhoff@myfloridalegal.com

*Counsel for Plaintiffs State of Florida and the Florida Department of State*

BRENNA BIRD
Attorney General of Iowa

*/s/ Patrick Valencia*
ERIC H. WESSAN
*Solicitor General*
PATRICK C. VALENCIA
Deputy Solicitor General
ANGELA STUEDEMANN
Assistant Attorney General

1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
Eric.wessan@ag.iowa.gov
Patrick.valencia@ag.iowa.gov
Angela.stuedemann@ag.iowa.gov

*Counsel for Plaintiffs Brenna Bird and Paul Pate*

MICHAEL BUSCHBACHER
NICHOLAS CORDOVA
Boyden Gray PLLC
800 Connecticut Avenue NW, Suite 900
Washington, D.C. 20006
(202) 955-0620
mbuschbacher@boydengray.com
ncordova@boydengray.com

*Counsel for State of Ohio and Ohio Secretary of State Frank LaRose*

*/s/ Blake E. Lanning*
BLAKE E. LANNING
Assistant Chief Deputy
Attorney No. 35282-24

Office of the Indiana Attorney General
302 W. Washington St., IGCS – 5th Floor
Indianapolis, IN 46204-2770
Telephone: (317) 232-1146
Fax: (317) 232-7979
Email: Blake.Lanning@atg.in.gov

7

## CERTIFICATE OF SERVICE

I certify that on July 3, 2026, a true and correct copy of the foregoing was filed

with the Court's CM/ECF system, which provides service to all parties.


/s/ Jason J. Muehlhoff
CHIEF DEPUTY SOLICITOR GENERAL

Doc. 45

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**STATE OF FLORIDA**, et al.,

     **Plaintiffs**,

v.                                                                  **Case No. 3:24-cv-509-TKW-HTC**

**UNITED STATES DEPARTMENT
OF HOMELAND SECURITY** and
**MARKWAYNE MULLIN**,[1] in his
official capacity as Secretary of the
Department of Homeland Security,

     **Defendants**.

_____/

## **ORDER**

This case is before the Court based on Plaintiffs' emergency motion to enforce settlement agreement (Doc. 32). Upon due consideration of the motion, the declarations submitted by Plaintiffs (Docs. 32-1, 32-2, 34-1), Defendants' response in opposition (Doc. 42) and its attachment, Plaintiffs' reply (Doc. 43), and the amicus brief filed by the League of Women Voters and the Electronic Privacy Information Center (Doc. 37-1), the Court finds that the motion is due to be granted for the reasons that follow.

---

[1] Markwayne Mullin, the current Secretary of the Department of Homeland Security, is substituted for the former Secretary, Kristi Noem, under Fed. R. Civ. P. 25(d), and the Clerk shall update CM/ECF to reflect this change.

**Background**

The State of Florida filed this action in October 2024.  The operative amended complaint[2] sought declaratory and injunctive relief regarding Defendants' use of the Systematic Alien Verification for Entitlements (SAVE) system to comply with DHS's obligation under 8 U.S.C. §1373(c)[3] to verify individuals' immigration status upon request of a state.  Most pertinent to the issue framed by Plaintiffs' motion, the amended complaint alleged that the SAVE system was an "inadequate tool" to verify immigration status because it required a "unique immigration identifier" to run an inquiry and it could not run an inquiry using a Social Security number (SSN), driver's license number, or other similar identifier.

The case was resolved by a settlement agreement executed by the parties in November 2025.  The agreement required the parties to cooperate on "improving and modernizing" the SAVE system, and among other things, it required Defendants to ensure that the system had the capability to (1) "[i]ntegrat[e] with the Social Security Administration to allow searches with full [SSNs] to be used as a non-DHS enumerator"; (2) "[i]ntegrat[e] with the Social Security Administration to allow

---

[2]  The amended complaint was filed in November 2025 and added three additional states (Ohio, Iowa, and Indiana) as plaintiffs, but the substantive claims in the amended complaint were the same as those in the original complaint.

[3]  This statute provides:  "The Immigration and Naturalization Service shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."

searches with last-four-digits SSNs to be used as a non-DHS enumerator"; and (3) "process bulk upload verification requests so that users of the system will not need to input verification requests one-by-one."

