No. 26-12533-C

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

STATE OF FLORIDA, et al.

Plaintiffs-Appellees,

v.

LEAGUE OF WOMEN VOTERS, et al.

Intervenors-Defendants-Appellants.

Appeal from the United States District Court for the Northern District of Florida
No. 3:24-cv-00509-TKW-HTC - The Honorable T. Kent Wetherell II

# BRIEF IN RESPONSE TO JURISDICTIONAL QUESTION

Aman T. George
Mark B. Samburg
Ronald A. Fein
Robin F. Thurston
DEMOCRACY FORWARD FOUNDATION
P.O. BOX 34553
Washington, DC 20043
(202) 448-9090

Gerald E. Greenberg
Daniel R. Walsh
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, FL 33131
(305) 728-0950

Nikhel S. Sus
John B. Hill
Lauren C. Bingham
CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565

Jon Sherman
Michelle Kanter Cohen
FAIR ELECTIONS CENTER
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 331-0114

*Counsel for Intervenors-Defendants-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

Counsel for Intervenors-Defendants-Appellants hereby incorporates the CIP included with their September 9 Motion to Extend Time, Dkt. 33. Intervenors-Defendants-Appellants are not aware of any additional interested persons.

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Dated: September 16, 2026 *<u>/s/Mark B. Samburg</u>*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 2

LEGAL STANDARD .......... 6

ARGUMENT .......... 7

I. Appellants have standing to defend and vindicate the judgment vacating modified SAVE that they obtained in the LWV Vacatur Decision. .......... 7

II. The record in the *LWV* Vacatur Decision court shows that Appellants independently have standing to appeal the district court's order .......... 11

A. Privacy injuries .......... 11

B. Voting injuries .......... 13

C. Procedural injuries .......... 16

CONCLUSION .......... 17

# TABLE OF AUTHORITIES

## Cases

*Alabama v. Ctrs. for Medicare & Medicaid Servs.*,
674 F.3d 1241 (11th Cir. 2012) .......................... 10

*Allen v. Wright*,
468 U.S. 737 (1984) .......................... 7, 8

*Alonso Cano ex rel. Alonso Morejon v. 245 C&C, LLC,*
No. 24-12752, 2025 WL 3718164 (11th Cir. Dec. 23, 2025) .......................... 7

*Arcia v. Fla. Sec'y of State*,
772 F.3d 1335 (11th Cir. 2014) .......................... 13, 14

*Cabalceta v. Standard Fruit Co.*,
883 F.2d 1553 (11th Cir. 1989) .......................... 15

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
408 F.3d 1349 (11th Cir. 2005) .......................... 13

*Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*,
45 F.4th 846 (5th Cir. 2022) .......................... 10

*Drazen v. Pinto*,
74 F.4th 1336 (11th Cir. 2023) .......................... 12

*EFN W. Palm Moto Sales, LLC v. Hyundai Motor Am.*,
No. 23-11077, 2023 WK 3884589 (11th Cir. June 8, 2023) .......................... 15

*Florida v. HHS*,
No. 25-12095, 2026 WL 2618386 (11th Cir. Sept. 4, 2026) .......................... 10

*Kimberly Regenesis, LLC v. Lee Cnty.*,
64 F.4th 1253 (11th Cir. 2023) .......................... 6, 7

*League of Women Voters v. DHS*,
No. 26-5243, 2026 WL 2643439 (D.C. Cir. Sept. 4, 2026) .......................... 5, 14, 15

*LWV v. DHS*,
835 F. Supp. 3d 79 (D.D.C. 2026) *stay denied*, No. 26-5243, 2026 WL

2643439 (D.C. Cir.), *app. for stay submitted*, No. 26A308 (U.S. filed Sept. 8, 2026) ........ *passim*

*Martin v. Wilks*, 490 U.S. 755 (1989) ........ 9, 10

*Mission Critical Sols. v. United States*, 104 Fed. Cl. 18 (2012) ........ 8

*Ouachita Watch League v. Jacobs*, 463 F. 3d 1163 (11th Cir. 2006) ........ 16

*Rivers v. Guerrero*, 605 U.S. 443 (2025) ........ 7

*Salazar v. Buono*, 559 U.S. 700 (2010) ........ *passim*

*Smith v. Bayer Corp.*, 564 U.S. 299 (2011) ........ 9

*Southeast Dev. Partners, LLC, v. St. Johns Cnty., Fl.*, No. 24-13385, 2026 WL 2279924 (11th Cir. Aug. 7, 2026) ........ 6, 7