On December 1, 2025, the Court entered an order dismissing this case pursuant to Plaintiffs' motion under Fed. R. Civ. P. 41(a)(2). The dismissal order expressly "approved" the settlement agreement and "incorporated [it] by reference" into the order. Doc. 31 at 1–2. And, in the dismissal order, the Court retained jurisdiction for a period of 20 years "for the purpose of enforcement of the parties' settlement agreement." *Id.* at 1.

From December 2025 to June 2026, Defendants performed their obligations under the settlement agreement. Most pertinent to the issues framed by Plaintiffs' motion, Defendants ensured that the SAVE system had the bulk-upload and SSN-search functions.

On June 23, 2026, Defendants disabled the bulk-upload functionality and SSN-search feature of the SAVE system after a district judge in the District of Columbia (Judge Sparkle L. Sooknanan) entered an order vacating those modifications to the system. *See League of Women Voters v. DHS*, --- F. Supp. 3d ---, 2026 WL 1784297 (D.D.C. June 22, 2026). Most pertinent to the issues framed by Plaintiffs' motion, Judge Sooknanan's order concluded that the modifications to the SAVE system violated the Social Security Act and the Privacy Act.

3

On June 30, Plaintiffs filed an emergency motion to enforce the settlement agreement. The motion was accompanied by declarations from state officials in Florida, Iowa, and Ohio, explaining the harm that those states are suffering as a result of their inability to utilize the disabled features of the SAVE system. That harm includes Iowa's inability to comply with a state law requiring verification of citizenship of professional license applicants and Florida and Ohio's inability to comply with state laws requiring verification of the citizenship of registered voters.

The motion was briefed on an expedited basis.[4] The parties did not request a hearing on the motion, and the Court sees no need for one because there are no facts in dispute, the briefing adequately frames the issues in dispute, and time is of the essence in ruling on the motion. Thus, the motion is now ripe for a ruling.

### Analysis

The Court has jurisdiction to consider Plaintiffs' motion to enforce the settlement agreement because the parties agreed in the settlement agreement that "that they will be subject to the jurisdiction of the Court in the event of a violation of this Settlement Agreement." Additionally, the Court expressly reserved jurisdiction in the dismissal order for a period of 20 years for the purpose of enforcing the settlement agreement.

---

[4] In addition to the parties' filings, the Court received an amicus brief from the plaintiffs in Judge Sooknanan's case—the League of Women Voters and the Electronic Privacy Information Center.

4

The Court did not overlook Defendants' argument that the Court does not have jurisdiction to enforce the settlement agreement because the Tucker Act grants the Court of Federal Claims exclusive jurisdiction over actions founded on contracts with the United States. That argument is frivolous because the settlement agreement is more than a contract since the Court approved it and incorporated it by reference into the dismissal order—making the settlement agreement the "functional equivalent of … a consent decree." *Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002). Thus, a breach of the settlement agreement is a violation of a court order—which the Court unquestionably has jurisdiction to address. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

Defendants are plainly in violation of the settlement agreement because it is undisputed that they disabled the bulk-upload and SSN-search features that the agreement expressly required the SAVE system to have. The fact that Defendants disabled those features to comply with Judge Sooknanan's order does not change the fact that they violated the agreement.

The Court did not overlook the amici's argument (echoed by Defendants) that Defendants are not in violation of the settlement agreement because Judge Sooknanan found the modifications to the SAVE system unlawful and the agreement stated that "[n]othing contained in this Settlement Agreement shall impose on Defendants any duty, obligation, or requirement, the performance of which would

be inconsistent with … any federal statute in effect at the time of such performance." The problem with that argument is that the Court implicitly found that the modifications were not inconsistent with federal law when it approved the settlement agreement.[5] The fact that another district judge subsequently concluded otherwise does not somehow undo that implicit determination.

The Court also did not overlook Defendants' request to defer consideration of Plaintiffs' motion until Judge Sooknanan (or, if necessary, the D.C. Circuit) rules on their request to stay Judge Sooknanan's order pending appeal. The Court sees no reason to do so because there is no guarantee that a stay will be granted and Plaintiffs submitted unrebutted evidence showing that they are suffering real and concrete harm every day that passes without the disabled features of the SAVE system. Moreover, the principles of comity that might otherwise weigh in favor of deferring consideration of the motion to enforce until Judge Sooknanan and/or the D.C. Circuit determines whether to enter a stay are not entitled to much weight here because if Judge Sooknanan had deferred to this Court's implicit determination that the

---

[5] Admittedly, the Court did not undertake an extensive assessment of the legality of the features that the settlement agreement required the SAVE system to include when it approved the agreement, but it would not have approved the agreement if it had any concern that those features were unlawful. And now having reviewed Judge Sooknanan's order and the counter-arguments in Defendants' response (and their briefing in Judge Sooknanan's case), the Court makes explicit what was implicit in the approval of the settlement agreement—the modifications to the SAVE system, including the bulk-upload and SSN-search features, do not violate the Social Security Act or the Privacy Act.