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........ 12

**Statutes**

42 U.S.C. § 1320b ........ 2

5 U.S.C. § 706 ........ 5

**Other Authorities**

Secretary LaRose Orders Latest Round of Noncitizen Removals from Ohio Voter Rolls Ongoing Citizenship Verification Using Federal SAVE Data Continues to Improve Voter List Maintenance Accuracy, Ohio Secretary of State (Sept. 9, 2026), https://perma.cc/968X-4Y23 ........ 15

## INTRODUCTION

Appellants League of Women Voters ("LWV") and Electronic Privacy Information Center ("EPIC"), intervenor-defendants below, have standing to appeal the district court's order directing the U.S. Department of Homeland Security ("DHS") to continue operating the modified Systemic Alien Verification for Entitlements ("modified SAVE") system in four states—Florida, Indiana, Iowa, and Ohio ("the plaintiff states").

To start, Appellants have standing because DHS and the plaintiff states are continuing to operate modified SAVE in direct violation of a judgment that LWV and EPIC secured, which vacated and set aside the modified SAVE system under the Administrative Procedure Act ("APA"). *See LWV v. DHS*, 835 F. Supp. 3d 79, 138 (D.D.C. 2026), *stay denied*, No. 26-5243, 2026 WL 2643439 (D.C. Cir.), *app. for stay submitted*, No. 26A308 (U.S. filed Sept. 8, 2026) ("*LWV* Vacatur Decision"). As a result of that vacatur order, the modified SAVE system was nullified, revoked, and undone as if it never occurred—on a universal basis and without limitation to any particular party. As six justices agreed in *Salazar v. Buono*, 559 U.S. 700 (2010), litigants who win a judgment have Article III standing to protect or vindicate their interest in that judgment in a collateral appeal. *See id.* at 712 (plurality opinion); *accord id.* at 738 (Stevens, J., dissenting). That alone is dispositive.

But Appellants' standing does not end there. Appellants are nationwide organizations with members in the four plaintiff states, and thus—as the *LWV* Vacatur Decision already concluded—also have standing due to the injuries modified SAVE inflicts on their members' privacy and voting rights, *see* 835 F. Supp. 3d. at 107-116, and the injuries to LWV's procedural rights as an entity. *See id.* at 107-117 (finding standing on both these grounds). The order below triggered DHS's and the plaintiff states' continued deployment and use of modified SAVE and thus inflicts the same harms to Appellants' members in those states, so Appellants have standing to redress those injuries in this appeal as well.

## BACKGROUND

Appellants have provided the background in their opening brief, Dkt. 25 at 10-22,[1] and recite only the details most relevant to this Court's jurisdictional question here. The congressionally-mandated Systemic Alien Verification for Entitlements system, as its name suggests, is a system to verify entitlement benefits eligibility for non-citizens ("aliens"). 42 U.S.C. § 1320b-7(d). But last year, DHS and the Social Security Administration ("SSA") modified the SAVE system, substantially increasing the number of individuals whose records were accessible by SAVE to include virtually every American citizen, incorporating personal records

[1] Citations to this Court's docket use "Dkt." Citations to the *LWV v. DHS*, No. 1:25-cv-03501-SLS (D.D.C.) docket use "*LWV* ECF." Citations to the *Florida v. U.S. Dep't of Homeland Security*, No. 3:24-cv-509 (N.D. Fla.) docket use "ECF."

from SSA into SAVE for the first time, and enshrining inaccurate, often out-of-date, citizenship records into a system states use to verify voter eligibility. Dkt. 25 at 11-12.