6

modifications to the SAVE system were lawful, the parties (and the courts) would not be in the current predicament.[6]

The Court understands that this puts Defendants in a bind because they are subject to two contradictory orders—one from this Court requiring them to include certain features in the SAVE system and one from Judge Sooknanan prohibiting them from doing so.  One of the orders has to give, and not surprisingly, the Court is not persuaded by Defendants' (and the amici's) arguments that its order is the one that should give.

This Court is not bound by Judge Sooknanan's order, and with all due respect, the Court disagrees with the conclusions in that order.  For example, with respect to the Social Security Act, even though 42 U.S.C. §405(c)(2)(C)(viii)(I) seemingly precludes the Social Security Administration (SSA) from disclosing SSNs to anyone, that statute does not preclude SSA from doing so in the immigration context because SSNs can provide information about citizenship and 8 U.S.C. §1373(a) expressly provides that "[n]otwithstanding any other provision of Federal … law, a

---

[6] The Court does not fault Judge Sooknanan for not deferring to this Court's implicit determination that the modified SAVE system was lawful because she is no more bound by this Court's rulings than this Court is bound by hers.  Indeed, the Court has similarly rejected an agency's reliance on another court's consent judgment as an excuse for not complying with the law as this Court interpreted it.  *See Florida v. United States*, 660 F. Supp. 3d 1239, 1267 (N.D. Fla. 2023).  That said, it is unfortunate that the parties to this case did not bring Judge Sooknanan's case to this Court's attention before it approved the settlement agreement and/or the parties to Judge Sooknanan's case did not bring this Court's order approving the settlement agreement to her attention sooner than they did so the conundrum that now exists might have been avoided through principles of comity.

Federal … entity or official may not … in any way restrict[] any government entity or official from sending to … [Defendants] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." (emphasis added).[7] Moreover, with respect to the Privacy Act, the modifications to the SAVE system plainly fall within the Act's "routine use" exception in 5 U.S.C. §552a(a)(7), (b)(3), because using SSNs to verify the identity of potential non-citizens is not incompatible with the purpose of SSNs (e.g., "to establish the age, citizenship, or alien status and true identity" of individuals, *see* 42 U.S.C. §405(c)(2)(B)(ii)), and it is undisputed that Defendants published notice of the use of SSNs as part of the modified SAVE system in advance of the order approving the settlement agreement requiring integration of the SSN-search feature.[8]

The Court also did not overlook Defendants' argument that the balance of harms weighs against enforcing the settlement agreement. However, that argument is not persuasive because it focuses only on the potential harm to Defendants in having to comply with two conflicting orders rather than the harm caused to

---

[7] The Court did not overlook Judge Sooknanan's discussion of §1373, but that discussion was not persuasive because it focused more on the perceived purpose of the statute rather than its plain language explicitly overriding any other provision of federal law that would have otherwise prohibited the sharing of information regarding citizenship.

[8] Also, although not argued by the parties, it would seem that the Court's approval of the settlement agreement requiring the SAVE system to be integrated with the Social Security Administration to allow searches with full or partial SSNs implicates the exception in §552a(b)(12) that authorizes disclosure of records "pursuant to the order of a court of competent jurisdiction."

8

Plaintiffs by Defendants disabling the bulk-upload and SSN-search features required by the settlement agreement.  Moreover, in this Court's view, the interests that the amici were purportedly vindicating in Judge Sooknanan's case are far outweighed by Plaintiffs' sovereign interests in ensuring that non-citizens are not on their voter rolls, that unlawfully present aliens are not receiving professional licenses, etc.

Finally, the Court did not overlook amici's argument that the Court cannot grant Plaintiffs the relief they are seeking in their motion because the agency whose cooperation is necessary for the SSN feature is not a party to this case but is a party to Judge Sooknanan's case.  That argument is not without some merit, but it does not persuade the Court that it should not order Defendants to comply with their obligations under the settlement agreement and leave it to them to figure out how best to fulfill those obligations.