Appellants were among the plaintiffs that challenged those modifications in the District Court for the District of Columbia in September 2025. Dkt. 25 at 13. Appellants are both national membership organizations, with members around the country impacted in various ways by the modified SAVE system. *See*, *e.g.*, Decl. of Celina Stewart, *League of Women Voters v. DHS*, No. 1:25-cv-3501 ("*LWV*"), ECF 16-5, at ¶¶ 4, 6, 21 (D.D.C. Oct. 7, 2025) (LWV's membership); Decl. of Alan Butler, *LWV* ECF 66-10, at ¶ 32 (EPIC's membership). Members of both organizations also submitted evidence highlighting the ways modified SAVE impacted their privacy rights. *See*, *e.g.*, Decl. of Anthony Nel, *LWV* ECF 66-3 ¶¶ 27-33 (LWV); Decl. of A. Doe, *LWV* ECF 66-4 ¶¶ 18, 23-24 (LWV and EPIC); Decl. of B. Doe, *LWV* ECF 66-5 ¶ 32-38 (LWV); Decl. of C. Doe, *LWV* ECF 66-6 ¶¶ 19-25 (LWV); Decl. of Lorraine Kisselburgh, *LWV* ECF 66-11, at ¶¶ 2-4, 9-17, 19-20 (EPIC). And LWV submitted evidence from individual members who had either been wrongly required to re-prove their citizenship, or wrongly purged from voter rolls, based on the known inaccuracies of the modified SAVE system. *See* A. Doe Decl. ¶¶ 11-14 & Ex. 1, C. Doe Decl. ¶¶ 12-14, 18 and Ex. 1 (U.S. citizen LWV members forced to provide documentary proof of citizenship (DPOC) within 30 days

or else face wrongful cancellation of their voter registration); Nel Decl. ¶¶ 19-21, 24, 25 & Exs. 1, 2, B. Doe Decl. ¶¶ 11-17, 21-22, 24-27, 30-31 and Exs. 1, 2 (U.S. citizen LWV members whose voter registrations were wrongfully cancelled for failure to provide DPOC within 30 days); B. Doe Decl. ¶¶ 11-31 (U.S. citizen LWV member who was disenfranchised and prevented from voting in a primary election in March 2026); Nel Decl. ¶ 39, B. Doe Decl. ¶ 44, C. Doe Decl. ¶ 30 (U.S. citizen LWV members who felt compelled to regularly check their voter registration status to ensure it is not wrongfully cancelled). LWV also identified members who feared facing unwarranted criminal investigations arising from prior lawful voting due to the inaccuracies of modified SAVE. *See* Nel Decl. ¶ 37, B. Doe Decl. ¶ 42.

After considering the administrative record, summary judgment briefing, and declarations filed by the parties, the district court found that the changes to SAVE violated substantive and procedural prohibitions enshrined in the Privacy Act and the Social Security Act, and was arbitrary and capricious under the APA. *LWV* Vacatur Decision, 835 F. Supp. 3d at 119-20, 123-132. As to standing, the court found that LWV had standing on several grounds:

- The unlawful disclosure of LWV members' private information via modified SAVE inflicted concrete privacy injuries upon them analogous to the historical torts of intrusion upon seclusion and breach of confidence; *id.* at 108-111;
- The disclosure of modified SAVE's inaccurate citizenship records of LWV members to their home states for the purpose of reviewing voter eligibility

inflicted concrete reputational injuries analogous to the historical tort of defamation; *id.* at 108-109, 111-112;

- The disclosure of those inaccurate citizenship records burdened affected LWV members' right to vote; *id.* at 112-116; and
- The failure of DHS and SSA to follow required statutory procedures inflicted procedural injuries on LWV. *Id.* at 116-117.

Ultimately, the court vacated the modified SAVE system under the APA, 5 U.S.C. § 706(2). *Id.* at 138. The court "vacate[d] and set aside" the modified SAVE system as well as the accompanying System of Records Notices ("SORNs") issued by DHS and SSA. *LWV* ECF 112 at 1-2. The government defendants sought a stay of the order from the D.C. district court, which denied it, and then from the Court of Appeals for the D.C. Circuit, which denied it on September 4. *League of Women Voters v. DHS*, No. 26-5243, 2026 WL 2643439, at *1 (D.C. Cir. Sept. 4, 2026) (per curiam) ("*LWV II*"); *see also id.* at *4-5 (finding that the government had failed to show a likelihood of success on their standing arguments).