## Conclusion

In sum, for the reasons stated above, it is **ORDERED** that:

1.      Plaintiffs' emergency motion to enforce settlement agreement (Doc. 32) is **GRANTED**, and Defendants shall immediately comply with the court-approved settlement agreement in this case by reinstating Plaintiffs' access to the bulk-upload and SSN-search features in the SAVE system.

2.      The parties shall file a status report 7 days from the date of this Order

regarding Defendants' compliance with this Order and the status of the proceedings

in Judge Sooknanan's case and/or the D.C. Circuit.

**DONE and ORDERED** this 7th day of July, 2026.

_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

10

Doc. 54

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**STATE OF FLORIDA**, et al.,

     **Plaintiffs**,

v.                                 **Case No. 3:24-cv-509-TKW-HTC**

**UNITED STATES DEPARTMENT
OF HOMELAND SECURITY** and
**MARKWAYNE MULLIN**, in his
official capacity as Secretary of the
Department of Homeland Security,

     **Defendants**.

_____/

## ORDER GRANTING MOTION TO INTERVENE

On December 1, 2025, the Court approved the parties' settlement agreement requiring Defendants (DHS) to make certain enhancements to the Systematic Alien Verification for Entitlements (SAVE) system to comply with DHS's obligations under 8 U.S.C. §1373(c) to verify individuals' immigration status upon the request of state officials. *See* Doc. 31. The required modifications included integration of the SAVE system with the Social Security Administration (SSA) to allow searches using full or partial social security numbers (SSNs) and the addition of a process for bulk-upload verification requests.

The order approving the settlement agreement and dismissing this case retained jurisdiction for 20 years to enforce the agreement. That made the settlement

agreement "the functional equivalent … of a consent decree." *Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002).

Meanwhile, unbeknownst to the Court, a separate case was proceeding in the District Court for the District of Columbia (D.D.C.) challenging the modifications to the SAVE system that were required by the consent decree.[1] The plaintiffs in that case included the League of Women Voters (LWV) and the Electronic Privacy Information Center (EPIC).

The judge in the D.D.C. case denied LWV and EPIC's motion for a preliminary injunction and the modified SAVE system continued to operate with the features required by the consent decree until late-June 2026 when the D.D.C. judge entered an order finding the modifications to be unlawful. *See League of Women Voters v. DHS*, -- F. Supp. 3d --, 2026 WL 1784297 (D.D.C. June 22, 2026) (Sooknanan, J.). Within a day or two after that ruling, DHS disabled the modifications to the SAVE system that were required by the consent decree.

Things then started to get interesting. On June 30, Plaintiffs filed an emergency motion to enforce the consent decree. The Court established an

---

[1] DHS told the D.D.C. judge in its most recent filing in that court that it does not consider the order approving the parties' settlement agreement in this case to be a consent decree, but under Eleventh Circuit precedent, it is "functional[ly] equivalent" to one. Thus, for sake of convenience and to avoid repeatedly referring to the order as "the order approving the parties' settlement agreement," the Court will adopt the D.D.C. judge's vernacular and refer to the order as a "consent decree" in this order.

expedited briefing schedule on the motion, and on July 7, after fully considering the parties' briefs and other filings (including LWV and EPIC's amicus brief), the Court entered an order finding that DHS violated the settlement agreement by disabling the modifications to the SAVE system and requiring it to "immediately comply with the [consent decree] by reinstating Plaintiffs' access to the bulk-upload and SSN-search features in the SAVE system."  Doc. 45 at 9.

The D.D.C. judge apparently did not think much of the enforcement order because she pejoratively stated in a July 8 order denying DHS's motion to stay the judgment in that case pending appeal to the D.C. Circuit that this Court "erred in significant ways" in enforcing the consent decree.[2]  A few days later, after DHS told

---

[2] The order included other condescending language, including statements that this Court "may very well correct [its] errors" now that it has been "made aware of them" and that "[t]he errors in the … order … illustrate why courts do not proceed in this way."  The Court will take the high road and not reply in kind, but the unwarranted disparagement of the enforcement order cannot go unanswered.