After the *LWV* Vacatur Decision vacated modified SAVE, the plaintiff states moved in the Northern District of Florida to enforce a settlement agreement that they believed required modified SAVE to be maintained for at least those four states. *Florida v. U.S. Dep't of Homeland Security*, No. 3:24-cv-509, ECF 32 (N.D. Fla. June 30, 2026). The next day, Appellants filed an amicus brief explaining that an enforcement order by the district court would be inappropriate in light of the D.C. court's vacatur order, which placed the government under an obligation that would

conflict with (and should supersede) any enforcement order. ECF 37-1 (July 1, 2026). The government took the same position in its briefing opposing the motion to enforce. ECF 42 at 7. Nonetheless, the court below granted the plaintiff states' enforcement motion. ECF 45.

The next day Appellants moved to intervene for the purposes of appeal. *Id.* ECF 48. The district court granted leave to intervene, finding that "there is no real question that the LWV and EPIC's interests are directly affected by the enforcement proceedings in this case based on the relief that they obtained—rightly or wrongly—in the D.D.C. case." ECF 54 at 7.

Appellants docketed their appeal on July 21, Dkt. 1, and filed their opening brief on August 7. Dkt. 25. This Court granted expedition of the appeal, then issued this jurisdictional question. Dkt. 32.

## Legal Standard

"'[S]tanding to appeal' requires an 'injury caused by the judgment' while 'standing to bring suit' requires an 'injury caused by the underlying facts.'" *Southeast Dev. Partners, LLC, v. St. Johns Cnty., Fl.*, No. 24-13385, 2026 WL 2279924, at *7 (11th Cir. Aug. 7, 2026) (quoting *Kimberly Regenesis, LLC v. Lee Cnty.*, 64 F.4th 1253, 1259 (11th Cir. 2023)). Additionally, an appealing party must "have an interest in a case." *Id.* Such an interest "normally arises for persons," like

Appellants, "who either (1) intervene in the case or (2) are nonparties who 'participated in the case before the district court.'" *Id.*

## ARGUMENT

### I. Appellants have standing to defend and vindicate the judgment vacating modified SAVE that they obtained in the LWV Vacatur Decision.

Appellants are injured by DHS's continued operation of modified SAVE pursuant to the district court's enforcement order, in violation of the judgment that Appellants secured in the *LWV* Vacatur Decision. That injury is "an 'injury caused by the judgment'" below, *i.e.*, the district court's enforcement order requiring DHS to continue operating modified SAVE. *Id*. Additionally, that injury will be redressed by "a favorable decision from this Court" regarding the district court's enforcement order. *Alonso Cano ex rel. Alonso Morejon v. 245 C&C, LLC,* No. 24-12752, 2025 WL 3718164, at *1 (11th Cir. Dec. 23, 2025) (quoting *Rivers v. Guerrero*, 605 U.S. 443, 451 (2025)).

In *Salazar v. Buono*, 559 U.S. 700 (2010), six justices agreed that parties like Appellants who win a judgment have Article III standing to protect or vindicate their interest in that judgment. *See id.* at 712 (2010) (plurality opinion) ("A party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment." (quoting *Allen v. Wright*, 468 U.S. 737, 763 (1984)); *accord id.* at 738 (Stevens, J., dissenting) ("Plainly, respondent had standing to seek enforcement of a decree in his favor."). "The interest acquired" in such a

judgment is "judicially cognizable because it [is] a personal interest, created by law, in having the [defendant] refrain from taking specific actions." *Allen*, 468 U.S. at 763; *accord Mission Critical Sols. v. United States*, 104 Fed. Cl. 18, 25 (2012) ("If defendant is, in fact, violating the court's injunction entered in plaintiff's favor, this would be an 'injury in fact' which is both concrete and particularized and actual or imminent.").

In *Salazar*, the plaintiff, Buono, had previously obtained an injunction against the presence of a cross on federal land. *See* 559 U.S. at 708. After Congress passed a law to transfer the cross-site from federal ownership to a private party, Buono sued again to block the transfer. *See id.* at 709-10. In concluding Buono had standing to sue to block the land transfer, the Court held that Buono's interest in protecting his original judgment was *itself* sufficient to confer standing. *See id.* at 712. The Court also made clear that Buono did *not* need to identify a new, standalone basis for standing, such as an "'independent' Establishment Clause violation." *Id.* at 713. Rather, "[b]ased on the rights he obtained under the earlier decree," his interests "were sufficiently personal and concrete to support his standing" in a collateral appeal. *Id.*

*Salazar* governs here. Appellants secured a judgment in their favor in the *LWV* Vacatur Decision. *See supra* 5-6. That judgment—in the form of vacatur—required DHS to stop operating modified SAVE. But as a result of the district court's

enforcement order, now on appeal before this Court, DHS is still operating modified SAVE in violation of that judgment. "Having obtained a final judgment granting relief on [their] claims," Appellants have "standing to seek its vindication." *Salazar*, 559 U.S. at 712.