Suffice it to say, the Court respectfully disagrees with the D.D.C. judge's view that this Court "had no authority to make merits determinations about the legality of SAVE, either implicitly or explicitly."  Indeed, there is Eleventh Circuit precedent for the proposition that a district court can (and sometimes must) assess the legality of a proposed consent decree before adopting and putting the weight of the court's enforcement authority behind the decree.  *See, e.g., Stovall v. City of Cocoa*, 117 F.3d 1238, 1242–43 (11th Cir. 1997) ("Even though the decree is predicated on consent of the parties, the judge must not give it perfunctory approval ….  Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny.  Even when it affects only the parties, the court should … examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence.") (quoting *United States v. City of Miami*, 664 F.2d 435, 440–41 (5th Cir. 1981) (en banc) (Rubin, J., concurring)).

The Court also respectfully disagrees with the D.D.C. judge's assessment that the cases she cited for the general proposition that a district court should modify a consent decree based on

---

3

"changes in governing law or its interpretation by the courts" are controlling here. Unlike this case, those cases involved situations in which a pertinent statute changed after the consent decree was entered or a subsequent Supreme Court decision—not a non-binding district decision— undermined the legal basis of the consent decree. Moreover, in this case, the Court was asked to enforce—not modify—the consent decree, so it had no occasion to consider how the factors in Fed. R. Civ. P. 60(b)(5) might apply.

There is also no merit to the idea that the consent decree should be given less weight than the D.D.C. judge's order simply because of the timing surrounding its entry—as LWV and EPIC appear to be implying in their filings in the D.D.C. and the D.C. Circuit. Like the D.D.C. judge, this Court works on nights, weekends, and holidays, and the quick approval of the settlement agreement does not mean that the Court did not give due consideration to the legality of the modifications to the SAVE system at the time. *See* Doc. 45 at 6 n.5 (acknowledging that the Court "did not undertake an extensive assessment of the legality of the features that the settlement agreement required the SAVE system to include when it approved the agreement" but also emphasizing that the Court "would not have approved the agreement if it had any concern that those features were unlawful"). Moreover, although this Court has the humility to recognize that reasonable judicial minds can differ and that its assessment of the legality of the modifications to the SAVE system or its enforcement of the consent decree may ultimately be found to be incorrect by a higher court, the Court firmly believes based on its review when the consent decree was approved and its more thorough review since—which now includes a review of all of the merits briefing in the D.D.C. case—that the modifications are consistent with the plain language of 8 U.S.C. §1373 that (1) clearly and unambiguously requires DHS to provide requested verification of immigration status to state officials and (2) explicitly overrides any other provision of federal law (including the Social Security Act and the Privacy Act) that might otherwise prohibit the sharing of information regarding citizenship or immigration status that is maintained by the SSA in relation to SSNs.

Relatedly, although the Court probably could have explained it better, the point that the Court was trying to make in the enforcement order about the "routine use" exception in the Privacy Act was that the purpose for which the citizenship information collected by the SSA under 42 U.S.C. §405(c)(2)(B)(ii) is being used by the Plaintiff states in the modified SAVE system (to verify that an individual has the requisite citizenship status to vote, obtain government benefits, be issued a professional license, etc.) is "compatible with" a purpose for which that information was collected by SSA (to verify that the individual has the requisite citizenship status to be issued a SSN). Thus, to use the D.D.C. judge's analogy, even though the purpose of a library card might be to borrow books, the purpose for which residency information is collected by the library before issuing the card (to confirm that the applicant is a county resident) is compatible with using that information (or the resulting library card) as evidence of the cardholder's residence.

All of that being said, the Court agrees with much of what Judge Nelson said in his concurring opinion in *Mi Familia Vota v. Fontes*, 152 F. 4th 1153 (9th Cir. 2025), about the potential problems with "friendly" consent decrees because the Court has seen first-had how they have been abused in other cases. *See Florida v. United States*, 660 F. Supp. 3d 1239, 1267 (N.D. Fla. 2023) (Wetherell, J.) (rejecting DHS's reliance on another court's consent decree as an excuse

4

the D.D.C. judge that it intended to comply with this Court's enforcement order and

its obligations under the consent decree,[3] the D.D.C. judge established an expedited

briefing schedule on the motion to enforce the judgment vacating the modifications

to the SAVE system that the plaintiffs in that case said they were going to (and

ultimately did) file.  That motion is fully briefed and is awaiting a ruling from the

D.D.C. judge.