Finding standing here would also comport with the Supreme Court's expectation that federal courts "apply principles of comity . . . when addressing a common dispute." *Smith v. Bayer Corp.*, 564 U.S. 299, 317 (2011). Whenever a plaintiff has prevailed in federal litigation and secured a judgment, a court necessarily has concluded the prevailing plaintiff had standing and would be injured absent relief. A contrary finding would inappropriately invite other federal courts to relitigate jurisdictional facts already passed upon elsewhere and potentially issue conflicting orders. That is certainly true here, as both the D.C. district court and the D.C. Circuit expressly considered standing and concluded LWV had standing on several grounds that are equally applicable here. *See infra* Section II. Permitting Appellants to vindicate their interest in the *LWV* Vacatur Decision would afford appropriate deference to those courts' earlier determinations that, without relief, LWV's members would experience privacy and voting injuries-in-fact.

*Martin v. Wilks*, 490 U.S. 755 (1989), has no bearing on Appellants' appellate standing. In *Martin*, describing the standard for assessing the effect of judgments on third parties, the Court reiterated the uncontroversial principle that "[a] judgment or

decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." *Id.* at 762. That is generally true. But while the enforcement order below may not have decided Appellants' *rights*, its *effect* is that DHS is no longer fully complying with the judgment Appellants obtained against DHS under the *LWV* Vacatur Decision, because DHS is operating modified SAVE again.

Re-litigating the standing analysis in both the *LWV* Vacatur Decision and *LWV II* would be especially inappropriate because the relief Appellants secured in the *LWV* Vacatur Decision was complete vacatur of the modified SAVE system. "When a district court orders vacatur, the agency action is 'of no effect.'" *Florida v. HHS*, No. 25-12095, 2026 WL 2618386, at *8 (11th Cir. Sept. 4, 2026) (quoting *Alabama v. Ctrs. for Medicare & Medicaid Servs.*, 674 F.3d 1241, 1244 (11th Cir. 2012); *see also id.* at *8 n.9 (discussing availability of universal vacatur). Vacating modified SAVE "'formally nullifie[d] and revoke[d]' it." *Id.* (quoting *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022)). Continued operation of modified SAVE *anywhere*—including in the plaintiff states—therefore necessarily deprives Appellants of the benefit of the judgment they obtained through the *LWV* Vacatur Decision.

At bottom, when the district court ordered DHS to continue operating modified SAVE in the four plaintiff states, it effectively ordered DHS to violate the

universal vacatur of modified SAVE that Appellants secured in the *LWV* Vacatur Decision. And because "[a] party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment," S*alazar*, 559 U.S. at 712, Appellants have a judicially cognizable interest in enforcing DHS's compliance with the *LWV* Vacatur Decision's judgment, which—until Appellants secure relief from this Court—DHS and the plaintiff states will continue violating.

## II. The record in the *LWV* Vacatur Decision court shows that Appellants independently have standing to appeal the district court's order

To the extent this Court finds it necessary to assure itself that Appellants have standing independent from the defense of the *LWV* Vacatur Decision, the record developed in that litigation shows that SAVE's ongoing operation in Florida, Ohio, Iowa and Indiana gives Appellants standing to appeal the district court's order.

The D.C. courts found that the *LWV* Vacatur Decision plaintiffs had standing to remedy "three types of injuries" suffered by their members: "privacy or reputational injuries, voter injuries, and procedural injuries." *LWV* Vacatur Decision, 835 F. Supp. 3d at 107. All three support standing here as well.

### A. Privacy injuries

In the *LWV* Vacatur Decision, the court found that organizational members whose personal records were misused by the modified SAVE system had standing to vindicate violations of their privacy rights. 835 F. Supp. 3d at 107-111. Because the *LWV* Vacatur Decision record also shows that Appellants have members in the

states at issue in the *Florida* litigation who have suffered the same injury, they independently have standing to bring this appeal.