As things currently stand, DHS is subject to two conflicting federal court

orders—one from this Court requiring it to include certain features in the SAVE

system and one from the D.D.C. judge effectively prohibiting it from doing so.  At

some point, one of these orders will have to give.  But at this point, the Court sees

no reason why it should be this Court's order.

DHS has not appealed the enforcement order, and even though it told the

D.D.C. judge in its most recent filing in that court that it "disagrees" (present tense)

with the enforcement order and that it "believes" (present tense) that the order "was

in error," it is unclear if DHS intends to appeal the order.  LWV and EPIC, however,

---

for not complying with this Court's understanding of the law and explaining that DHS should seek
modification of the consent decree if it was hampering its ability to comply with the law).  The
Supreme Court recently granted review of the *Mi Familia* case, *see* 2026 WL 1855101 (U.S. June
29, 2026), and if that court (or the Eleventh Circuit) restricts the use of consent decrees or decides
that they must give way to things like a decision of another district court, the Court will, of course,
dutifully follow that ruling.  Until then, however, the Court sees no reason why its consent decree
should not be enforced simply because another district judge has a different view of the law than
what was implicit in the Court's approval of the consent decree and is now explicit.

[3] DHS reiterated that position in the status report filed in this case.  *See* Doc. 53.

5

want to appeal the enforcement order—and on July 8, they filed an emergency motion to intervene in this case for that purpose. *See* Doc. 48. The motion was briefed on an expedited basis and is ripe for a ruling.[4]

LWV and EPIC argue that they are entitled to intervene in this case as a matter of right under Fed. R. Civ. P. 24(a) or that they should be permitted to intervene under Fed. R. Civ. P. 24(b). Plaintiffs and DHS respond that intervention should be denied because LWV and EPIC's motion is untimely under either rule and because they lack standing to challenge the modifications to the SAVE system. LWV and EPIC reply that they only seek to intervene to appeal the enforcement order (not the underlying consent decree), that their motion is timely in relation to that order, and that they have standing to challenge that order.

It is well-established that post-judgment intervention is disfavored and is to be "looked upon with a jaundiced eye." *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977) (quoting *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1072 (5th Cir. 1970)). Nevertheless, "[o]n timely motion, the court <u>must</u> permit anyone to intervene who … [1] claims an interest relating to the property or transaction that is the subject of the action, and [2] is so situated that disposing of

---

[4] The Court assured the parties that it would resolve the motion to intervene "as expeditiously as possible" after their July 14 status report, *see* Doc. 49 at 2, and the motion would have been resolved sooner than now but for the fact that the Court was also tending to important matters in several other cases last week while preparing for a felony criminal jury trial that starts tomorrow. But, still, the motion was resolved less than a week after it became ripe.

the action may as a practical matter impair or impede the movant's ability to protect its interest, [3] unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2) (emphasis added).

Here, the existing parties do not appear to dispute that LWV and EPIC have satisfied the substantive criteria in this rule. Indeed, there is no real question that the LWV and EPIC's interests are directly affected by the enforcement proceedings in this case based on the relief that they obtained—rightly or wrongly—in the D.D.C. case; that the relief they obtained in the D.D.C. case will be substantially impaired if the enforcement order is not reversed on appeal; and that the existing parties (particularly DHS) are not adequately representing that LWV and EPIC's interest because it is unlikely that they are going to appeal the enforcement order. Thus, resolution of the motion to intervene boils down to whether it was "timely."

In this context, "timeliness is not limited to chronological considerations but is to be determined from all the circumstances.'" *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263–64 (5th Cir. 1977) (quoting *U.S. Steel Corp.*, 548 F.2d at 1235). And district courts are to consider the following four factors when assessing the timeliness of a motion to intervene:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene; (2) the extent of the prejudice that existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest; (3) the extent of the

prejudice that the would-be intervenor may suffer if denied the opportunity to intervene; and (4) the existence of unusual circumstances weighing for or against a determination of timeliness.

*Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019).