The *LWV* Vacatur Decision court found that LWV members suffered privacy injuries because the modified SAVE system unlawfully "disclosed their … private information in SSA records (including their SSNs and citizenship status) without their consent through bulk SAVE queries." *Id.* at 108. The court found the harms from these statutory violations were concrete injuries, analogous to the historical torts of intrusion upon seclusion and breach of confidence. *LWV* Vacatur Decision, 835 F. Supp. 3d at 107-108 (describing concreteness requirement of standing), 109-110 (intrusion upon seclusion), *id.* at 110-111 (breach of confidence). *Cf. also Drazen v. Pinto*, 74 F.4th 1336, 1342-46 (11th Cir. 2023) (en banc) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 433 (2021)) (examining intrusion upon seclusion, explaining that historical torts need not be identical to the harms being claimed, and that Congress may decide the degree of harm sufficient to be actionable).

The harmful disclosures in question took place because modified SAVE incorporated SSA's "Master Files" system of records (also known as "Numident"), which contains information about every person who has "applied for or been assigned a Social Security number." Dkt. 25 at 12. LWV has chapters and members in all 50 states, and their members in the four plaintiff states represented suffer the

privacy injuries identified in the D.C. litigation. *See* Stewart Decl.*, supra*, at ¶¶ 4, 6, 21 (noting that LWV has members in every state, and that members of local and state leagues are also members of LWV).

Similarly, EPIC has "members in at least 24 states," Butler Decl. at ¶ 32. One member, who lives in Indiana, provided a declaration in the *LWV* Vacatur Decision court explaining that she was aware of Indiana's memorandum of understanding with DHS to compare Indiana's voter rolls against SAVE, and that her private records were shared from SSA to DHS (and, subsequently, Indiana) without her consent due to modified SAVE, infringing upon her privacy rights and harming her. *See* Kisselburgh Decl. *supra*, at ¶¶ 2-4, 9-17, 19-20.

Because both Appellants have already established that they have injured members in the plaintiff states that continue to operate modified SAVE, both organizations have standing to vindicate their members' privacy interests here.

**B. Voting injuries**

LWV established standing in the *LWV* Vacatur Decision litigation based on voting injuries to its naturalized citizen members. Citing this Court, the *LWV* Vacatur Decision court emphasized that a "'plaintiff need not have the franchise wholly denied to suffer injury' to this concrete interest." *LWV* Vacatur Decision, 835 F. Supp. 3d at 113 (quoting *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005)). "Voters are injured when 'they [a]re wrongly

identified as non-citizens' and their franchise is burdened as a result." *Id.* (quoting *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (finding voting injuries by eligible voters misidentified as non-citizens by pre-modified version of the SAVE system)). Modified SAVE thus injures LWV's members because at least some of them "will necessarily need to take 'affirmative steps to avoid the risk of harm; that accompanies being labeled a potentially ineligible voter should the modified SAVE system continue to operate. This is sufficient to demonstrate an Article III injury." *Id.* at 115 (citing, among other cases, *Arcia*, 772 F.3d at 1341).

The D.C. Circuit agreed that LWV's naturalized citizen members have cognizable injuries because of modified SAVE's operation. "If modified SAVE were used to obtain information about them, the inaccurate SSA records for [LWV's naturalized members] would likely produce a SAVE record that fails to confirm their citizenship. What would then presumably follow would count as injury for standing purposes." *LWV II*, 2026 WL 2643439, at *4.[2] "DHS instructs election officials receiving such a response to obtain proof of citizenship from the voter. And President Trump has 'directed' states to remove all ineligible voters from their rolls 'immediately.'" *Id.* Either outcome would constitute injury: "If a person needs to prove their citizenship to remain registered to vote or if they are removed from the

[2] Having concluded that Appellants had standing on the basis of voting injuries, neither the D.C. Circuit panel majority nor the dissenting judge considered Appellants' privacy or procedural injuries. *LWV II*, 2026 WL 2643439 at *4.

registration rolls, they suffer a cognizable injury." *Id.* Notably, the dissent in the D.C. Circuit did not dispute that modified SAVE injures the voting rights of LWV's naturalized citizen members. *See id.* at *16 (Katsas, J., dissenting).