Here, the first factor weighs against finding the motion to intervene timely because LWV and EPIC have been aware of this case since <u>at least</u> December 2025 and the Court still does not understand why they did not seek to intervene long before now if, as they claimed in the D.D.C. case, the modifications to the SAVE system that were required by the consent decree caused real and substantial injuries to them and/or their members.[5]  Nevertheless, because the motion to intervene was filed the day after the enforcement order was entered and the legal import of the consent decree became crystal clear to LWV and EPIC, the Court does not give much weight to the first factor.  *See id.* ("Mere knowledge that an action is pending, without

---

[5]  LWV and EPIC's purported reliance on the boilerplate language in the settlement agreement stating it did impose any obligation on DHS that "would be inconsistent with the United States Constitution, or with any federal statute in effect at the time of such performance" is not a persuasive excuse because it failed to account for the possibility that this Court already had already determined—or, when asked, would determine—that there was nothing unlawful about the modifications to the SAVE system required by the consent decree.  Indeed, reading between the lines of this argument and the sequence of events in this case and the D.D.C. case, the Court finds that it is more likely than not that LWV and EPIC simply made a strategic decision not to get involved in this case before the parties entered into the settlement agreement or before the consent decree became final because they believed that they had a better chance of obtaining the relief that they were seeking in D.D.C. than by raising and litigating their claims in this Court.

appreciation of the potential adverse effect an adjudication of that action may have on one's interests, does not preclude intervention.").

The second and third factors weigh in favor of finding the motion to intervene timely. LWV and EPIC's interests are adversely affected by the enforcement order and they will be prejudiced if they are not allowed to intervene to appeal that order because it deprives them of a portion of the relief that they obtained—rightfully or wrongfully—in the D.D.C. case and DHS does not appear to have a present intent to appeal the enforcement order. The Court is not persuaded that the existing parties would be unduly prejudiced if LWV and EPIC are allowed to intervene at this point because unless the D.C. Circuit stays the D.D.C. judge's order, the operation of the modified SAVE system in the Plaintiff states is likely going to remain in legal limbo—with or without an appeal in this case. Moreover, even if LWV and EPIC had intervened before the consent decree was approved (or at least sooner than now), the parties would likely have been in the same legal limbo—i.e., with a judgment in this case requiring DHS to improve the system used to respond to verification requests under §1373(c), a judgment in the D.D.C. case saying they could not do so in the way they ultimately did, and competing appeals at the Eleventh and D.C. Circuits.

The fourth factor weighs in favor of finding the motion to intervene timely because the events giving rise to the motion are "unusual" to say the least. Those

9

events started in late-June 2022 when the D.D.C. judge ruled that the modifications to the SAVE system that were required by the consent decree and that had been in operation for more than seven months at that point were unlawful. That ruling set in motion a fast-moving chain of events that evolved into a judicial ping-pong match over the legality of the modifications to the SAVE system that, unfortunately, appears unlikely to end any time soon. Indeed, because neither this Court nor the D.D.C. judge has shown any interest in deferring to the other on the question of whether the modifications to the SAVE system are lawful, it is seemingly going to take an appellate court—whether it is the D.C. Circuit, the Eleventh Circuit, or the Supreme Court—to decide which court is right and/or what should happen next.

In sum, because three of the four factors that the Court is required to consider when ruling on a motion to intervene weigh in favor of finding the motion timely and the fourth factor does not weigh that strongly against it, the Court finds that the motion is timely. And, based on that finding, the Court essentially has no choice but to grant the motion to intervene under the mandatory language in Rule 24(a).

The Court did not overlook Plaintiffs' argument that LWV and EPIC are required to—but did not—demonstrate their standing to appeal a decision that neither of the parties intend to appeal. That argument has support in Supreme Court precedent, *see Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) ("As the Court has repeatedly recognized, to appeal a decision that the

10

primary party does not challenge, an intervenor must independently demonstrate standing."), but it goes more to the question of whether the Eleventh Circuit should dismiss the appeal once LWV and EPIC files it than the threshold question of whether this Court should allow them to intervene to file an appeal. Moreover, to the extent that argument has any bearing on the motion to intervene, the Court does not find it dispositive because even though there is no evidence before this Court demonstrating that LWV and EPIC would have had standing to intervene in this case to oppose Plaintiffs' efforts to obtain enhancements to the SAVE system or to challenge the terms of the consent decree (before or after it was entered), LWV and EPIC only seek to intervene to appeal the enforcement order and that order adversely impacts their interests by depriving them of a portion of the relief that they obtained—rightfully or wrongfully—in the D.D.C. case.

*   *   *

Accordingly, for the reasons stated above, it is **ORDERED** that LWV and EPIC's emergency motion to intervene (Doc. 48) is **GRANTED**, and the Clerk shall update their status in CM/ECF from amici to intervenors.

**DONE and ORDERED** this 19th day of July, 2026.

_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

11