Here too, Appellants have members in Florida, Indiana, Iowa, and Ohio who "are among those people—they live in States that have agreed to use SAVE data to purge voter rolls and their SSA citizenship data is out of date." *LWV* Vacatur Decision, 835 F. Supp. 3d at 115.[3] Nor are these injuries speculative, as the plaintiff states have, since the district court's enforcement order, continued using modified SAVE to purge their voter rolls, notwithstanding the system's continued inaccuracies. *See*, *e.g.*, Secretary LaRose Orders Latest Round of Noncitizen Removals from Ohio Voter Rolls Ongoing Citizenship Verification Using Federal

[3] In the *LWV* Vacatur Decision, LWV established standing by showing burdens on members' voting rights; however, LWV had no reason to identify affected members specifically in the four plaintiff states here (though EPIC did identify an affected member in Indiana). That does not defeat standing in this appeal. *See supra* sections I, II.A, II.C. However, if this Court requires Appellants to independently demonstrate standing based on member harms in the four plaintiff states, it should let Appellants supplement the record with member declarations from those states. *See EFN W. Palm Motor Sales, LLC v. Hyundai Motor Am.*, No. 23-11077, 2023 WL 3884589, at *1 (11th Cir. June 8, 2023) (in response to jurisdictional question, granting motion to supplement record and concluding there was standing); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1555 (11th Cir. 1989) ("This court's inherent equitable powers allow it to supplement the record with information not reviewed by the district.").

SAVE Data Continues to Improve Voter List Maintenance Accuracy, Ohio Secretary of State (Sept. 9, 2026), https://perma.cc/968X-4Y23.

### C. Procedural injuries

Finally, the *LWV* Vacatur Decision court found that LWV suffered procedural injuries caused by the deficiencies in the government's promulgation of modified SAVE that were "sufficient to support standing." 835 F.Supp. 3d. at 116. The court found that both organizations had legally protectable interests in privacy and voting rights that had been "put at risk by the Federal Defendants' failure to comply with the procedural requirements of the Privacy Act and the APA," and ultimately suffered "the types of harms that these procedures were designed to remedy." *Id.* at 117; *cf. also Ouachita Watch League v. Jacobs*, 463 F. 3d 1163, 1170 (11th Cir. 2006) ("To show a cognizable injury in fact in a procedural injury case, a plaintiff must allege that the agency violated certain procedural rules, that these rules protect a plaintiff's concrete interests and that it is reasonably probable that the challenged action will threaten these concrete interests."). To date, neither DHS nor SSA has remedied the procedural injuries identified in the *LWV* Vacatur Decision, for example by issuing new SORNs that comply with the Privacy Act.

Unlike the privacy and voting injuries discussed above, the procedural injuries harmed LWV itself, as a nationwide organization, not just its members. These injuries to LWV itself cannot meaningfully be parsed geographically. It would make

no more sense to force LWV to demonstrate state-by-state standing than to require corporations challenging unlawful federal regulations to split up their injuries store-by-store.

## CONCLUSION

For the reasons above, this Court should find that Appellants have standing to appeal the district court's enforcement order.

Dated: September 16, 2026

Respectfully submitted,

*/s/Mark B. Samburg*

Aman T. George
Mark B. Samburg
Ronald A. Fein
Robin F. Thurston
DEMOCRACY FORWARD FOUNDATION
P.O. BOX 34553
Washington, DC 20043
(202) 448-9090

Nikhel S. Sus
John B. Hill
Lauren C. Bingham
CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565

Gerald E. Greenberg
Daniel R. Walsh
GELBER SCHACHTER & GREENBERG, P.A.
One Southeast Third Avenue, Suite 2600
Miami, FL 33131
(305) 728-0950

Jon Sherman
Michelle Kanter Cohen
FAIR ELECTIONS CENTER
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 331-0114

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B). This brief contains 3,957 words, excluding those parts exempted by 11th Cir. R. 32-4.

I certify that this brief complies with the typeface and style requirements of FRAP 32(a)(5) and (6) because it has been prepared using Microsoft Word in 14-point Times New Roman font.

Dated: September 16, 2026 *<u>/s/Mark B. Samburg</u>*